## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 11 |
| PACIFIC ENERGY RESOURCES LTD., et al,[1] | ) | |
| | ) | **Case No. 09-10785 (KJC)** |
| Debtor. | ) | (Jointly Administered) |
| | ) | |

### AFFIDAVIT OF BRIAN FINDLAY

| | | |
|---|---|---|
| STATE OF ALASKA | ) | |
| | ) ss. | |
| THIRD JUDICIAL DISTRICT | ) | |

1.     My name is Brian Findlay.  I am employed as Alaska Finance Team Lead

by Chevron North America Exploration and Production Company in its Anchorage,

Alaska office.  My job responsibilities include handling financial matters for the Trading

Bay properties operated by Union Oil Company of California (Union).  I have regular

access to Union's business records concerning Trading Bay.  I have personal knowledge

of the facts set forth in this affidavit.

---

[1]     The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax
identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp.
(6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp.
(5866); Pacific Energy Alaska Operating LLC (7021); San Pedro Bay Pipeline Company (1234); Carneros
Energy, Inc. (9487); and Gotland Oil, Inc. (5463).  The mailing address for all of the Debtors is 111 W.
Ocean Blvd, Suite 1240, Long Beach, CA 90802.

Page | 1     Affidavit of Brian Findlay
            Case No. 09-10785 (KJC)  In re: Pacific Energy Resources Ltd.
            H:\2628\PERL – aff Findlay

2.        On October 24, 2008, Union made demand upon Tesoro Company of

Alaska (Tesoro) that Tesoro pay, to Union, proceeds from PEAO's share of production

from TBU/TBF. See Attachment 1 hereto, which includes Exhibits A through D.

3.        The first lift after October 24, 2008 occurred on October 31, 2008. Tesoro

paid Union directly, per the October 24, 2008. On November 5, 2008, PEAO sent Tesoro

a letter, Attachment 2 hereto, confirming that PEAO did not contest Union's demand.

The second paragraph of that letter stated:

> By letter dated October 24, 2008, counsel for Union Oil Company
> of Calfiornia ("Union") asserted Union's lien rights with respect to
> Pacific Energy's share of production from TBU/TBF, and advised
> you that Tesoro should turn over, to Union, proceeds from the sale
> of that production until Pacific's defaults with respect to the
> TBU/TBF operating agreements are cured. Please be advised that
> Pacific does not contest the validity of Union's lien rights on
> Pacific's share of TBU/TBF production, and does not object to the
> proceeds from sale of the foregoing 61,900 barrels of production
> being turned over to Union as demanded in the October 24, 2008
> letter to Tesoro. Sale proceeds from Pacific's share of future
> TBU/TBF production should be paid over directly to Union until
> Union advises you that Pacific's defaults are cured, or until Pacific
> advises you that Union and Pacific dispute whether the defaults
> have been cured. Pacific and Union will jointly advise you as to
> the portion of future deliveries that are attributable to TBU/TBF
> production, versus production from other sources.

Union countersigned this letter.

4.        The next lifts occurred December 4, 2008, December 27, and January 29,

2009. Each lift was followed by a letter from PEAO to Tesoro, countersigned by Union,

with substantially identical language, confirming that PEAO does not contest the validity

of Union's lien rights and did not object to the proceeds from sale of the Trading Bay

Page | 2        Affidavit of Brian Findlay
                Case No. 09-10785 (KJC) In re: Pacific Energy Resources Ltd.
                H:\2628\PERL – aff Findlay

portion of the lift being paid to Union. See the letters dated December 4, 2008 (Attachment 3), December 29, 2008 (Attachment 4), and February 2, 2009 (Attachment 6). See also Pacific Energy's letter dated January 27, 2009 (Attachment 5), which references treatment of a price adjustment.

5.       Attached hereto is a spreadsheet I prepared which projects revenue and expenses related to PEAO's 46.8% working interest share at Trading Bay Unit and Trading Bay Field (TBU/TBF), for the balance of 2009. (Attachment 7). This projection is a forward-looking statement about Union's activities in Cook Inlet, Alaska. The statement is based upon current expectations, estimates and projections; it is not a guarantee of future performance; and is subject to certain risks, uncertainties and other factors, some of which are beyond the Union's control and are difficult to predict. Undue reliance should not be placed on this forward-looking statement, which speaks only as of the date of this affidavit. Unless legally required, Union undertakes no obligation to update publicly any forward-looking statements, whether as a result of new information, future events or otherwise.

6.       PEAO has a different sales arrangement with Tesoro than Union, and ordinarily, Union has no way of knowing how much Tesoro is paying PEAO for PEAO's oil. Union has simply been receiving the sale proceeds. By dividing the sales proceeds received from Tesoro after October 24, 2008 on account of PEAO's Trading Bay share of oil production from each lift, by the number of barrels stipulated in these letters, the per-

Page | 3       Affidavit of Brian Findlay
               Case No. 09-10785 (KJC)  In re: Pacific Energy Resources Ltd.
               H:\2628\PERL – aff Findlay

barrel price can be determined. However, there is no way for Union to know, on a going forward basis, what Tesoro may agree to pay for PEAO's Trading Bay oil in the future.

7.      The attached spreadsheet (Attachment 7) assumes that PEAO's share of Trading Bay oil will be sold to Tesoro for approximately $39.00 per barrel based on the PEAO revenue received from the most recent lift.

8.      A lift occurred March 15, 2009, one week after the petition date. My understanding is that by agreement between Tesoro, PEAO and Union, Tesoro is holding PEAO's share of sale proceeds from that lift, pending this Court's ruling on this motion.

9.      Attachment 7 hereto, projects that PEAO's working interest will experience a $22,256,661.00 shortfall for the period March 2009 thru December 2009; i.e., approximately $ 2,200,000.00 per month for the rest of 2009 on the assumptions set forth therein.

10.     PEAO owes Union $7,827.75 for Administrative Fees under the November 25, 2002 Fuel Gas Supply Agreement between Union and Forest Oil.

Further affiant sayeth naught.

DATED this _23rd day of March 2009.

By:  *Brian Findlay*

      Brian Findlay

Page | 4      Affidavit of Brian Findlay
              Case No. 09-10785 (KJC)  In re: Pacific Energy Resources Ltd.
              H:\2628\PERL – aff Findlay

STATE OF ALASKA               )
                              ) ss.
THIRD JUDICIAL DISTRICT        )

SUBSCRIBED AND SWORN to before me this 23 day of March 2009.

STATE OF ALASKA
NOTARY PUBLIC
Judith A. Stanek
My Commission Expires Februray 14, 2010

Judith Stanek

Notary Public in and for Alaska
My Commission
expires:     2 - 14 - 10

List of Attachments
1.    October 24, 2008 Letter (included Exhibits A - D)
2.    November 5, 2008 Letter
3.    December 4, 2008 Letter
4.    December 29, 2008 Letter
5.    January 27, 2009 Letter
6.    February 2, 2009 Letter
7.    Spreadsheet

Page | 5     Affidavit of Brian Findlay
             Case No. 09-10785 (KJC)  In re: Pacific Energy Resources Ltd.
             H:\2628\PERL – aff Findlay

# Attachment 1

CABOT CHRISTIANSON
GARY A SPRAKER

LAW OFFICE OF
CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, SUITE 201
ANCHORAGE, ALASKA 99501

PHONE: (907) 258-6016
FAX: (907) 258-2026

October 24, 2008

Tesoro Alaska Company - Via hand delivery
3230 C Street
P. O. Box 196272
Anchorage, AK 99519-6272

Attention: Damon Van Zandt - Via fax (210) 745-4534 and Express Mail
Tesoro Alaska Company
300 Concord Plaza Drive
San Antonio, TX 78216-6999

Rolf Manzek, – Via Fax: 907-776-5383, and e-mail at manzek@tesoropetroleum.com
Operation Manager.com
Tesoro Alaska Company
P. O. Box 3369
54741 Tesoro Road
Kenai, AK 99611-3369

Stephen W. Hansen, – Via Fax: 907-776-5383, and e-mail at shansen@tsocorp.com
Vice President, Refining
Tesoro Alaska Company
54741 Tesoro Road
P. O. Box 3369
Kenai, AK 99611

Dear Tesoro Alaska Company,

This letter is sent to you based upon the understanding of my client, Union Oil
Company of California (Union), that Tesoro Alaska Company (Tesoro), is party to a contract
with Pacific Energy Alaska Operating, LLC (Pacific Energy), under which Tesoro purchases,
from Pacific Energy, merchantable crude oil produced from the Trading Bay Unit (TBU) and
Trading Bay Field (TBF) in Cook Inlet, Alaska. If this understanding is incorrect, or if you
believe that this letter should be addressed to some other Tesoro affiliate or other party, I would
appreciate your advising Union of that fact immediately.

Please be advised that Union and Pacific Energy, as successor to Marathon Oil
Company, are parties to a Trading Bay Unit Operating Agreement (UOA) dated February 27,
1967, and a Trading Bay Field Joint Operating Agreement (JOA) dated June 12, 1996. Union is
the Unit Operator under the UOA and the Operator under the JOA. Relevant portions of the
UOA and JOA are attached hereto.

Attachment 1 to Findlay Affidavit
1 of 20

Tesoro Alaska Company
October 24, 2008
Page 2

Both the UOA and the JOA provide that each party grants to Union, as operator, a lien upon that party's share of production. Both agreements also provide that upon a party's default, the operator has the right to collect, from the purchaser of that party's share of production, amounts otherwise due the operator until the party's defaults have been cured. Section 19.5 of the UOA provides:

> Each Party grants to Unit Operator and the Sub-Operators a lien upon its oil and gas rights in each Tract, its share of Production, and its interest in all Unit property, as security for payment of its share of Costs, together with interest thereon at the rate of six per cent (6%) per annum. Unit Operator and each Sub-Operator shall have the right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien. In addition, upon default by any Party in the payment of its share of Costs, Unit Operator and each Sub-Operator shall have the right to collect from the purchaser the proceeds from the sale of such Party's share of Production until the amount owed by such Party, plus interest as aforesaid, has been paid. Each purchaser shall be entitled to rely upon Unit Operator's or Sub-Operators' written statement concerning the amount of any default.

Similarly, Section 11.4 of the JOA provides:

> Each Party grants to the Operator a lien upon its Working Interests in the Area, and its interest in all property, as security for payment of its share of Costs, together with interest thereon at the rate of twelve per cent (12%) per annum or, if lower, at the highest rate allowed by law. Operator shall have the right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien. In addition, upon default by any Party in the payment of its share of Costs, Operator shall have the right to collect from the purchaser the proceeds from the sale of such Party's share of Production until the amount owed by such Party, plus interest as aforesaid, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any amount due hereunder.

Enclosed as Exhibit C hereto is Union's letter to Pacific Energy dated June 5, 2008, under which Union gave notice of default to Pacific Energy. Subsequent to that letter, the parties agreed to a payment schedule to cure the defaults, but Pacific Energy has not adhered to that schedule. Accordingly, the defaults set forth in that June 5, 2008 letter have not been cured.

Tesoro Alaska Company
October 24, 2008
Page 3

Attached as Exhibit D hereto is a current accounting of amounts owed by Pacific Energy to Union.

Pursuant to the lien and other rights granted to Union under the UOA and JOA, Union hereby makes demand upon Tesoro that Tesoro turn over to Union immediately all sums otherwise due Pacific Energy on account of Tesoro's purchase of Pacific Energy's share of crude oil derived from the TBU or TBF, until Union advises you that Pacific Energy's defaults under those agreements have been cured.

This letter will serve to confirm that Union will defend and indemnify Tesoro with respect to any payment made by Tesoro pursuant to this demand.

Please contact the undersigned if you have any questions about this letter or request additional information.

Thank you very much.

CHRISTIANSON & SPRAKER

By:_____
Cabot Christianson

List of Exhibits:

- A    Trading Bay Unit Operating Agreement (UOA) portion
- B    Trading Bay Field Joint Operating Agreement (JOA) portion
- C    Default letter, Union to Pacific Energy dated June 5, 2008
- D    Accounting of amounts due

Cc:    Darren Katic via e-mail: dkatic@pacenergy.com and U.S. Mail
Joe Kilchrist via e-mail: jkilchrist@pacenergy.com and U.S. Mail
Gerry Tywoniuk via e-mail: GTywoniuk@PacEnergy.com and U.S. Mail
John Zager



BOOK 0550 PAGE 485

UNIT OPERATING AGREEMENT
TRADING BAY UNIT
COOK INLET, ALASKA

STATE RECORDING DISTRICT:
PLEASE RETURN TO:

KEVIN A. TABLER, LAND MANAGER
UNION OIL COMPANY OF CALIFORNIA
PO BOX 196247
ANCHORAGE, AK. 99519-6247

# T A B L E   O F   C O N T E N T S

Preliminary Recitals                                                1

## ARTICLE I--CONFIRMATION OF UNIT AGREEMENT

Section 1.1   Confirmation of Unit Agreement                        1

## ARTICLE II-- EXHIBITS -- APPENDICES

Section 2.1   Exhibits                                              1
Section 2.2   Appendices                                            2
Section 2.3   Revision of Appendices                                3

## ARTICLE III--DEFINITIONS

Section 3.1    Unit Agreement                                       3
Section 3.2    Acre-Feet of WIPA Pay                                3
Section 3.3    Basic Participating Interest                         3
Section 3.4    Costs                                                3
Section 3.5    Deepen or Plug Back                                  4
Section 3.6    Development Well                                     4
Section 3.7    Drill, Drilled or Drilling                           4
Section 3.8    Drilling Party                                       4
Section 3.9    Effective Participating Interest                     4
Section 3.10   Exploratory Well                                     4
Section 3.11   Gross Working Interest                               4
Section 3.12   Injection Wells                                      5
Section 3.13   Lease Burdens                                        5
Section 3.14   Market Value                                         5
Section 3.15   Net Working Interest                                 5
Section 3.16   Non-Drilling Party                                   5
Section 3.17   Party                                                5
Section 3.18   Pool                                                 5
Section 3.19   Production                                           5
Section 3.20   Royalty Interest Participatin; Area                  6
Section 3.21   Specified Redetermination                            6
Section 3.22   Sub-Operator                                         6
Section 3.23   Subsequent Redetermination                           6
Section 3.24   Surface Acreage                                      6
Section 3.25   Tract                                                6
Section 3.26   Unit Operator                                        6
Section 3.27   Working Interest                                     6
Section 3.28   Working Interest Participating Area                  6

## ARTICLE IV--SUPERVISION OF OPERATIONS BY PARTIES

Section 4.1    Over-all Supervision                                 7
Section 4.2    Particular Powers and Duties                         7

## ARTICLE V--MANNER OF EXERCISING SUPERVISION

Section 5.1    Designation of Representatives                       9
Section 5.2    Meetings                                             9
Section 5.3    Voting Procedure                                     9
Section 5.4    Additional Voting Provisions                        12
Section 5.5    Absentee Voting                                     12
Section 5.6    Poll Votes                                          12
Section 5.7    Vote Binding on Parties                             12

Revised 8-10-6

Attachment 1 to Findlay Affidavit
4 of 20

Exhibit A
Page 1 of 6

воок 0550 раде 486

### ARTICLE VI--INDIVIDUAL RIGHTS OF PARTIES

Section 6.1  Reservation of Rights                                    13
Section 6.2  Specific Rights                                          13

### ARTICLE VII--UNIT OPERATOR AND SUB-OPERATORS

Section 7.1  Initial Unit Operator                                    13
Section 7.2  Initial Sub-Operators                                    13
Section 7.3  Resignation or Removal of Unit Operator and
             Selection of Successor                                   14
Section 7.4  Resignation or Removal of Sub-Operators and
             Selection of Successors                                  14

### ARTICLE VIII--AUTHORITIES AND DUTIES OF
###       UNIT OPERATOR AND SUB-OPERATORS

Section 8.1  Unit Operator                                            15
Section 8.2  Sub-Operators                                            16
Section 8.3  Unit Operator and Sub-Operators                          17

### ARTICLE IX--DETERMINATION OF WORKING INTEREST
###       PARTICIPATING AREAS AND BASIC
###              PARTICIPATING INTERESTS

Section 9.1  Hemlock WIPA and BPI                                     18
Section 9.2  Initial Determination of WIPA                            18
Section 9.3  Determination of Initial BPI                             19
Section 9.4  Redeterminations of WIPA and BPI                         19
Section 9.5  Effective Date                                           20
Section 9.6  Manner of Redetermination of WIPA and BPI                20
Section 9.7  Arbitration                                              21

### ARTICLE X--APPORTIONMENT OF COSTS AND
###       OWNERSHIP OF PRODUCTION AND PROPERTY

Section 10.1 Apportionment and Allocation of Production
             for Royalty Purposes                                     22
Section 10.2 Apportionment and Ownership Within a WIPA                22

### ARTICLE XI--INITIAL AND FUTURE ADJUSTMENTS
###       OF COSTS, PRODUCTION, AND PROPERTY

Section 11.1 Adjustments on Initial Determination and
             Specified Redeterminations of WIPA or BPI                24
Section 11.2 Adjustments on Subsequent Redeterminations               26

### ARTICLE XII--PLANS OF DEVELOPMENT

Section 12.1 Wells and Projects Included                              28
Section 12.2 Notice of Proposed Plan                                  28
Section 12.3 Cessation of Operations under Plan                       28

### ARTICLE XIII--DRILLING, DEEPENING, PLUGGING BACK
###       OR ABANDONMENT OF EXPLORATORY, DEVELOPMENT
###              AND INJECTION WELLS

Section 13.1 General Provisions for Exploratory,
             Development and Injection Wells                          29
Section 13.2 Exploratory Wells                                        31

Revised 8-10-67

Attachment 1 to Findlay Affidavit
5 of 20
Exhibit A
Page 2 of 6

Section 13.3   Development Wells                                        33
Section 13.4   Relinquishment and Reversion of Interests                33
Section 13.5   Abandonment of Producing Wells                           35
Section 13.6   Injection Wells                                          36

              ARTICLE XIV--REQUIRED WELLS

Section 14.1   Definition                                               36
Section 14.2   Election to Drill                                        37
Section 14.3   Alternatives to Drilling                                 37
Section 14.4   Required Drilling                                        38

         ARTICLE XV--ESTABLISHMENT, REVISIONS AND
            CONSOLIDATION OF ROYALTY INTEREST
                 PARTICIPATING AREAS

Section 15.1   General                                                  38
Section 15.2   Procedure                                                38
Section 15.3   Revised Proposal                                         39

      ARTICLE XVI--PLATFORMS AND PRODUCTION FACILITIES

Section 16.1   Prior Commitments                                        39
Section 16.2   Costs                                                    40
Section 16.3   Use of Wells, Platforms, or Production
               Facilities                                               40

         ARTICLE XVII--CONSTRUCTION OF CERTAIN PLATFORMS,
              PIPELINES AND OTHER FACILITIES

Section 17.1   General                                                  40
Section 17.2   Sub-Operator to Conduct Operations                       41
Section 17.3   Notice of Proposed Construction                          41
Section 17.4   Response to Notice                                       41
Section 17.5   Participation                                            41
Section 17.6   Relinquishment and Reversion of Interests                42

         ARTICLE XVIII--RIGHT TO TAKE IN KIND AND
         FAILURE TO TAKE IN KIND -- UNDERLIFTING

Section 18.1   Taking in Kind                                           44
Section 18.2   Underlifting of Liquid Production                        44
Section 18.3   Underlifting or Balancing of Gas Production              48
Section 18.4   Indemnity                                                51

              ARTICLE XIX--UNIT EXPENSE

Section 19.1   Basis of Charge to Parties                               51
Section 19.2   Budgets                                                  52
Section 19.3   Advance Billings                                         52
Section 19.4   Commingling of Funds                                     53
Section 19.5   Lien of Unit Operator and Sub-Operator                   53

                ARTICLE XX--TITLES

Section 20.1   Warranty and Indemnity                                   53
Section 20.2   Failure Because of Unit Operations                       54

Attachment 1 to Findlay Affidavit
6 of 20
Exhibit A
Page 3 of 6

### ARTICLE XXI--RENTALS AND LEASE BURDENS

| | | |
|---|---|---|
| Section 21.1 | Rentals | 54 |
| Section 21.2 | Lease Burdens | 54 |
| Section 21.3 | Payments to be Borne by Parties | 55 |

### ARTICLE XXII--TAXES

| | | |
|---|---|---|
| Section 22.1 | Taxes Upon Unit Property and Operations | 55 |
| Section 22.2 | Other Taxes | 55 |
| Section 22.3 | Transfer of Interests | 55 |
| Section 22.4 | Notices and Returns | 56 |

### ARTICLE XXIII--INSURANCE

| | | |
|---|---|---|
| Section 23.1 | Required Insurance | 56 |
| Section 23.2 | Individual Insurance | 57 |
| Section 23.3 | Contractors' Insurance | 57 |
| Section 23.4 | Notice of Losses and Claims | 58 |

### ARTICLE XXIV--RELEASE FROM OBLIGATIONS AND SURRENDER

| | | |
|---|---|---|
| Section 24.1 | Surrender or Release Within a WIPA | 58 |
| Section 24.2 | Procedure on Surrender Outside a WIPA | 58 |
| Section 24.3 | Accrued Obligations | 59 |

### ARTICLE XXV--FORCE MAJEURE

| | | |
|---|---|---|
| Section 25.1 | Force Majeure | 59 |

### ARTICLE XXVI--NOTICES

| | | |
|---|---|---|
| Section 26.1 | Giving and Receipt | 60 |
| Section 26.2 | Proper Addresses | 61 |

### ARTICLE XXVII--LIABILITY, CLAIMS, AND SUITS

| | | |
|---|---|---|
| Section 27.1 | Individual Liability | 61 |
| Section 27.2 | Settlements | 61 |

### ARTICLE XXVIII--INTERNAL REVENUE PROVISION

| | | |
|---|---|---|
| Section 28.1 | Internal Revenue Provision | 61 |

### ARTICLE XXIX--EFFECTIVE DATE AND TERM

| | | |
|---|---|---|
| Section 29.1 | Effective Date | 62 |
| Section 29.2 | Term | 62 |

### ARTICLE XXX--NON-DISCRIMINATION

| | | |
|---|---|---|
| Section 30.1 | Non-discrimination | 62 |

### ARTICLE XXXI--OTHER PROVISIONS

| | | |
|---|---|---|
| Section 31.1 | Audits | 63 |
| Section 31.2 | Laws and Regulations | 63 |
| Section 31.3 | Additional Burdens | 63 |
| Section 31.4 | Successors and Assigns | 64 |

BOOK 0550 PAGE 489

## ARTICLE XXXII--EXECUTION

Section 32.1  Counterparts                          64
Section 32.2  Ratification                          64

## EXHIBITS

A.  Methods of Calculation

B.  Hypothetical Example of the Calculations Described
    in Exhibit "A"

C.  Accounting Procedure

## APPENDICES

A.  Maps of Working Interest Participating Areas

B.  Schedules of Basic Participating Interests and
    Descriptions of Pools

*            *            *

BOOK **0550** PAGE **542**

1  any month, an itemized estimate thereof for the succeeding
2  month, with a request for payment in advance. Within fifteen
3  (15) days thereafter, each Party shall pay to Unit Operator
4  or Sub-Operators its share of such estimate. Adjustments
5  between estimated and actual Costs shall be made by Unit
6  Operator and Sub-Operators at the close of each calendar month,
7  and the accounts of such Parties shall be adjusted accordingly.

8      19.4  Commingling of Funds.  No funds received by Unit
9  Operator or any Sub-Operator under this Agreement need be
10  segregated or maintained by it as a separate fund, but may
11  be commingled with its own funds.

12     19.5  Lien of Unit Operator and Sub-Operator.  Each Party
13  grants to Unit Operator and the Sub-Operators a lien upon its
14  oil and gas rights in each Tract, its share of Production, and
15  its interest in all Unit property, as security for payment of
16  its share of Costs, together with interest thereon at the rate
17  of six per cent (6%) per annum.  Unit Operator and each Sub-
18  Operator shall have the right to bring suit to enforce collec-
19  tion of such indebtedness with or without seeking foreclosure
20  of the lien.  In addition, upon default by any Party in the
21  payment of its share of Costs, Unit Operator and each Sub-
22  Operator shall have the right to collect from the purchaser
23  the proceeds from the sale of such Party's share of Production
24  until the amount owed by such Party, plus interest as afore-
25  said, has been paid.  Each purchaser shall be entitled to rely
26  upon Unit Operator's or Sub-Operators' written statement con-
27  cerning the amount of any default.

28                      ARTICLE XX
29                       TITLES

30     20.1  Warranty and Indemnity.  Each Party represents and
31  warrants that it is the owner of the respective Working Interests
32  set forth opposite its name in Exhibit "B" to the Unit Agreement,

-53-

BK 03412PG421          BK 03412PG469

BOOK 0550 PAGE 437

Kevin A. Tabler, Mgr.
Union Oil Company of California
PO Box 196247
Anchorage, AK 99519-6247

BK00028PG241

BK00028PG259

# TRADING BAY FIELD

# JOINT OPERATING AGREEMENT

## BY AND BETWEEN

# UNION OIL COMPANY OF CALIFORNIA

## AND

# MARATHON OIL COMPANY

## MAY 1996

Return to:

Kevin A. Tabler, Mgr.
Union Oil Company of California
PO Box 196247
Anchorage, AK 99519-6247

Attachment 1 to Findlay Affidavit
10 of 20

Exhibit B
Page 1 of 7

BK 0552 PG 622        BK 0552 PG 670

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

BOOK **0550** PAGE **438**

BK 00028 PG 212

BK 00028 PG 260

# TABLE OF CONTENTS

| SECTION | ARTICLE | PAGE |
|---|---|---|
| | **ARTICLE I - EXHIBITS - APPENDICES** | 1 |
| 1.1 | EXHIBITS | 1 |
| | **ARTICLE II - DEFINITIONS** | 1 |
| 2.1 | AREA OR TRACT | 1 |
| 2.2 | COSTS | 1 |
| 2.3 | DEVELOPMENT WELL | 1 |
| 2.4 | DRILL, DRILLED OR DRILLING, DEEPEN OR PLUG BACK | 1 |
| 2.5 | EXPLORATORY WELL | 1 |
| 2.6 | INJECTION WELL | 2 |
| 2.7 | LEASE BURDENS | 2 |
| 2.8 | MARKET VALUE | 2 |
| 2.9 | NON-DRILLING PARTY | 2 |
| 2.10 | PARTY | 2 |
| 2.11 | POOL | 2 |
| 2.12 | PRODUCTION | 2 |
| 2.13 | OPERATOR | 2 |
| 2.14 | WORKING INTEREST | 2 |
| | **ARTICLE III - SUPERVISION OF OPERATIONS BY PARTIES** | 3 |
| 3.1 | OVER-ALL SUPERVISION | 3 |
| 3.2 | PARTICULAR POWERS AND DUTIES | 3 |
| | **ARTICLE IV - MANNER OF EXERCISING SUPERVISION** | 4 |
| 4.1 | VOTING PROCEDURE | 4 |
| 4.2 | POLL VOTES | 4 |
| 4.3 | VOTE BINDING ON PARTIES | 4 |
| 4.4 | VOTE REQUIRED | 5 |
| | **ARTICLE V - INDIVIDUAL RIGHTS OF PARTIES** | 5 |
| 5.1 | RESERVATION OF RIGHTS | 5 |
| 5.2 | SPECIFIC RIGHTS | 5 |
| | **ARTICLE VI - OPERATOR** | 6 |
| 6.1 | INITIAL OPERATOR | 6 |
| 6.2 | RESIGNATION OR REMOVAL OF OPERATOR AND SELECTION OF SUCCESSOR | 6 |

BF 0 3 4 1 2 PG 4 2 3   ,  BF 0 3 4 1 2 PG 4 7 1

· OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

BOOK 0550 PAGE 439

## TABLE OF CONTENTS (Continued)

| SECTION | ARTICLE | PAGE |
|---------|---------|------|
| **ARTICLE VII - AUTHORITIES AND DUTIES OF OPERATOR** | | 7 |
| 7.1 | OPERATOR | 7 |
| 7.2 | OPERATIONS | 8 |
| **ARTICLE VIII - DRILLING, DEEPENING, PLUGGING BACK OR ABANDONMENT OF EXPLORATORY, DEVELOPMENT AND INJECTION WELLS** | | 10 |
| 8.1 | GENERAL PROVISIONS FOR EXPLORATORY, DEVELOPMENT AND INJECTION WELLS | 10 |
| 8.2 | EXPLORATORY WELLS | 12 |
| 8.3 | DEVELOPMENT WELLS | 12 |
| 8.4 | RELINQUISHMENT AND REVERSION OF INTERESTS | 12 |
| 8.5 | ABANDONMENT OF PRODUCING WELLS | 14 |
| 8.6 | INJECTION WELLS | 14 |
| **ARTICLE IX - CONSTRUCTION OF CERTAIN FACILITIES** | | 15 |
| 9.1 | GENERAL | 15 |
| 9.2 | OPERATOR TO CONDUCT OPERATIONS | 15 |
| 9.3 | NOTICE OF PROPOSED CONSTRUCTION | 15 |
| 9.4 | RESPONSE TO NOTICE | 15 |
| 9.5 | PARTICIPATION | 16 |
| 9.6 | RELINQUISHMENT AND REVERSION OF INTERESTS | 16 |
| **ARTICLE X - RIGHT TO TAKE IN KIND AND FAILURE TO TAKE IN KIND -- UNDERLIFTING** | | 17 |
| 10.1 | TAKING IN KIND | 17 |
| 10.2 | UNDERLIFTING OF PRODUCTION | 18 |
| 10.3 | ALLOCATION OF COSTS | 18 |
| 10.4 | INDEMNITY | 18 |
| **ARTICLE XI - EXPENSE** | | 18 |
| 11.1 | BASIS OF CHARGE TO PARTIES | 18 |
| 11.2 | ADVANCE BILLINGS | 19 |
| 11.3 | COMMINGLING OF FUNDS | 19 |
| 11.4 | LIEN OF OPERATOR | 19 |
| **ARTICLE XII - TITLES** | | 19 |
| 12.1 | WARRANTY AND INDEMNITY | 19 |

Attachment 1 to Findlay Affidavit
12 of 20

Exhibit B
Page 3 of 7

BK 03 12 PG 24 ;            BK 03 12 PG 72

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

BOOK 0550 PAGE 440

## TABLE OF CONTENTS (Continued)

SECTION    ARTICLE                                                    PAGE

ARTICLE XIII - RENTALS AND LEASE BURDENS ..................... 20
    13.1    RENTALS ........................................... 20
    13.2    LEASE BURDENS .................................... 20
    13.3    PAYMENTS TO BE BORNE BY PARTIES .................. 20

ARTICLE XIV - TAXES ........................................... 21
    14.1 TAXES UPON PROPERTY AND OPERATIONS ............. 21
    14.2    OTHER TAXES ....................................... 21
    14.3    TRANSFER OF INTERESTS ............................ 21
    14.4  NOTICES AND RETURNS .............................. 21

ARTICLE XV - INSURANCE ........................................ 22
    15.1    REQUIRED INSURANCE ............................... 22
    15.2    INDIVIDUAL INSURANCE ............................. 23
    15.3    CONTRACTORS' INSURANCE .......................... 23
    15.4    NOTICE OF LOSSES AND CLAIMS ...................... 23

ARTICLE XVI - RELEASE FROM OBLIGATIONS; SURRENDER; RIGHT OF
    FIRST REFUSAL .............................................. 23
    16.1    SURRENDER OR RELEASE ............................ 23
    16.2    ACCRUED OBLIGATIONS ............................. 24
    16.3    RIGHT OF FIRST REFUSAL ........................... 24

ARTICLE XVII - FORCE MAJEURE ................................. 25
    17.1    FORCE MAJEURE ................................... 25

ARTICLE XVIII - NOTICES ....................................... 25
    18.1    GIVING AND RECEIPT ............................... 25
    18.2    PROPER ADDRESSES ................................ 26

ARTICLE XIX - LIABILITY, CLAIMS, AND SUITS ..................... 26
    19.1    INDIVIDUAL LIABILITY ............................... 26
    19.2    SETTLEMENTS ..................................... 26

ARTICLE XX - INTERNAL REVENUE PROVISION ..................... 27
    20.1    INTERNAL REVENUE PROVISION ...................... 27

Attachment 1 to Findlay Affidavit
13 of 20

Exhibit B
Page 4 of 7

BK 0002 8PG 2 14

BK 0002 8PG 262

BK 0 3472 PG 672

BK 0 3472 PG 573

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

BOOK 0550 PAGE 441

## TABLE OF CONTENTS (Continued)

| SECTION | ARTICLE | PAGE |
|---------|---------|------|
| | ARTICLE XXI - EFFECTIVE TERM | 27 |
| 21.1 | TERM | 27 |
| | ARTICLE XXII - NON-DISCRIMINATION | 27 |
| 22.1 | NON-DISCRIMINATION | 27 |
| | ARTICLE XXIII - OTHER PROVISIONS | 28 |
| 23.1 | AUDITS | 28 |
| 23.2 | LAWS AND REGULATIONS | 28 |
| 23.3 | ADDITIONAL BURDENS | 28 |
| 23.4 | SUCCESSORS AND ASSIGNS | 29 |
| 23.5 | ENTIRE AGREEMENT | 29 |
| 23.6 | WAIVER | 29 |
| 23.7 | CAPTIONS | 29 |
| 23.8 | GOVERNING LAW | 29 |
| | ARTICLE XXIV - EXECUTION | 30 |
| 24.1 | COUNTERPARTS | 30 |
| 24.2 | RATIFICATION | 30 |

BK 00028 PG 215

BK 00028 PG 263

BY 0 5012 PG 426

BY 0 50 2 PG 4 74

**OPERATING AGREEMENT**
**TRADING BAY FIELD**
**COOK INLET, ALASKA**

BOOK 0550 PAGE 442

THIS AGREEMENT, entered into as of ᴶᵁⁿᴱ 12, 1996 ___ by and between Marathon Oil Company ("Marathon"), an Ohio corporation and Union Oil Company of California ("Union") a California corporation (collectively the "Parties").

## ARTICLE I - EXHIBITS - APPENDICES

### 1.1   EXHIBITS

The following exhibits are attached hereto and by this reference are made a part hereof;

A.   Exhibit A – Map
B.   Exhibit B – Lease Description
C.   Exhibit C, which is the Accounting Procedure for the determination of costs and expenses incurred in the conduct of operations under this Agreement.   If there is any conflict between this Agreement and Exhibit C, this Agreement shall govern.

## ARTICLE II - DEFINITIONS

**2.1**   **AREA or TRACT** – shall mean the State Lease ADL 18731 as described in Exhibits A and B.

**2.2**   **COSTS** – shall mean all costs and expenses, other than Lease Burdens, incurred in the development and operation pursuant to this Agreement and all other expenses that are herein made chargeable as Costs, determined in accordance with the Accounting Procedure set forth in Exhibit C hereto.

**2.3**   **DEVELOPMENT WELL** – shall mean any well other than an Injection Well Drilled to a location within the Area and projected to the Pool for which such Area was established.

**2.4**   **DRILL, DRILLED OR DRILLING, DEEPEN OR PLUG BACK** – shall mean to perform all operations reasonably necessary and incident to the drilling of a well, including testing, and completing and equipping for production or injection, or plugging and abandoning.

**2.5**   **EXPLORATORY WELL** – shall mean any well other than a Development Well or an Injection Well which is drilled to a new pool.

OPERATING AGREEMENT
TRADING BAY FIELD
COOK INLET, ALASKA

BOOK 0550 PAGE 460

## 11.2  ADVANCE BILLINGS

Operator shall have the right to require the Parties to advance their respective shares of estimated Costs by submitting to such Parties, on or before the 15th day of any month, an itemized estimate thereof for the succeeding month, with a request for payment in advance. Within fifteen (15) days thereafter, each Party shall pay to Operator its share of such estimate. Adjustments between estimated and actual Costs shall be made by Operator at the close of each calendar month, and the accounts of such Parties shall be adjusted accordingly.

## 11.3  COMMINGLING OF FUNDS

No funds received by Operator under this Agreement need be segregated or maintained by it as a separate fund, but may be commingled with its own funds.

## 11.4  LIEN OF OPERATOR

Each Party grants to the Operator a lien upon its Working Interests in the Area, and its interest in all property, as security for payment of its share of Costs, together with interest thereon at the rate of twelve per cent (12%) per annum or, if lower, at the highest rate allowed by law.  Operator shall have the right to bring suit to enforce collection of such indebtedness with or without seeking foreclosure of the lien.  In addition, upon default by any Party in the payment of its share of Costs, Operator shall have the right to collect from the purchaser the proceeds from the sale of such Party's share of Production until the amount owed by such Party, plus interest as aforesaid, has been paid. Each purchaser shall be entitled to rely upon Operator's written statement concerning the amount of any amount due hereunder.

## ARTICLE XII - TITLES

### 12.1  WARRANTY AND INDEMNITY

Each Party represents and warrants that it is the owner of the respective Working Interests and hereby agrees to indemnify and hold harmless the other



Chevron

John P. Zager
General Manager, Alaska
Mid-Continent/Alaska

Chevron North America
Exploration and Production
(a Chevron U.S.A. Inc. division)
909 West 9th Avenue
P.O. Box 196247
Anchorage, AK 99519-6247
Tel 907 263 7815
Fax 907 263 7897
Mobile 907 223-0128
Email jzager@chevron.com

June 5, 2008
**VIA HAND DELIVERY AND E-MAIL**

Joe Kilchrist
Pacific Energy Alaska Operating, LLC
301 K Street, 7th Floor
Anchorage, AK 99501

Re:    Trading Bay Unit and Trading Bay Field

Dear Pacific Energy Alaska Operating, LLC,

By letter dated December 27, 2007, Union Oil Company of California, a Chevron Company ("Union Oil") was advised that Pacific Energy Alaska Operating, LLC ("PEAO"), formerly Forest Alaska Operating, LLC, successor to Forest Alaska Holding, LLC, Forest Oil Corporation, and Marathon Oil Company with respect to the Trading Bay Unit leases, had acquired the Forest Oil interests in the Trading Bay Unit leases ADL 18730, 18772, 18729, 18777, 17594, 17579, 17602, 18731, 18758, 21068, and 18716.  As you know, there is a Unit Operating Agreement[1] covering the Trading Bay Unit and a Joint Operating Agreement covering the Trading Bay Field.[2]

In acquiring the Trading Bay leases and other interests, PEAO agreed to assume all the obligations associated with the above referenced Unit Operating Agreement and Joint Operating Agreement, as amended or supplemented.  Specifically, PEAO assumed, and took subject to, Section 11.4 of the Joint Operating Agreement, which provides:

> Each Party grants to the Operator a lien upon its Working Interests in the Area, and its interest in all property, a security for payment of its share of Costs, together with interest thereon at the rate of twelve per cent (12%) per annum or, if lower, at the highest rate allowed by law. Operator shall

---

[1]   Recorded January 25, 1999 at Book 550, Page 485 in the Kenai Recording District; recorded January 26, 1999 at Book 3412, Page 1 in the Anchorage Recording District; and recorded January 26, 1999 at Book 27, Page 686 in the Iliamna Recording District. There are a number of unrecorded amendments and supplements to that agreement.

[2]   Recorded January 25, 1999 at Book 550, page 437 in the Kenai Recording District; recorded January 26, 1999 at Book 3412, Page 421 in the Anchorage Recording District; and recorded January 26, 1999 at Book 28, Page 211 in the Iliamna Recording District.

Attachment 1 to Findlay Affidavit
17 of 23

Joe Kilchrist
Pacific Energy
June 5, 2008
Page 2

> have the right to bring suit to enforce collection of such indebtedness with
> or without seeking foreclosure of the lien. In addition, upon default by any
> Party in the payment of its share of Costs, Operator shall have the right to
> collect from the purchaser the proceeds from the sale of such Party's
> share of Production until the amount owed by such Party, plus interest as
> aforesaid, has been paid. Each purchaser shall be entitled to rely upon
> Operator's written statement concerning the amount of any amount due
> hereunder.

Similarly, PEAO assumed, and took subject to, Section 19.5 of the Unit Operating Agreement,
which provides:

> Each Party grants to Unit Operator and the Sub-Operators a lien upon its
> oil and gas rights in each Tract, its share of Production, and its interest in
> all Unit property, as security for payment of its share of Costs, together
> with interest thereon a the rate of six per cent (6%) per annum. Unit
> Operator and each Sub-Operator shall have the right to bring suit to
> enforce collection of such indebtedness with or without seeking
> foreclosure of the lien. In addition, upon default by any Party in the
> payment of its share of Costs, Unit Operator and each Sub-Operator shall
> have the right to collect from the purchaser the proceeds from the sale of
> such Party's share of Production until the amount owed by such Party,
> plus interest as aforesaid, has been paid. Each purchaser shall be
> entitled to rely upon Unit Operator's or Sub-Operators' written statement
> concerning the amount of any default.

This letter is notice that PEAO has failed to meet its obligations under the Joint Operating
Agreement and Unit Operating Agreement as follows:

Failure to timely pay joint interest billing statements as required by Article 19.1 and 19.3 of the
TBUOA and Articles 11.1 and 11.2 of the TBF JOA.

The total amount past due is as follows: **$6,494,296.01**.

This letter is notice that, if PEAO does not cure these defaults within thirty days of this letter,
that Union Oil will enforce its rights under the above referenced Sections 11.4 and 19.5, as well
as any other remedies to which Union Oil may be entitled.

Thank you very much.

Sincerely,

John P. Zager
General Manager

Attachment 1 to Findlay Affidavit
18 of 20
Exhibit C

Joe Kilchrist
Pacific Energy
June 5, 2008
Page 3


cc:     Vladimir Katic via email and US Mail
        Darren Katic via US Mail only
        Cabot Christianson
        Steve Wright
        Brian Findlay
        Kevin Donley
        Dale Haines

Exhibit D
to October 24, 2008
letter to Tesoro

## Pacific Energy obligations to Union Oil  as of October 22,2008

| | |
|---|---|
| Pproject UWDAK-J6071 | 35,490.67 |
| Project UWDAK-JU020 (#164955) | 197,539.45 |
| Project UWDAK-R6027 | 157,564.56 |
| Project UWDAK-R7037 | 673,595.57 |
| Project UWDAK-J8018 | 8,169.25 |
| Project UWDAK-J8009 | 58,724.43 |
| Project UWDAK-J7094 | 21,639.25 |
| **August Joint Interest Bill (including interest and cash calls)** | 7,429,706.54 |
| **Total** | **8,582,429.72** |

# Attachment 2



PACIFIC ENERGY

VIA Express Mail and E-Mail to shansen@tsocorp.com

November 5, 2008

Mr. Stephen W. Hansen
Tesoro Alaska Company
5471 Tesoro Road
P.O. Box 3369
Kenai, Alaska 99611

Dear Mr. Hansen,

You are aware that on October 31, 2008, 86,000 barrels of crude oil owned by Pacific Energy Alaska Operating, LLC ("Pacific") was lifted from the Drift River Terminal, Cook Inlet, Alaska, and delivered for sale to Tesoro. Please be advised that 61,900 barrels of that delivery was attributable to Pacific Energy's share of production from Trading Bay Unit/Trading Bay Field (TBU/TBF), and the balance was attributable to production from other units or fields.

By letter dated October 24, 2008, counsel for Union Oil Company of California ("Union") asserted Union's lien rights with respect to Pacific Energy's share of production from TBU/TBF, and advised you that Tesoro should turn over, to Union, proceeds from the sale of that production until Pacific's defaults with respect to the TBU/TBF operating agreements are cured. Please be advised that Pacific does not contest the validity of Union's lien rights on Pacific's share of TBU/TBF production, and does not object to the proceeds from sale of the foregoing 61,900 barrels of production being turned over to Union as demanded in the October 24, 2008 letter to Tesoro. Sale proceeds from Pacific's share of future TBU/TBF production should be paid over directly to Union until Union advises you that Pacific's defaults are cured, or until Pacific advises you that Union and Pacific dispute whether the defaults have been cured. Pacific and Union will jointly advise you as to the portion of future deliveries that are attributable to TBU/TBF production, versus production from other sources.

Union's signature on this letter indicates Union's concurrence with this letter.

Very truly yours,

*Joe Kilchrist*

Pacific Energy Alaska Operating, LLC

Attachment 2 to Findlay Affidavit
1 of 2

Union Oil Company of California concurs with this letter

John Zager
Chévron

cc:     Barron Dowling - Tesoro via e-mail to bdowling@tsocorp.com
        Rolf Manzek - Tesoro via e-mail to rmanzek@tesoropetroleum.com

2

# Attachment 3



# PACIFIC ENERGY RESOURCES, LTD.

*310 K Street, Suite 700*

*Anchorage, AK 99501*

*Phone: (907) 258-8600 ● Fax: (907) 258-8601*

December 4, 2008

Stephen W. Hansen - VIA U.S. Mail and E-Mail to shansen@tsocorp.com
Tesoro Alaska Company
5471 Tesoro Road
P.O. Box 3369
Kenai, Alaska 99611

Attention: Damon Van Zandt - Via fax (210) 745-4534 and Express Mail
Tesoro Alaska Company
300 Concord Plaza Drive
San Antonio, TX 78216-6999

Rolf Manzek, Operation Manager -- Via U.S. Mail, Fax: 907-776-5383, and e-mail
Tesoro Alaska Company
P. O. Box 3369
54741 Tesoro Road
Kenai, AK 99611-3369

Dear Tesoro,

As you are aware, on December 4, 2008, 107,400 barrels of crude oil owned by Pacific Energy Alaska Operating, LLC ("Pacific") were lifted from the Drift River Terminal, Cook Inlet, Alaska, and delivered for sale to Tesoro. Please be advised that 78,300 barrels of that delivery was attributable to Pacific's share of production from Trading Bay Unit/Trading Bay Field (TBU/TBF), and the balance was attributable to production from other units or fields.

By letter dated October 24, 2008, counsel for Union Oil Company of California ("Union") asserted Union's lien rights with respect to Pacific's share of production from TBU/TBF, and advised you that Tesoro should turn over, to Union, proceeds from the sale of that production until Pacific's defaults with respect to the TBU/TBF operating agreements are cured. Pacific by letter to Tesoro dated November 5, 2008 explained that it does not contest the validity of Union's lien rights on Pacific's share of TBU/TBF production. Pacific does not object to the proceeds from sale of the foregoing 78,300 barrels of production being turned over to Union as demanded in the October 24, 2008 letter to Tesoro. Sale proceeds from Pacific's share of future TBU/TBF production should be paid over directly to Union until Union advises you that Pacific's defaults are cured, or until Pacific advises you that Union and Pacific dispute whether the defaults have been cured. Pacific and Union will jointly advise you as to the

Attachment 3 to Findlay Affidavit
1 of 2

portion of future deliveries that are attributable to TBU/TBF production, versus production from other sources.

Union's signature on this letter indicates Union's concurrence with this letter.

Very truly yours,

*Joe Kilchrist*

Pacific Energy Alaska Operating, LLC

Union Oil Company of California concurs with this letter

*Dale Nauss for John Zager.*

[Signature by Union Oil]

cc:    Barron Dowling - Tesoro via e-mail to bdowling@tsocorp.com
       John Zager - Union

Pacific Energy Resources Ltd., 111 West Ocean Blvd. , Suite 1240, Long Beach, CA  90802
Ph: 562-628-1526 Fax: 562-628-1536

Attachment 3 to Findlay Affidavit
2 of 2

# Attachment 4



# PACIFIC ENERGY RESOURCES, LTD.

*310 K Street, Suite 700*

*Anchorage, AK 99501*

*Phone: (907) 258-8600 ● Fax: (907) 258-8601*

December 29, 2008

Stephen W. Hansen - VIA U.S. Mail and E-Mail to shansen@tsocorp.com
Tesoro Alaska Company
5471 Tesoro Road
P.O. Box 3369
Kenai, Alaska 99611

Attention: Damon Van Zandt - Via fax (210) 745-4534 and Express Mail
Tesoro Alaska Company
300 Concord Plaza Drive
San Antonio, TX 78216-6999

Rolf Manzek, Operation Manager – Via U.S. Mail, Fax: 907-776-5383, and e-mail
Tesoro Alaska Company
P. O. Box 3369
54741 Tesoro Road
Kenai, AK 99611-3369

Dear Tesoro,

As you are aware, on or about December 27, 2008, 77,700 barrels of crude oil owned by Pacific Energy Alaska Operating, LLC ("Pacific") were lifted from the Drift River Terminal, Cook Inlet, Alaska, and delivered for sale to Tesoro. Please be advised that 59,500 barrels of that delivery was attributable to Pacific's share of production from Trading Bay Unit/Trading Bay Field (TBU/TBF), and the balance was attributable to production from other units or fields.

By letter dated October 24, 2008, counsel for Union Oil Company of California ("Union") asserted Union's lien rights with respect to Pacific's share of production from TBU/TBF, and advised you that Tesoro should turn over, to Union, proceeds from the sale of that production until Pacific's defaults with respect to the TBU/TBF operating agreements are cured. Pacific by letter to Tesoro dated November 5, 2008 explained that it does not contest the validity of Union's lien rights on Pacific's share of TBU/TBF production. Pacific does not object to the proceeds from sale of the foregoing 59,500 barrels of production being turned over to Union as demanded in the October 24, 2008 letter to Tesoro. Sale proceeds from Pacific's share of future TBU/TBF production should be paid over directly to Union until Union advises you that Pacific's defaults are cured, or until Pacific advises you that Union and

Pacific Energy Resources Ltd., 111 West Ocean Blvd. , Suite 1240, Long Beach, CA 90802

Ph: 562-628-1526 Fax: 562-628-1536

Pacific dispute whether the defaults have been cured. Pacific and Union will jointly advise you as to the portion of future deliveries that are attributable to TBU/TBF production, versus production from other sources.

Union's signature on this letter indicates Union's concurrence with this letter.

Very truly yours,

*Jan Kilchrist*

Pacific Energy Alaska Operating, LLC

Union Oil Company of California concurs with this letter

*Dale Navin for J.Z.*

[Signature by Union Oil]

cc:    Barron Dowling - Tesoro via e-mail to bdowling@tsocorp.com
       John Zager - Union

Attachment 4 to Findlay Affidavit
2 of 2

# Attachment 5



# PACIFIC ENERGY RESOURCES, LTD.

*310 K Street, Suite 700*

*Anchorage, AK 99501*

*Phone: (907) 258-8600  •  Fax: (907) 258-8601*

January 27, 2009

Stephen W. Hansen - VIA U.S. Mail and E-Mail to shansen@tsocorp.com
Tesoro Alaska Company
5471 Tesoro Road
P.O. Box 3369
Kenai, Alaska 99611

Attention: Damon Van Zandt - Via fax (210) 745-4534 and Express Mail
Tesoro Alaska Company
300 Concord Plaza Drive
San Antonio, TX  78216-6999

Rolf Manzek, Operation Manager – Via U.S. Mail, Fax: 907-776-5383, and e-mail
Tesoro Alaska Company
P. O. Box 3369
54741 Tesoro Road
Kenai, AK 99611-3369

Dear Tesoro,

It is our understanding that Tesoro intends to pay Pacific $668,127.67 for crude oil purchased from Pacific between late 2007 and early 2008. Please be advised that $461,164.11 of that payment is attributable to Pacific's share of production from Trading Bay Unit/Trading Bay Field (TBU/TBF), and the balance of $206,963.56 is attributable to production from other units or fields.

By letter dated October 24, 2008, counsel for Union Oil Company of California ("Union") asserted Union's lien rights with respect to Pacific's share of production from TBU/TBF, and advised you that Tesoro should turn over, to Union, proceeds from the sale of that production until Pacific's defaults with respect to the TBU/TBF operating agreements are cured. Pacific by letter to Tesoro dated November 5, 2008 explained that it does not contest the validity of Union's lien rights on Pacific's share of TBU/TBF production. Pacific does not object to $461,164.11 of the contemplated $668,127.67 payment being paid over to Union as demanded in the October 24, 2008 letter to Tesoro. The remaining $206,963.56 should be paid to Pacific. Any future sale proceeds from Pacific's share of TBU/TBF production should continue to be paid over directly to Union until Union advises you that Pacific's defaults are cured, or until Pacific advises you that Union and Pacific dispute whether the defaults have

Attachment 5 to Findlay Affidavit
1 of 2

been cured. Pacific and Union will jointly advise you as to the portion of future deliveries and payments that are attributable to TBU/TBF production, versus production from other sources.

Union's signature on this letter indicates Union's concurrence with this letter.

Very truly yours,

*Joe Kilchrist*

Pacific Energy Alaska Operating, LLC

Union Oil Company of California concurs with this letter

[Signature by Union Oil]

cc:    Barron Dowling - Tesoro via e-mail to bdowling@tsocorp.com
       John Zager - Union

Pacific Energy Resources Ltd., 111 West Ocean Blvd. , Suite 1240, Long Beach, CA  90802

Ph: 562-628-1526 Fax: 562-628-1536

Attachment 5 to Findlay Affidavit
2 of 2

# Attachment 6



## PACIFIC ENERGY RESOURCES, LTD.

*310 K Street, Suite 700*

*Anchorage, AK 99501*

*Phone: (907) 258-8600 ● Fax: (907) 258-8601*

February 2, 2009

Stephen W. Hansen - VIA U.S. Mail and E-Mail to shansen@tsocorp.com
Tesoro Alaska Company
5471 Tesoro Road
P.O. Box 3369
Kenai, Alaska 99611

Attention: Damon Van Zandt - Via fax (210) 745-4534 and Express Mail
Tesoro Alaska Company
300 Concord Plaza Drive
San Antonio, TX 78216-6999

Rolf Manzek, Operation Manager – Via U.S. Mail, Fax: 907-776-5383, and e-mail
Tesoro Alaska Company
P. O. Box 3369
54741 Tesoro Road
Kenai, AK 99611-3369

Dear Tesoro,

As you are aware, on or about January 29, 2009, 97,300 barrels of crude oil owned by Pacific Energy Alaska Operating, LLC ("Pacific") were lifted from the Drift River Terminal, Cook Inlet, Alaska, and delivered for sale to Tesoro. Please be advised that 79,300 barrels of that delivery was attributable to Pacific's share of production from Trading Bay Unit/Trading Bay Field (TBU/TBF), and the balance was attributable to production from other units or fields.

By letter dated October 24, 2008, counsel for Union Oil Company of California ("Union") asserted Union's lien rights with respect to Pacific's share of production from TBU/TBF, and advised you that Tesoro should turn over, to Union, proceeds from the sale of that production until Pacific's defaults with respect to the TBU/TBF operating agreements are cured. In the original letter and by subsequent letters to Tesoro, Pacific has explained that it does not contest the validity of Union's lien rights on Pacific's share of TBU/TBF production. Pacific does not object to the proceeds from sale of the foregoing 79,300 barrels of production being turned over to Union as demanded in the October 24, 2008 letter to Tesoro. Sale proceeds from Pacific's share of future TBU/TBF production should be paid over directly to Union until Union advises you that Pacific's defaults are cured, or until Pacific advises you that Union and Pacific dispute whether the defaults have been cured. Pacific and Union will jointly

Pacific Energy Resources Ltd., 111 West Ocean Blvd. , Suite 1240, Long Beach, CA 90802

Ph: 562-628-1526 Fax: 562-628-1536

advise you as to the portion of future deliveries that are attributable to TBU/TBF production, versus production from other sources.

Union's signature on this letter indicates Union's concurrence with this letter.

Very truly yours,

Jac Kilchrist

Pacific Energy Alaska Operating, LLC

Union Oil Company of California concurs with this letter

[Signature by Union Oil]

cc:     Barron Dowling - Tesoro via e-mail to bdowling@tsocorp.com
        John Zager - Union

# Attachment 7

**Projected Pacific Energy Shortfall March thru December - 2009**

| | Estimate Mar-Dec 2009 | Mar-09 | Apr-09 | May-09 | Jun-09 | Jul-09 | Aug-09 | Sep-09 | Oct-09 | Nov-09 | Dec-09 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pacific share of estimated BOE (barrels of Oil Equivalent) | 561,348 | 70,876 | 67,378 | 71,420 | 60,673 | 51,081 | 50,557 | 46,956 | 48,392 | 46,500 | 47,514 |
| Estimated Pacific Revenue ($39 / Barrel) | $21,892,577 | $2,764,181 | $2,627,744 | $2,785,388 | $2,366,258 | $1,992,165 | $1,971,716 | $1,831,297 | $1,887,274 | $1,813,502 | $1,853,052 |
| Estimated Operating Expense owed by Pacific Energy | $40,670,629 | $3,984,098 | $3,547,620 | $4,045,761 | $4,199,125 | $4,208,910 | $4,390,614 | $3,992,350 | $5,110,362 | $3,686,866 | $3,505,123 |
| Estimated Capital Expenditures owed by Pacific Energy | $3,478,409 | $171,276 | $184,823 | $220,159 | $387,397 | $470,297 | $474,875 | $418,094 | $672,983 | $281,100 | $197,405 |
| Total estimated expenses owed by Pacific Energy | $44,149,238 | $4,155,374 | $3,732,443 | $4,265,920 | $4,586,523 | $4,679,207 | $4,865,489 | $4,410,444 | $5,783,345 | $3,967,966 | $3,702,528 |
| Estimated Pacific Net Revenue | (22,256,661.09) | (1,391,192.33) | (1,104,698.33) | (1,480,532.05) | (2,220,264.52) | (2,687,042.24) | (2,893,772.99) | (2,579,147.31) | (3,896,071.41) | (2,154,463.20) | (1,849,476.70) |

Notes

Revenue based on $39/barrel ($38.97 was per barrel revenue.
Assume 7.5% Royalties paid by Pacific.

Attachment 7 to Findlay Affidavit
1 of 1