IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PACIFIC ENERGY RESOURCES LTD., *et al.*, [1] | ) | Case No. 09-10785(KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

Deadline for Objections:  May 27, 2009 at 4:00 p.m. prevailing Eastern time
Hearing Date:  June 3, 2009 at 1:00 p.m. prevailing Eastern time

### MOTION OF THE DEBTORS FOR AN ORDER AUTHORIZING ABANDONMENT OF INTERESTS IN THE SPURR PLATFORM LOCATED IN ALASKA AND REJECTION OF EXECUTORY CONTRACTS RELATING THERETO

The above-captioned debtors and debtors in possession (the "Debtors") hereby

move (the "Motion") the Court for entry of an order:  (a) pursuant to section 554 of title 11 of the

United States Code (the "Bankruptcy Code"), authorizing the Debtors to abandon *nunc pro tunc*

to the Petition Date (as defined below) their interests in an offshore oil and gas platform

commonly designated the "Spurr Platform" located in Alaska; and (b) pursuant to section 365 of

the Bankruptcy Code, authorizing the Debtors to reject any executory contracts relating to the

Spurr Platform (together, the "Rejected Contracts").[2]  A detailed description of the Spurr

Platform and the interests therein that the Debtors seek to abandon (including the Rejected

---

[1]  The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are:  Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); San Pedro Bay Pipeline Company (1234); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463).  The mailing address for all of the Debtors is 111 W. Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

[2]  The Debtors reserve all rights to argue that the Rejected Contracts are not executory contracts or that the Debtors do not have any obligations under such agreements.

Contracts) are set forth in the **Exhibit A** hereto (together, the "Abandoned Assets").[3]  The

Abandoned Assets are burdensome and of inconsequential value or benefit to the Debtors'

estates.  In support of this Motion, the Debtors respectfully state as follows:

<h3 align="center">Preliminary Statement</h3>

1.      The Spurr Platform has ceased operations and is being decommissioned.

The designated operator of the Spurr Platform is Marathon Oil Company ("Marathon").

Marathon and the Debtors each have a 50% ownership interest in the Spurr Platform.  However,

the Debtors' responsibility for decommissioning liability is limited to no more than 31.6% of

total costs.[4]  The projected cost of decommissioning the Spurr Platform is expected to range

between $21.0 million to $35.0 million (of which the Debtors would be responsible for $6.6

million to $11.1 million).  To date, the Debtors have received demand from Marathon for

payment of the Debtors' share of initial decommissioning costs totaling $453,460.  Because the

Spurr Platform is no longer an operating property and is in the process of decommissioning, the

Abandoned Assets are a material liability of the Debtors' estates.  Accordingly, the Debtors seek

to abandon the Abandoned Assets (and to reject the Rejected Contracts) to avoid any

administrative expense associated therewith.

2.      Upon abandonment, the Debtors propose that title to the Abandoned

Assets pass to Marathon, as the party in possession and control of the Spurr Platform.  The

---

[3]  Technically, the Abandoned Assets belong to Pacific Energy Alaska Operating LLC.  Out of an abundance of caution and in order to ensure that all interests in the Abandoned Assets are addressed by this Motion, the Debtors file this Motion jointly and hereby seek to abandon any and all of their respective interests in the Abandoned Assets.
[4]  For purposes herein, the term "decommissioning" refers to the process of disassembling an oil and gas drilling and processing platform, plugging and abandoning any oil and gas wells, restoring the surface, and removing all equipment or pipelines associated with such platform or wells in a manner consistent with applicable non-bankruptcy law.

68773-002\DOCS_SF:65003.4

Debtors believe that Marathon, in its capacity as operator and part owner of the property, will be held responsible by applicable state and regulatory authorities to fulfill all decommissioning obligations associated with the property. The Debtors (in their sole discretion) will cooperate with Marathon to transition the Debtors' interests in the Abandoned Assets, but the Debtors do not intend to fund any portion of the decommissioning liability associated with the Abandoned Assets on an administrative basis.

### Jurisdiction

3.      This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) (A) and (L). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory predicates for the relief requested herein are sections 365 and 554 of the Bankruptcy Code and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Background

5.      On March 9, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

68773-002\DOCS_SF:65003.4

7.     No request has been made for the appointment of a trustee or an examiner in this case. The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors on March 19, 2009.

8.     The Debtors are a group of independent energy companies engaged in the acquisition, development and exploitation of oil and gas properties in the western United States. The Debtors' current oil and gas assets are located offshore near California and principally offshore in Alaska. The Debtors acquired their current oil and gas assets in transactions occurring in the fourth quarter of 2006 and during 2007, and their existing secured debt is related to these acquisitions. The Debtors' revenue is largely dependent on the market price for the underlying crude oil produced, in addition to the level of production. Their revenue for 2008 was approximately $226.2 million.

## The Abandoned Assets

9.     The Spurr Platform is an offshore oil and gas platform in Cook Inlet, Alaska that was erected in the 1960s. It is located in waters with an average depth of 75 feet. The Spurr Platform was previously an operating facility, but is currently in the process of decommissioning. A detailed description of the Spurr Platform and the other Abandoned Assets is set forth in **Exhibit A** hereto.

10.     As noted above, the Debtors (by and through Pacific Energy Alaska Operating LLC) have a 50% ownership interest in the Spurr Platform, but the Debtors' responsibility for decommissioning liabilities is limited to no more than 31.6% of total costs. The Debtors do not have a working interest in the real property or the mineral rights underlying

4

the Spurr Platform. Marathon is the designated operator and is responsible for a majority of

decommissioning costs associated with the Spurr Platform totaling at least 68.4% thereof. The

cost of decommissioning the property is expected to range between $21.0 million to $35.0

million (of which the Debtors would be responsible for $6.6 million to $11.1 million). To date,

the Debtors have received demand from Marathon for payment of $453,460 on account of the

Debtors' share of initial decommissioning expenses. The Debtors are obligated to pay their

share of the decommissioning costs pursuant to various contractual arrangements.

11.    Given that the Spurr Platform is out of commission, the Debtors do not

(and will not) realize any positive value out of the property. It is solely a liability of the Debtors'

estates. Accordingly, in order to avoid any administrative expense associated with the Spurr

Platform, the Debtors seek to abandon it *nunc pro tunc* to the Petition Date. Likewise, the

Debtors seek authority to reject the Rejected Contracts that are interrelated with the Debtors'

interests in the Spurr Platform and the other Abandoned Assets.

12.    The Debtors propose to abandon the Abandoned Assets to Marathon, as

operator, part owner, and majority obligor for decommissioning costs. The Debtors believe that

Marathon will be held independently liable by applicable state and regulatory authorities to

fulfill the decommissioning obligations associated with the Spurr Platform.

## **Relief Requested**

13.    By this Motion, the Debtors seek to abandon the Abandoned Assets

effective as of the Petition Date because they are burdensome to the Debtors' estates and are of

no value or other benefit to the estates. For the same reason, the Debtors seek to reject the

5

Rejected Contracts that are associated with the Abandoned Assets. Upon entry of an order

granting this Motion, the Debtors will provide reasonable cooperation (as determined by the

Debtors in their sole discretion) to Marathon with respect to the Abandoned Assets, but the

Debtors will not be obligated to fund any expenses associated with decommissioning the Spurr

Platform as an administrative expense of these estates.

### Basis for Relief

14.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a

hearing, the trustee [or debtor-in-possession] may abandon any property of the estate that is

burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C.

§ 554(a); *see also* FED. R. BANKR. P. 6007. "The trustee's power to abandon property is

discretionary." *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) (citations omitted). "Courts

defer to the trustee's judgment and place the burden on the party opposing the abandonment to

prove a benefit to the estate and an abuse of the trustee's discretion." *Id.* "The party opposing

the abandonment must show some likely benefit to the estate, not mere speculation about

possible scenarios in which there might be a benefit to the estate." *Id.* The court only needs to

find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis;

and 4) within the trustee's scope of authority." *Id.*

15.    Upon abandonment, abandoned property is no longer part of the

bankruptcy estate and is treated as if administration of the asset never occurred. 4 NORTON

BANKRUPTCY LAW AND PRACTICE at § 74:2 (3d ed. 2008). Hence, abandonment is retroactive to

the petition date and constitutes a divestiture of the estates' interests in the property to the party

6

with a possessory interest in it. *See In re Guterl Special Steel Corp.*, 316 B.R. 843, 861 (Bankr. W.D. Pa. 2004) (abandoned property reverts *nunc pro tunc* to the debtor or the party with possessory right to the property as of the petition date); *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n.1 (9th Cir. 1964) ("The ordinary rule is that, when a trustee abandons property of the bankrupt, title reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously.") (citations omitted); *see also Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 507 (1986) ("Although § 544 does not specify to whom the property is to be abandoned, the legislative history suggests that it is to the person having a possessory interest in the property.... Such abandonment is to the person having the possessory interest in the property."); *Ohio v. Kovacs*, 469 U.S. 274, 284 n. 12 (1985) ("[A]bandonment is to the person having the possessory interest in the property.").

16.     As noted above, once the trustee or debtor-in-possession makes a reasonable business judgment to abandon property of the estate, the threshold for approval of the abandonment is low. Here, the Debtors have determined in their sound business judgment and in good faith to abandon the estates' interests in the Spurr Platform and the associated Abandoned Assets. The Spurr Platform is a material liability of these bankruptcy estates given that it is no longer operating and will require between $21.0 million to $35.0 million in decommissioning expenditures (of which the Debtors will be responsible for $6.6 million to $11.1 million). Under any foreseeable set of circumstances, there is no value that can be realized out of the Abandoned Assets, and they will be a burden on the administration of these cases. The Debtors therefore request authority to abandon the Abandoned Assets.

7

17.    The Debtors further submit that Marathon, as operator, majority obligor for decommissioning costs, and the party in possession and control of the Spurr Platform, should be designated as the recipient of the Abandoned Assets.  The Debtors believe that Marathon will be held responsible by applicable state and regulatory authorities for the entirety of the decommissioning costs associated with the Spurr Platform.  If this Motion is approved, the Debtors will endeavor to transition the Abandoned Assets to Marathon in an orderly fashion, but the Debtors do not intend to fund any decommissioning obligations on an administrative basis.

18.    The Debtors are aware of the limited exception to the estates' ability to abandon property with environmental restrictions based upon the U.S. Supreme Court's decision in *Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 507 (1986).  As stated by this Court in *In re Insilco Technologies, Inc.*, *Midlantic* and its progeny stand for the proposition that "property of the estate may not be abandoned if the abandonment will act to contravene laws designed to protect public health and safety and will pose an imminent threat to the public's welfare." 309 B.R. 111, 114 (Bankr. D. Del. 2004).  Given Marathon's role as operator and its ongoing efforts to decommission the Spurr Platform consistent with applicable non-bankruptcy law, the Debtors submit that abandonment of the Abandoned Assets will not contravene any laws designed to protect public health and safety and will not pose an imminent threat to the public's welfare.  Accordingly, the Debtors urge the Court to authorize such abandonment.

19.    In addition, the Debtors seek authority to reject the Rejected Contracts. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the

8

court's approval, may … reject any executory contract or unexpired lease of the debtor." 11

U.S.C. § 365(a); *see also* FED. R. BANKR. P. 6006. Rejection of an executory contract or

unexpired lease is appropriate where rejection would benefit the Debtors' estates. *See Sharon

Steel Corp. v. National Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40

(3d Cir. 1989). Whether the assumption or rejection of an executory contract or unexpired lease

would benefit the estate is a matter reserved for the Debtors' business judgment. *See NLRB v.

Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an

executory contract is simply whether rejection would benefit the estate, the 'business judgment'

test."). If the debtors' business judgment has been reasonably exercised, a court should approve

the assumption or rejection of an unexpired lease or executory contract. *In re Federal Mogul

Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

20.     Here, for the same reasons that the Debtors seek to abandon the

Abandoned Assets, the Debtors seek to reject the Rejected Contracts that are associated with the

Abandoned Assets.

### Request for Waiver

21.     Among other things, Bankruptcy Rule 6007(a) requires that the Debtors

serve a copy of this Motion and their intent to abandon the Abandoned Assets on "all creditors."

The Debtors' consolidated matrix contains over 1,100 creditors. The Debtors submit that service

of this Motion on all of these individuals is overly burdensome. The Debtors will serve a copy

of this Motion and supporting documents on the constituents set forth below and, therefore,

9

request a limited waiver of the service requirement set forth in Rule 6007.  The Debtors submit that the requested waiver is appropriate and will properly and timely effectuate notice.

22.    The Debtors also request that the Court waive the 10-day stay associated with rejection of the Rejected Contracts under Bankruptcy Rule 6007(d) so that the Court's order may go effective immediately.

### Notice

23.    Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known:  (a) the Office of the United States Trustee, (b) the Official Committee of Unsecured Creditors; (c) the Debtors' pre-petition and post-petition lenders; (d) all parties who have an interest in the Abandoned Assets (including the Rejected Contracts); and (e) all parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

24.    No previous motion for the relief sought herein has been made to this or any other Court.

10

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) granting this Motion; (b) authorizing the abandonment of the Abandoned Assets *nunc pro tunc* to the Petition Date pursuant to section 554 of the Bankruptcy Code; (c) authorizing the rejection of the Rejected Contracts pursuant to section 365 of the Bankruptcy Code; and (d) granting such other and further relief as the Court deems just and proper.

Dated: May 11, 2009                    PACHULSKI STANG ZIEHL & JONES LLP


                                       Laura Davis Jones (DE Bar No. 2436)
                                       Ira D. Kharasch (CA Bar No. 109084)
                                       James E. O'Neill (DE Bar No. 4042)
                                       Maxim B. Litvak (CA Bar No. 215852)
                                       919 North Market Street, 17th Floor
                                       Wilmington, Delaware 19801
                                       Telephone: (302) 652-4100
                                       Facsimile: (302) 652-4400
                                       E-mail:       ljones@pszjlaw.com
                                                     ikharasch@pszjlaw.com
                                                     joneill@pszjlaw.com
                                                     mlitvak@pszjlaw.com

                                       Counsel for Debtors and Debtors in Possession

68773-002\DOCS_SF:65003.4