**EXHIBIT "A"**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PACIFIC ENERGY RESOURCES, LTD., *et al.* [1] | ) | |
| | ) | |
| | ) | Case No. 09-10785 (KJC) |
| | ) | |
| Debtors, | ) | |
| | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| MARATHON OIL COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 09- 51004 |
| | ) | |
| PACIFIC ENERGY RESOURCES, LTD., | ) | |
| PETROCAL ACQUISITION CORP., | ) | |
| PACIFIC ENERGY ALASKA HOLDINGS, LLC, | ) | |
| CARNEROS ACQUISITION CORP., | ) | |
| PACIFIC ENERGY ALASKA OPERATING LLC, | ) | |
| SAN PEDRO BAY PIPELINE COMPANY, | ) | |
| CARNEROS ENERGY, INC. | ) | |
| GOTLAND OIL, INC., | ) | |
| CHEVRON CORPORATION, | ) | |
| UNION OIL COMPANY OF CALIFORNIA, | ) | |
| FOREST ALASKA HOLDING, LLC, and | ) | |
| FOREST OIL COMPANY | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND FOR DAMAGES

Comes now Creditor, Marathon Oil Company ("Marathon"), and alleges as follows:

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); San Pedro Bay Pipeline Company (1234); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463). The mailing address for all of the Debtors is 111 W. Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

Dkt. No. 370 | 1

Date Filed 6|1|09

## NATURE OF ACTION

This is a complaint filed by Marathon seeking declaratory judgment ("Complaint") against the following parties: Pacific Energy Resources, Ltd. and the remainder of the above-captioned debtors, Petrocal Acquisition Corp., Pacific Energy Alaska Holdings, LLC, Carneros Acquisition Corp., Pacific Energy Alaska Operating LLC, San Pedro Bay Pipeline Company, Carneros Energy, Inc., and Gotland Oil, Inc. (collectively, the "Debtors"); Chevron Corporation and Union Oil Company of California (collectively "Union"); and Forest Oil Company and Forest Alaska Holding LLC (collectively "Forest"). Marathon seeks declaratory judgment as to the respective rights and obligations of the parties mentioned in the individual claims herein regarding the costs of abandoning and decommissioning[2] certain onshore and offshore oil and gas drilling, development, production and processing facilities located in the Cook Inlet, Alaska, referred to herein as the "Spurr Facilities."

## VENUE AND JURISDICTION

1.    This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157 in that this proceeding arises under Title 11 of the United States Code (the "Bankruptcy Code") and is related to the above-captioned chapter 11 case.

2.    This is a core Proceeding that the Court may hear pursuant to 28 U.S.C. § 157.

3.    Venue is proper in the District of Delaware pursuant to 28 USC §§ 1408 and 1409.

---

[2] In connection with this Complaint, we refer to "abandonment" or "decommissioning" synonymously as the process of disassembling an oil and gas drilling and processing platform, plugging and abandoning any oil and gas wells, restoring the surface, and removing all equipment or pipelines associated with such platform or wells in a manner consistent with applicable law.

## FACTS

4.      This case involves the abandonment and decommissioning of the Spurr Facilities. The Spurr Facilities have been the subject of several transfers and apportionment over the past forty (40) years. The portions most pertinent to this Complaint, upon information and belief, are described hereinbelow.  The Spurr Facilities are no longer producing oil and need to be decommissioned pursuant to Alaska law and Lease ADL 17597, which is defined in paragraph 5 below.

### A.  Lease ADL 17597: Spurr Facilities, the Unit Agreement and Unit Operating Agreement

5.      Superior Oil Company ("Superior") was the original lessee for State of Alaska Oil and Gas Lease ADL 17597 executed on or about March 1, 1962 ("Lease ADL 17597").  On April 17, 1962, Superior assigned to Texaco, Inc. ("Texaco") a fifty percent (50%) interest in Lease ADL 17597.  This assignment was approved by the Alaska Department of Natural Resources ("ADNR").  The Spurr Platform was built on Lease ADL 17597 by Texaco and Superior in or around 1966.  In 1971, Lease ADL 17597 was joined with other leases to form the North Trading Bay Unit ("NTBU").  These arrangements were  documented by the Unit Agreement, for the Development and Operation of the Hemlock and G Formation, North Trading Bay Unit, State of Alaska, dated June 1, 1971 ("Unit Agreement") and the Unit Operating Agreement, Hemlock and G Formation, North Trading Bay, Cook Inlet, Alaska, dated June 1, 1971 ("Unit Operating Agreement").

6.      The NTBU is composed of three state leases, comprising 1,600 acres in Cook Inlet, Alaska.  The original parties were Atlantic Richfield Company ("ARCO"), Texaco and Superior.  Texaco and Superior jointly held the interests in Lease ADL 17597, while, on

3

information and belief, ARCO held other leases that became unitized as part of the NTBU.  At the time of formation of the NTBU, ARCO had already built and developed an oil and gas drilling platform known as the Spark Platform (with accompanying wells) and the ARCO Granite Point Production Facility, and Texaco and Superior had already built the Spurr Platform with accompanying wells and the Texaco-Superior Granite Point Production Facility.  All such facilities were contributed to the NTBU.  The Unit Operating Agreement designated ARCO as the original Unit Operator of the NTBU.  ARCO was designated as the Sub-Operator of Spark Platform, pipelines common to Spark and Spurr, and the ARCO Granite Point Production Facility, and Texaco was designated as the Sub-Operator of Spurr Platform and the Texaco-Superior Granite Point Production facility.   However, by an amendment executed contemporaneously with the Unit Operating Agreement, the Sub-Operatorship of Spurr was assigned from Texaco to ARCO.  Texaco, Superior and ARCO retained control over their respective contributed platforms to use for non-unitized pools.

**B.  1977 ARCO Assignment**

7.     In or around 1977, ARCO assigned its interest as Sub-Operator of the Spurr Platform back to Texaco and Superior.  Although ARCO resigned as Sub-Operator of the Spurr Platform, it retained its Unit Operatorship of the NTBU.

**C.  1984 Property Exchange**

8.     In the Agreement, by and between ARCO and Marathon, dated May 3, 1984 (the "1984 Agreement"), as part of a property exchange with ARCO, Marathon acquired all of ARCO's leasehold interest, working interest, reserves, hydrocarbon production, obligations, right and title in the NTBU, the Unit Agreement and the Unit Operating Agreement. This included the other leases held by ARCO that had become part of the NTBU, Spark Platform and the ARCO

4

Granite Point Production facility.  Also, as part of the 1984 Agreement, Marathon became the Unit Operator of the NTBU.

### D. **1988 Letter Agreement**

9.    Upon information and belief, in July 1988, Texaco and Mobil Exploration and Producing North America, Inc. ("Mobil"), as successor in interest to Superior, assigned their full interest in Lease ADL 17597, the Spurr Platform and other relevant leases and the Texaco-Superior Granite Point Production Facilities to Union Oil Company of California ("Union").  In the Letter Agreement, Texaco and Mobil Cook Inlet Producing Properties dated July 26, 1988 (the "1988 Letter Agreement"), Union assigned a fifty percent (50%) interest in the Spurr Platform to Marathon, a fifty percent (50%) interest in gas reserves, and one hundred percent (100%) of the interest in oil reserves and production.  The lease assignment that was approved by ADNR transferred fifty percent (50%) of the interest in the lease to Marathon without distinguishing between oil or gas reserves or the Spurr Platform.  In September 1988, Union resigned as the Spurr Platform Sub-Operator and elected Marathon to the Spurr Platform Sub-Operatorship.  Upon information and belief, Union retained its interest in the Texaco-Superior Granite Point Production Facilities and related leases.

### E. **Operation of the NTBU and Spurr Platform**

10.    Since 1988, Marathon has been the Operator of the NTBU and the Sub-Operator of the Spurr Platform.  Marathon manages all of the properties that comprise the NTBU.  From 1988 to 1992 the Spurr Facilities were active as an oil and gas production platform facility operated by Marathon.  The Spurr platform ceased production in 1992.  Decommissioning work related to the Spurr Facilities has begun but further work is required in order to finalize

Decommissioning of the Spurr Facilities in accordance with the plans submitted to the ADNR, relevant Alaska statutes and regulations, and contractual obligations.

## F. **1998 Forcenergy Assignment**

11.    In 1998, Union notified Marathon that pursuant to the Assignment and Bill of Sale, by and between Forcenergy, Inc. ("Forcenergy") and Union, dated December 22, 1998 (the "1998 Forcenergy Assignment"), it had conveyed its interest in certain "Property" (including the Spurr Facilities) and one million dollars ($1,000,000) to Forcenergy.  The Property was defined by referencing Exhibit A of the 1998 Forcenergy Assignment.  Pursuant to the 1998 Forcenergy Assignment, Forcenergy agreed to:

> [P]erform and be bound by all provisions, contractual duties and obligations of [Union] as owner of the Property to the extent that the same are valid and subsisting on the Effective Date.

> [C]omply with all [laws] of any governmental authority claiming jurisdiction over the Property, including, . . . those laws pertaining to the *abandonment of wells, the plugging of inactive wells and the restoration of the surface*. (emphasis added)

> [I]ndemnify and defend Assignor, Assignor's subsidiary and affiliated companies . . .from and against all claims, demands, causes of action, or liability of any nature or kind, including (without limitation) civil fines, penalties, costs of *cleanup, or plugging liabilities*, brought by any and all persons, entities or governmental agencies . . resulting from or arising out of any liability caused by or connected with the use of the Property, and any *environmental compliance or abandonment activities* associated with the Property.[3] (emphasis added)

> Assignee hereby assumes sole and complete responsibility for the Property and *timely removal of said equipment and property from the leasehold property in accordance with any applicable oil and gas lease and governmental regulations* pertaining thereto and, from and after the Effective Date, for any and all damages or liability arising out of or in any way connected with said equipment and its removal, use and maintenance. (emphasis added)

12.    On December 28, 1998, Union notified Marathon of the assignment to Forcenergy.  In such notice Unocal stated that it "has retained its working interest ownership in

---

[3] 1998 Forcenergy Assignment at §§ 1 and 2.

the NTBU and associated Lease ADL 17597." On information and belief, Union did assign its interest in the Texaco-Superior Granite Point Production Facility to Forcenergy.

## G. Transfers from Forcenergy to Forest Oil and from Forest Oil to Pacific

13.     On information and belief, Forcenergy filed for bankruptcy protection on March 21, 1999. As part of its reorganization, Forcenergy was merged with Forest Acquisition I, a subsidiary of Forest Oil Company. On information and belief, by virtue of the merger, Forest acquired all of Forcenergy's interest in the 1998 Forcenergy Assignment. After six years of Forest ownership, on October 16, 2007, Pacific notified Marathon that it had acquired all of Forest's interest in Alaska oil and gas properties as well as the Membership Interest in Forest Alaska Holding, LLC on August 27, 2007. On information and belief, by virtue of the acquisition of Forest Alaska Holding, LLC, Pacific also acquired all of Forest's interest in the 1998 Forcenergy Assignment.

## H. Spurr Decommissioning

14.     Marathon, as Operator of the NTBU and Sub-Operator of the Spurr Platform, undertook several activities related to the Spurr Facilities after the transfer of the Spurr Facilities from Forcenergy to Forest, some of which may be characterized as decommissioning or abandonment activities. In connection therewith Marathon submitted several authority for financial expenditures ("AFEs") to Forest and later Pacific for costs associated with the Spurr Facilities. Several AFEs submitted to Forest were approved and returned to Marathon. On information and belief, Forest submitted payments for its share of expenditures associated with such AFEs. A list of AFEs executed by Forest were sent to Jim Arlington, Vice President of Land and Government Affairs for Pacific, after Pacific purportedly succeeded to Forest's interest

in the Spurr Facilities. On information and belief, Mr. Arlington previously had been an employee and officer of Forest or one of its subsidiaries.

15.     In 2008, Marathon submitted to the ADNR the North Trading Bay Unit, Final Thirty-Fifth Plan of Development (and First Plan of Abandonment), dated May 30, 2008 (the "2008 POD"). The 2008 POD was copied to Mr. Arlington.

16.     On March 20, 2009, Marathon submitted a revised Decommissioning plan to the ADNR titled the Final Thirty-Sixth Plan of Development, North Trading Bay Unit, Cook Inlet, Alaska ("2009 POD") deferring some but not all Spurr Facilities Decommissioning work due in part to Pacific's bankruptcy.

17.     As a result of the Unit Agreement, the Unit Operating Agreement, Lease ADL 17597, the 1988 Letter Agreement, the 1998 Forcenergy Assignment and applicable Alaska law, Debtors, Union, Chevron Corporation, Forest (and any of such entities' respective affiliates) and/or Marathon may have proportionate responsibility to the State of Alaska for certain decommissioning activities related to the Spurr Facilities. As a result of the various agreements by and between them, these same parties may also have third party liability to the State of Alaska for certain Decommissioning activities related to the Spurr Facilities.

## I. Debtors' Bankruptcy

18.     On March 9, 2009 (the "Petition Date"), the Debtors each filed a petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code").

19.     The Debtors continue in possession of their property and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

20.    No request has been made for the appointment of a trustee or an examiner in the above-referenced cases.    The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors on March 19, 2009.

21.    On April 2, 2009, Marathon sent Pacific a letter requesting that the Debtors obtain the Court's approval to continue Decommissioning activities related to some of the Spurr Facilities and for authority to pay Marathon for the Debtors' portion of the costs for the first phase of such Decommissioning activities.

22.    Debtors responded by filing a Motion in this docket on May 12, 2009[4] to abandon the Spurr Facilities to Marathon and reject the contracts binding Pacific to pay for abandonment costs as executory contracts (the "Motion"). The exhibits to the Motion include a description of the property that Pacific seeks to abandon which is virtually identical to the list of "Property" scheduled as part of the 1998 Forcenergy Assignment, but also includes a specific listing for the Unit Agreement, Unit Operating Agreement, the 1988 Letter Agreement and the 1998 Forcenergy Assignment as rejected contracts.[5]    This indicates that Debtors have obligations under all those agreements.

23.    The Motion seeks an order that authorizes (1) abandonment of the Spurr Facilities and other interests described in Exhibit A to the Motion (the "Abandoned Assets") to Marathon effective as of the Petition Date; (2) rejection of any executory contracts relating to the Spurr Platform; (3) title to the Abandoned Assets be transferred to Marathon; and (4) the Debtors to cooperate with Marathon to transition the Debtors' interests in the Abandoned Assets without

---

[4] Motion of the Debtors for an Order Authorizing Abandonment of Interests in the Spurr Platform Located in Alaska and Rejection of Executory Contracts Relating Thereto, In Re: Pacific Energy Resources LTD., et al., Case Co. 09-10785(KFJ), filed on Tuesday, May 12, 2009 (U.S. Bankruptcy Court for the District of Delaware) (the "Motion").

[5] *See* Exhibit A to the Motion.

funding any portion of the decommissioning liability associated with the Abandoned Assets on an administrative basis.   Contemporaneous with this Adversarial Proceeding, Marathon is filing its Objection to Debtors' Motion.   Marathon contends that Debtors' Motion is deficient for a number of reasons, not the least of which is because it seeks to affect the rights and obligations of parties other than Marathon and Debtors under the various agreements and regulatory requirements implicated in Decommissioning the Spurr Facilities.

24.    Debtors' Motion creates a case and controversy between Debtors, Marathon, Union and Forest regarding allocation of responsibility for the costs to decommission Spurr Platform.

25.    Upon information and belief, Debtors contend that they have no liability and/or responsibility for Decommissioning activities regarding the Spurr Facilities.   Upon information and belief, Union, Chevron and Forest similarly contend that they have no liability and/or responsibility for Decommissioning activities regarding the Spurr Facilities.    Therefore, controversies exist between the parties regarding their respective responsibilities for the Spurr Facilities Decommissioning activities. Wherefore, Marathon brings its claims for declaratory judgment.

### FIRST CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Debtors are Liable to Marathon for Union's Proportional Share of Decommissioning Costs)**

26.    Marathon alleges and incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

27.    To the extent that Forest assigned to Debtors Union's obligations under Lease ADL 17597, the 1988 Letter Agreement, the Unit Agreement and/or the Unit Operating Agreement, Debtors are contractually obligated to Marathon.

28.    Wherefore, Debtors are liable to Marathon for Union's share of the current and future costs to decommission the Spurr Facilities.

## SECOND CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Debtors are liable to Marathon, as a Third Party Beneficiary, for Union's Share of the Decommissioning Costs)**

29.    Marathon alleges and incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

30.    To the extent that, as a result of Debtors acquisition of all of Forest's interest in Alaska oil and gas properties as well as the Membership Interest in Forest Alaska Holding, LLC on August 27, 2007 or otherwise, Debtors have assumed or have agreed to perform Union's obligations pursuant to the 1988 Letter Agreement, Unit Agreement, the Unit Operating Agreement and/or Lease ADL 17597, Marathon is a third party beneficiary of such assumption or agreement.  Marathon is also a third party beneficiary to the 1998 Forcenergy Assignment any other agreement or transaction by which Debtors may have obligated themselves with regard to the NTBU and/or the Spurr Facilities.

31.    Wherefore, Debtors are liable to Marathon, as a third party beneficiary, for Union's share of the current and future costs to decommission the Spurr Facilities.

## THIRD CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Debtors are liable to Marathon, as a Third Party Beneficiary of Debtors' Obligations to the State of Alaska, for Debtors' Share of the Decommissioning Costs)**

32.    Marathon alleges and incorporates by reference paragraphs 1 through 31 as if fully set forth herein.

33.    To the extent that Debtors have legal obligations to the State of Alaska for abandonment and decommissioning of the Spurr Facilities, including, but not limited to Debtors' assumption of obligations under Lease ADL 17597, the Unit Agreement, applicable statutes and

regulations, the 1998 Forcenergy Assignment or other agreements or transactions by which Debtors may have obligated themselves with regard to the NTBU and/or the Spurr Facilities, Marathon is a third party beneficiary of those obligations.

34.    Wherefore, Debtors are liable to Marathon, as third party beneficiary of Debtors' obligations to the State of Alaska, for Debtor's share for the current and future costs to decommission the Spurr Facilities.

### FOURTH CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Marathon is Entitled to an Administrative Expense Claim from Debtors' Estate)**

35.    Marathon alleges and incorporates by reference paragraphs 1 through 34 as if fully set forth herein.

36.    To the extent that Debtors are responsible for decommissioning the Spurr Facilities, either by operation of law or other obligations, Debtors' estates will be benefited by Marathon's decommissioning of the Spurr Facilities.

37.    The decommissioning is a post-petition transaction which benefits the Debtors' estates because they involve liability, costs and expenses that the Debtors cannot avoid under Alaska law.    Moreover, failure to decommission the Spurr Facilities according to Alaska's statutes and regulations governing decommissioning could result in substantial fines to the Debtors.

38.    Both present and future decommissioning costs relating to the Spurr Facilities and attributable to the Debtors are actual, necessary costs and expenses of preserving the estates.

39.    Wherefore, Marathon is entitled to an administrative expense claim pursuant to 11 U.S.C. section 503(b)(1)(A) for Debtors' share of current and future costs to decommission the Spurr Facilities.

## FIFTH CLAIM FOR RELIEF
### (Claim for Declaratory Judgment That Union is Liable to Marathon for its Union's Share of Decommissioning Costs pursuant to the 1988 Letter Agreement)

40.    Marathon alleges and incorporates by reference paragraphs 1 through 39 as if fully set forth herein.

41.    Union and Marathon agreed to a proportional division of abandonment and decommissioning costs in the 1988 Letter Agreement.

42.    Union's obligations under the 1988 Letter Agreement were delegated, but not assigned, pursuant to the 1998 Forcenergy Assignment and Union retains its contractual obligations regarding abandonment and decommissioning of the Spurr Facilities.

43.    Wherefore, Union is liable to Marathon for Union's share of the current and future costs to decommission the Spurr Facilities.

## SIXTH CLAIM FOR RELIEF
### (Claim for Declaratory Judgment that Union, as Surety, is Liable to Marathon, as Third Party Beneficiary, for Union's Share of Decommissioning Costs)

44.    Marathon alleges and incorporates by reference paragraphs 1 through 43 as if fully set forth herein.

45.    Union's obligations under the 1988 Letter Agreement were delegated, but not assigned, pursuant to the 1998 Forcenergy Assignment and Union is a surety for performance by Forest of Union's obligations under the 1988 Letter Agreement.    Marathon is a third party beneficiary of Union's delegation to Forest, as successor to Forcenergy.

46.    Wherefore, Union is liable to Marathon, as third party beneficiary, for Union's portion of the current and future costs to decommission the Spurr Facilities.

## SEVENTH CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Union is Liable to Marathon for Union's Share of Decommissioning Costs Pursuant to the Unit Agreement)**

47.    Marathon alleges and incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

48.    The Unit Agreement, to which Union and Marathon are parties, provides for allocation of decommissioning costs.  Union did not assign its working interest in the NTBU or Lease ADL 17597 and remains bound by its obligation pursuant to the Unit Agreement.

49.    Wherefore, Union is liable to Marathon for Union's share of the current and future costs to decommission the Spurr Facilities.

## EIGHTH CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Union is Liable to Marathon for Union's Share of Decommissioning Costs Pursuant to the Unit Operating Agreement)**

50.    Marathon alleges and incorporates by reference paragraphs 1 through 49 as if fully set forth herein.

51.    The Unit Operating Agreement, to which Union and Marathon are parties, provides for allocation of decommissioning costs.  Union did not assign its working interest in the NTBU or Lease ADL 17597 and remains bound by its obligation pursuant to the Unit Operating Agreement.

52.    Wherefore, Union is liable to Marathon for Union's share of the current and future costs to decommission the Spurr Facilities.

## NINTH CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Union is Liable to Marathon for Union's Share of Decommissioning Costs at Equity for Unjust Enrichment)**

53.    Marathon alleges and incorporates by reference paragraphs 1 through 52 as if fully set forth herein.

54.     Lease ADL 17597, under which Marathon and Union are co-lessees, provides that lessees are responsible to the State of Alaska for abandonment and decommissioning. Marathon is third party beneficiary to Union's obligations under Lease ADL 17597. To the extent that Union has any other legal obligations to the State of Alaska for abandonment and decommissioning of the Spurr Facilities, Marathon is also a third party beneficiary to those obligations.

55.     Wherefore, Marathon is entitled to equitable relief in the event that Marathon pays the current and/or future costs of decommissioning the Spurr Facilities and Union is unjustly enriched by avoiding Union's decommissioning obligations to the State of Alaska.

## TENTH CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Union is Liable to Marathon, in Common Law Indemnity, for Union's Share of the Decommissioning Costs)**

56.     Marathon alleges and incorporates by reference paragraphs 1 through 55 as if fully set forth herein.

57.     Lease ADL 17597, under which Marathon and Union are co-lessees, provides that lessees are responsible to the State of Alaska for abandonment and decommissioning. Marathon is third party beneficiary to Union's obligations under Lease ADL 17597. To the extent that Union has any other legal obligations to the State of Alaska for abandonment and decommissioning of the Spurr Facilities, Marathon is also a third party beneficiary to those obligations.

58.     Wherefore, Union is liable to Marathon, in common law indemnity, in the event that Marathon pays the current and/or future costs of decommissioning the Spurr Facilities and Union avoids its decommissioning obligations to the State of Alaska.

## ELEVENTH CLAIM FOR RELIEF
### (Claim for Declaratory Judgment that Forest is Liable to Marathon, as Third Party Beneficiary to the 1998 Forcenergy Assignment, for Union's Share of Decommissioning Costs)

59.     Marathon alleges and incorporates by reference paragraphs 1 through 58 as if fully set forth herein.

60.     Pursuant to the 1998 Forcenergy Assignment, Forest, as successor to Forcenergy, agreed to perform Union's obligations under the 1988 Letter Agreement and to perform certain abandonment and decommissioning activities.  Marathon is a third party beneficiary of the 1998 Forcenergy Assignment and Forest's agreement to perform Union's obligations.

61.     Wherefore, Forest is liable to Marathon for Union's portion of the current and future costs to decommission the Spurr Facilities.

## TWELFTH CLAIM FOR RELIEF
### (Claim for Declaratory Judgment that Forest is Liable to Marathon for Union's Obligations Under the 1988 Letter Agreement and Forcenergy's obligations under the 1998 Forcenergy Assignment)

62.     Marathon alleges and incorporates by reference paragraphs 1 through 61 as if fully set forth herein.

63.     To the extent that Union's obligations under the 1988 Letter Agreement were assigned to Forest, as successor to Forcenergy, Forest delegated, but did not assign, those obligations to Pacific.  Further, Forest delegated, but did not assign, its additional obligations under the 1998 Forcenergy Assignment.  Therefore, Forest is contractually responsible to Marathon for  obligations in both the 1988 Letter Agreement and the 1998 Forcenergy Assignment.

64.     Wherefore, Forest is liable to Marathon for Union's share of the current and future costs to decommission the Spurr Facilities.

16

## THIRTEENTH CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Forest, as Surety, is Liable to Marathon, as a Third Party Beneficiary,  for Pacific's performance of Union's  Obligations under the 1988 Letter Agreement and Forcenergy's Obligations under the 1998 Forcenergy Assignment)**

65.     Marathon alleges and incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66.     Forest has delegated to Pacific, but has not assigned, Union's obligations pursuant to the 1988 Letter Agreement and Forest's obligations, as successor to Forcenergy, under the 1998 Forcenergy Assignment.  Forest is a surety for performance by Pacific of Union's obligations under the 1988 Letter Agreement and 1998 Forcenergy Assignment.  Marathon is a third party beneficiary of Forest's  delegation to Pacific.

67.     Wherefore, Forest is liable to Marathon, as third party beneficiary, for Union's portion of the current and future costs to decommission the Spurr Facilities.

## FOURTEENTH CLAIM FOR RELIEF
**(Claim for Declaratory Judgment that Forest is Liable to Marathon, as a Third Party Beneficiary under the Unit Agreement, Unit Operating and or Lease ADL 17597, for Union's Share of the Decommissioning Costs)**

68.     Marathon alleges and incorporates by reference paragraphs 1 through 67 as if fully set forth herein.

69.     To the extent that Forest has assumed or has agreed to perform Union's obligations pursuant to the Unit Agreement, the Unit Operating Agreement and/or Lease ADL 17597, Marathon is third party beneficiary of such assumption or agreement.  Marathon is also a third party beneficiary to any other agreement or transaction by which Forest may have obligated itself with regard to the NTBU and/or the Spurr Facilities.

70.     Wherefore, Forest is liable to Marathon for Union's share of current and future costs to decommission the Spurr Facilities.

17

WHEREFORE, Marathon prays for a Judgment declaring that:

1)    Debtors are liable to Marathon for Union's share of current and future decommissioning costs;

2)    Debtors are liable to Marathon, as a third party beneficiary, for Union's share of current and future decommissioning costs;

3)    Debtors are liable to Marathon, as a third party beneficiary of Debtors' obligations to the State of Alaska, for Debtors' share of current and future decommissioning costs;

4)    Marathon is entitled to an administrative expense claim from Debtors' estate;

5)    Union is liable to Marathon for Union's share of current and future decommissioning costs pursuant to the 1988 Letter Agreement;

6)    Union, as surety, is liable to Marathon, as third party beneficiary, for Union's share of current and future decommissioning costs;

7)    Union is liable to Marathon for Union's  share of current and future decommissioning costs pursuant to the Unit Agreement;

8)    Union is liable to Marathon for Union's share of current and future decommissioning costs pursuant to the Unit Operating Agreement;

9)    Union is liable to Marathon for Union's share of current and future decommissioning costs at equity for unjust enrichment;

10)    Union is liable Marathon, in common law indemnity, for Union's share of current and future decommissioning costs;

11)    Forest is liable to Marathon, as third party beneficiary to the 1998 Forcenergy Assignment, for Union's share of current and future decommissioning costs;

12)    Forest is liable to Marathon for Union's obligations under the 1988 Letter Agreement and Forcenergy's obligations under the 1998 Force Energy Assignment;

13)    Forest, as surety, is liable to Marathon, as a third party beneficiary, for Pacific's performance of Union's obligations under the 1988 Letter Agreement and Forecenergy's obligations under the 1998 Forcenergy Assignment;

14)    Forest is liable to Marathon, as a third party beneficiary under the Unit Agreement, Unit Operating Agreement and/or Lease ADL 17597, for Union's share of the current and future decommissioning costs, and;

15)    for such other relief the Court deems just and proper.

Dated:  June 1, 2009                              **WOMBLE CARLYLE SANDRIDGE & RICE, PLLC**

_Kevin J. Mangan_

Francis A. Monaco, Jr. (#2078)
Kevin J. Mangan (#3810)
Ericka Fredricks Johnson (#5024)
222 Delaware Avenue, Suite 1501
Wilmington, DE 19801
T:  (302) 252-4320
F:  (302) 252-4330
E-Mail:  fmonaco@wcsr.com
            kmangan@wcsr.com
            erjohnson@wcsr.com

-and-

Richard E. Morton
Matthew E. Ross
One Wachovia Center, Suite 3500
301 South College Street
Charlotte, NC 28202
T:  704-331-4993
F:  704-444-9963
EMail:  rmorton@wcsr.com
            meross@wcsr.com

_Attorneys for Plaintiffs_

19