IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PACIFIC ENERGY RESOURCES LTD., *et al.*,[1] | ) | Case No. 09-10785(KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

**Deadline for Objections: To Be Determined**
**Hearing Date: To Be Determined**

### *ALTERNATIVE* MOTION OF PACIFIC ENERGY ALASKA OPERATING LLC FOR AN ORDER AUTHORIZING ABANDONMENT OF INTERESTS IN OIL AND GAS PROPERTIES AT TRADING BAY, ALASKA AND REJECTION OF EXECUTORY CONTRACTS RELATING THERETO

Pacific Energy Alaska Operating LLC ("PEAO"), one of the above-captioned debtors and debtors in possession (together with PEAO, the "Debtors"), hereby moves (the "Motion") the Court, solely in the absence of a sale, for entry of an order: (a) pursuant to section 554 of title 11 of the United States Code (the "Bankruptcy Code"), authorizing PEAO to abandon *nunc pro tunc* to the Petition Date (as defined below) its interests in oil and gas properties located in an area off the Alaska coast commonly referred to as "Trading Bay;" and (b) pursuant to section 365 of the Bankruptcy Code, authorizing PEAO to reject certain identified executory contracts relating thereto (together, the "Rejected Contracts").[2] A detailed description of PEAO's interests in Trading Bay that PEAO seeks to abandon (to the extent not

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); San Pedro Bay Pipeline Company (1234); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463). The mailing address for all of the Debtors is 111 W. Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

[2] Concurrently herewith, the Debtors are filing a separate alternative motion to abandon certain interests in Alaska outside Trading Bay.

sold), including the Rejected Contracts (to the extent not assumed), are set forth in **Exhibit A** hereto (together, the "Abandoned Assets").

<u>This Motion is filed in the alternative and solely to the extent that PEAO is unable to effectuate a sale of any or all of its interests in Trading Bay.</u>[3] In support of this Motion, PEAO respectfully states as follows:

### Preliminary Statement

1. PEAO shares working interests with Union Oil Company of California ("Union") in certain oil and gas leases with the State of Alaska located in Trading Bay. Union is the designated operator of these properties. Union also is the majority owner of the working interest with a 53.2% stake in Trading Bay. PEAO's working interest is limited to 46.8%.

2. The Abandoned Assets include several producing oil wells at Trading Bay that have been in production for decades and are approaching the end of their useful lives. The costs incurred by Union with respect to these wells far exceed the revenues generated from oil production.[4] The estimated cash expense allocated by Union to PEAO for these properties on a prepetition basis was approximately $4.5 million per month. Even with the cessation of oil production at Trading Bay as a result of recent volcanic and seismic activity in the area, PEAO faces a monthly cash shortfall of approximately $4.0 million based on certain fixed costs charged by Union.

---

[3] Concurrently herewith, the Debtors are filing a motion to establish procedures for the sale of the Debtors' interests in Alaska (including the Abandoned Assets).
[4] As set forth in prior filings, the Debtors dispute the level of operational expenses charged by Union.

3.      In addition, as the oil wells in Trading Bay are retired over the next five to ten years, there will be significant decommissioning obligations.[5] The projected cost of decommissioning the various Abandoned Assets is expected to exceed $100 million (of which the Debtors would be responsible for 46.8%).[6] For now, however, the Abandoned Assets remain in operation and firmly in control of Union as operator.

4.      Since early April 2009, the Debtors have been actively soliciting bids on the Abandoned Assets, along with the Debtors' other assets in Alaska and California. To date, PEAO has no "stalking horse" bidder or binding sale agreement with respect to the Abandoned Assets. PEAO also has not been funding its share of operational expenses associated with the Abandoned Assets. Hence, assuming that no bidder materializes in the immediate future and no sale of any or all of the Abandoned Assets can be consummated, PEAO seeks to abandon those Abandoned Assets that are not sold (and to reject those Rejected Contracts that are not assumed) as part of the sale process.

5.      Upon abandonment, PEAO proposes that title to the Abandoned Assets pass to Union, as the party in possession and control of the Abandoned Assets. PEAO believes that Union, in its capacity as operator and majority owner of the working interest, will be held responsible by applicable state and regulatory authorities to fulfill all current operational (and future decommissioning) obligations associated with Trading Bay. PEAO (in its sole discretion) will cooperate with Union to transition PEAO's interests in the Abandoned Assets. PEAO's

---

[5] This timetable could be extended if oil prices rise to a sufficient level to encourage further drilling.
[6] For purposes herein, the term "decommissioning" refers to the process of disassembling an oil and gas drilling and processing platform, plugging and abandoning any oil and gas wells, restoring the surface, and removing all equipment or pipelines associated with such platform or wells in a manner consistent with applicable non-bankruptcy law.

3

abandonment of the Abandoned Assets would not affect, and would be without prejudice to, any rights or claims of the estates, Union, or any other party in interest in (a) the segregated proceeds paid (or payable) to PEAO on account of its share of production from Trading Bay from and after the commencement of these cases, or (b) any other reserve accounts created by prior order of this Court.

## Jurisdiction

6. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) (A) and (L). Venue of this proceeding and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

7. The statutory predicates for the relief requested herein are sections 365 and 554 of the Bankruptcy Code and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

8. On March 9, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9. The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4

68773-001\DOCS_DE:149490.1

10. No request has been made for the appointment of a trustee or an examiner in this case. The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors on March 19, 2009.

11. The Debtors are a group of independent energy companies engaged in the acquisition, development and exploitation of oil and gas properties in the western United States. The Debtors' current oil and gas assets are located offshore near California and principally offshore in Alaska. The Debtors acquired their current oil and gas assets in transactions occurring in the fourth quarter of 2006 and during 2007, and their existing secured debt is related to these acquisitions. The Debtors' revenue is largely dependent on the market price for the underlying crude oil produced, in addition to the level of production. Their revenue for 2008 was approximately $226.2 million.

## The Abandoned Assets

12. Trading Bay consists of twelve offshore oil and gas leases with the State of Alaska dating from the early 1960s. The leases cover an area located in Cook Inlet, Alaska. Eleven of the leases have been unitized into a single unit commonly referred to as the Trading Bay Unit. The remaining lease stands alone and is commonly referred to as the Trading Bay Field. The Trading Bay Unit consists of approximately 17,859 gross developed acres with four offshore platforms and approximately thirty-one producing wells. The Trading Bay Field consists of approximately 3,280 developed acres with one offshore platform and approximately fifteen producing wells. A detailed description of the PEAO's interests in Trading Bay and the other Abandoned Assets is set forth on **Exhibit A** hereto.

13. As noted above, PEAO has a 46.8% working interest and Union has a 53.2% working interest in each of the properties in Trading Bay. Union is the operator of each of these properties. All of the production from Trading Bay is typically sold to a single customer on a monthly basis, Tesoro Alaska Company or an affiliate ("Tesoro"). As a result of recent volcanic and seismic activity in the area, Union has suspended oil production at Trading Bay. For oil deliveries that have occurred since the Petition Date, as to which Union asserts a disputed lien, Tesoro was directed by the Court to pay the Debtors the sum of $3,946,033.62 (plus any other amounts owed) on account of PEAO's share of oil production attributable to Trading Bay. These funds, which now total approximately $5,510,263, are currently held in a segregated account (the "Segregated Proceeds"), pending further order of the Court.

14. As operator, Union is responsible for all operational activities at Trading Bay. Union allocates a portion of the revenues and the costs of production to PEAO based upon its working interest in Trading Bay (there are ongoing disputes with Union as to the propriety of certain operational expenses). Based on the costs charged to PEAO by Union, even prior to the recent interruption in oil production, PEAO lost money on the Abandoned Assets. According to Union, PEAO has accrued and unpaid expenses (net of production) on account of its working interests in Trading Bay totaling $26,201,128.48 as of the end of February 2009. PEAO estimates that the cash burn for these properties, assuming regular oil production resumes, will total approximately $2.0 million per month (at current oil prices) based on anticipated Union charges. That cash shortfall increases to approximately $4.0 million per month so long as oil

6

production remains suspended. Since the Petition Date, PEAO has not paid any portion of the expenses associated with Trading Bay, but they continue to accrue.

15. There are also significant future decommissioning obligations associated with the Abandoned Assets. Trading Bay is a mature field. Oil and gas wells have been operating there for over 40 years. The property is nearing the end of its life cycle and, unless oil prices increase sufficiently to justify additional drilling, will require decommissioning to begin in the next five to ten years. The projected cost of decommissioning the various Abandoned Assets is expected to exceed $100 million (of which PEAO would be responsible for 46.8%). For now, the Abandoned Assets remain in operation and in control of Union as operator, but any potential buyer of the PEAO's interests in Trading Bay effectively would be assuming substantial future decommissioning costs.

16. Perhaps for the foregoing reasons, together with recent low oil prices and poor capital market conditions, the Debtors have been unsuccessful in obtaining any binding offers to purchase any of the Abandoned Assets, despite a concerted marketing effort. The Debtors retained Lazard Frères & Co., LLC ("Lazard") as investment bankers in these cases for the express purpose of marketing the Debtors' assets in Alaska. Over the last two months, Lazard has communicated the opportunity to numerous prospective buyers, sent out marketing materials, and coordinated the creation of a data-room for buyers to conduct due diligence on the Debtors' assets. To date, no prospective buyer has been willing to commit to purchase the Abandoned Assets.

68773-001\DOCS_DE:149490.1

17. Although the Debtors are continuing their sales efforts and concurrently herewith are filing a motion to establish bid procedures for the sale of the Debtors' interests in Alaska (including Trading Bay), the Debtors have no "stalking horse" bidder in place and no binding sale agreement with respect to the Abandoned Assets. Hence, in the event no bidder comes forward in the immediate future and no sale transaction can be consummated of some or all of the Abandoned Assets, PEAO seeks to abandon the unsold Abandoned Assets *nunc pro tunc* to the Petition Date. PEAO also requests authority to reject the Rejected Contracts that are interrelated with its interests in the Abandoned Assets and are not assumed as part of a sale.

18. For the avoidance of doubt, PEAO's abandonment of the Abandoned Assets does not include the Segregated Proceeds or any other reserve accounts created by prior order of this Court, and is without prejudice to any rights or claims of the estates, Union, or any other party in interest in such funds.

19. Finally, PEAO proposes to abandon the Abandoned Assets to Union, as operator and majority working interest owner. PEAO believes that Union will be held independently liable by applicable state and regulatory authorities for any current operational (and future decommissioning) obligations associated with Trading Bay.

**Relief Requested**

20. By this Motion and solely in the event that PEAO is unable to consummate a sale of some or all of its interests in Trading Bay, PEAO seeks to abandon the unsold Abandoned Assets effective as of the Petition Date because they are burdensome to the Debtors' estates and are of no value or other benefit to the estates. For the same reason and

under the same circumstances, PEAO seeks to reject the Rejected Contracts that are associated with the Abandoned Assets and are not assumed as part of a sale. Upon entry of an order granting this Motion, PEAO will provide reasonable cooperation (as determined in its sole discretion) to Union with respect to the Abandoned Assets, but PEAO does not intend to fund any expenses associated with the Abandoned Assets (nor does it have the wherewithal to do so). This Motion does not include, and is without prejudice to, various rights that may be asserted by parties in interest in the Segregated Proceeds. This Motion also does not affect any rights that the Debtors may have in oil and gas leases or any other assets that relate to areas outside Trading Bay.

### Basis for Relief

21. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee [or debtor-in-possession] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a); *see also* FED. R. BANKR. P. 6007. "The trustee's power to abandon property is discretionary." *In re Slack*, 290 B.R. 282, 284 (Bankr. D.N.J. 2003) (citations omitted). "Courts defer to the trustee's judgment and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion." *Id.* "The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate." *Id.* The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority." *Id.*

22.     Upon abandonment, abandoned property is no longer part of the bankruptcy estate and is treated as if administration of the asset never occurred. 4 NORTON BANKRUPTCY LAW AND PRACTICE at § 74:2 (3d ed. 2008). Hence, abandonment is retroactive to the petition date and constitutes a divestiture of the estates' interests in the property to the party with a possessory interest in it. *See In re Guterl Special Steel Corp.*, 316 B.R. 843, 861 (Bankr. W.D. Pa. 2004) (abandoned property reverts *nunc pro tunc* to the debtor or the party with possessory right to the property as of the petition date); *Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 394 n.1 (9th Cir. 1964) ("The ordinary rule is that, when a trustee abandons property of the bankrupt, title reverts to the bankrupt, *nunc pro tunc*, so that he is treated as having owned it continuously.") (citations omitted); *see also Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 507 (1986) ("Although § 544 does not specify to whom the property is to be abandoned, the legislative history suggests that it is to the person having a possessory interest in the property.... Such abandonment is to the person having the possessory interest in the property."); *Ohio v. Kovacs*, 469 U.S. 274, 284 n. 12 (1985) ("[A]bandonment is to the person having the possessory interest in the property.").

23.     As noted above, once the trustee or debtor-in-possession makes a reasonable business judgment to abandon property of the estate, the threshold for approval of the abandonment is low. Here, assuming that PEAO is unable to consummate a sale of its interests in Trading Bay, PEAO has determined in its sound business judgment and in good faith to abandon the Abandoned Assets. Ongoing operations at Trading Bay are a material liability of

10

PEAO's bankruptcy estate, especially given the cessation of oil production there as a result of volcanic and seismic activity in the area.

24.  Under present circumstances, PEAO's share of the cash burn associated with Trading Bay (based on charges by Union) is estimated to total approximately $4.0 million per month. Even if oil production resumes at prepetition levels, PEAO would continue to be responsible for approximately $2.0 million in cash shortfalls on a monthly basis (at current oil prices). When anticipated future decommissioning costs are added to the equation, PEAO faces additional liabilities in the tens of millions of dollars in connection with Trading Bay.

25.  In the absence of a sale transaction, there is no value that can be realized out of the Abandoned Assets, and they will be a burden on the administration of PEAO's bankruptcy case. PEAO therefore requests authority to abandon the Abandoned Assets to the extent that they cannot be sold. As stated above, such abandonment does not include the Segregated Proceeds and is without prejudice to any party's asserted rights therein.

26.  PEAO further requests that Union, as operator, majority owner and the party in possession and control of operations at Trading Bay, be designated as the recipient of the Abandoned Assets. PEAO believes that Union will be held responsible by applicable state and regulatory authorities for any operational or decommissioning expenses associated with the Abandoned Assets. If this Motion is approved, PEAO will endeavor to transition the Abandoned Assets to Union in an orderly fashion.

27.  PEAO is aware of the limited exception to the estates' ability to abandon property with environmental restrictions based upon the U.S. Supreme Court's decision in

*Midlantic Nat'l Bank v. New Jersey Dept. of Environmental Protection*, 474 U.S. 494, 507 (1986). As stated by this Court in *In re Insilco Technologies, Inc.*, *Midlantic* and its progeny stand for the proposition that "property of the estate may not be abandoned if the abandonment will act to contravene laws designed to protect public health and safety and will pose an imminent threat to the public's welfare." 309 B.R. 111, 114 (Bankr. D. Del. 2004). Given Union's role as operator and its ongoing management of Trading Bay, PEAO submits that abandonment of the Abandoned Assets will not contravene any laws designed to protect public health and safety and will not pose an imminent threat to the public's welfare. Accordingly, PEAO urges the Court to authorize such abandonment.

28.    In addition, PEAO seeks authority to reject the Rejected Contracts that are not assumed as part of a sale. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may … reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *see also* FED. R. BANKR. P. 6006. Rejection of an executory contract or unexpired lease is appropriate where rejection would benefit the debtor's estate. *See Sharon Steel Corp. v. National Fuel Gas Distribution Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989). Whether the assumption or rejection of an executory contract or unexpired lease would benefit the estate is a matter reserved for the debtor'd business judgment. *See NLRB v. Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."). If the debtors' business judgment has been reasonably exercised, a

12

court should approve the assumption or rejection of an unexpired lease or executory contract. *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003).

29. Here, for the same reasons that PEAO seeks to abandon the Abandoned Assets and subject to the same reservations, PEAO seeks to reject the Rejected Contracts that are associated with the Abandoned Assets.

### Request for Waiver

30. Among other things, Bankruptcy Rule 6007(a) requires that PEAO serve a copy of this Motion and its intent to abandon the Abandoned Assets on "all creditors." The Debtors' consolidated matrix contains over 1,100 creditors. PEAO submits that service of this Motion on all of these individuals is overly burdensome. PEAO will serve a copy of this Motion and supporting documents on the constituents set forth below and, therefore, requests a limited waiver of the service requirement set forth in Rule 6007. PEAO submits that the requested waiver is appropriate and will properly and timely effectuate notice.

31. PEAO also requests that the Court waive the 10-day stay associated with rejection of the Rejected Contracts under Bankruptcy Rule 6007(d) so that the Court's order may go effective immediately.

### Notice

32. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (a) the Office of the United States Trustee, (b) the Official Committee of Unsecured Creditors; (c) the Debtors' pre-petition and post-petition lenders; (d) all parties who have an interest in the Abandoned Assets (including the Rejected Contracts); (e)

68773-001\DOCS_DE:149490.1

counsel to Union; and (f) all parties who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. PEAO submits that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

33. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE, solely to the extent PEAO is unable to consummate a sale of any or all of the Abandoned Assets, PEAO respectfully requests that the Court enter an order (a) granting this Motion; (b) authorizing the abandonment of the unsold Abandoned Assets *nunc pro tunc* to the Petition Date pursuant to section 554 of the Bankruptcy Code; (c) authorizing the rejection of the unassumed Rejected Contracts pursuant to section 365 of the Bankruptcy Code; and (d) granting such other and further relief as the Court deems just and proper.

Dated: June 16, 2009

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Ira D. Kharasch (CA Bar No. 109084)
James E. O'Neill (DE Bar No. 4042)
Maxim B. Litvak (CA Bar No. 215852)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 652-4100
Facsimile: (302) 652-4400
E-mail: ikharasch@pszjlaw.com
joneill@pszjlaw.com
mlitvak@pszjlaw.com

Counsel for Debtors and Debtors in Possession

68773-001\DOCS_DE:149490.1