IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| PACIFIC ENERGY RESOURCES, LTD., ) | Case No. 09-10785 (KJC) |
| *et al.*, ) | |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | Obj. Deadline: July 21, 2009 at 4:00 P.M. (EDT) |
| ) | Hearing Date: August 4, 2009 at 1:30 P.M. (EDT) |
| ) | Related Docket No. 455 |

### LIMITED OBJECTION OF UNION OIL COMPANY OF CALIFORNIA TO ALTERNATIVE MOTION OF PACIFIC ENERGY ALASKA OPERATING LLC FOR AN ORDER AUTHORIZING ABANDONMENT OF INTERESTS IN OIL AND GAS PROPERTIES AT TRADING BAY, ALASKA AND REJECTION OF EXECUTORY CONTRACTS RELATING THERETO

Union Oil Company of California ("**Union**"), by its undersigned counsel, hereby objects (the "**Objection**") to the *Alternative Motion of Pacific Energy Alaska Operating LLC for an Order Authorizing Abandonment of Interests in Oil and Gas Properties at Trading Bay, Alaska and Rejection of Executory Contracts Relating Thereto* (the "**Motion**") (Docket No. 455). In support of its Objection, Union respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.   In the Motion, the above-captioned debtors (the "**Debtors**") seek relief which: (i) is beyond the scope of 11 U.S.C. § 554; and (ii) contravenes applicable bankruptcy and non-bankruptcy law. Specifically, the Debtors seek to abandon estate property without first taking steps required by Alaska state statutes and regulations reasonably designed to protect the public health and safety from identified hazards. Further, the Debtors seem to intend to improperly and unilaterally assign their rights and obligations in their Alaska properties to Union without first assuming and curing all defects and defaults in their obligations as required by 11 U.S.C. § 365(f)(2). Furthermore, the appropriate forum for a determination of the holder(s) of the relative

701588889v9

rights and obligations the Debtors seek to assign is an Alaska state or federal court, rather than a Delaware bankruptcy court.

## BACKGROUND

2. The Debtors seek to abandon and to assign unilaterally to Union certain Alaska assets related to their interests in the Trading Bay Unit ("**TBU**") and the Trading Bay Field ("**TBF**"), two adjacent oil and gas fields located in Cook Inlet, near Anchorage, Alaska. These properties have been leased from the State of Alaska continuously since 1962 for oil and gas exploration and production. The following describes the chain of title in these assets.

### A. Chain of Title

3. In 1962, Union, Marathon Oil Company ("**Marathon**"),[1] and various others entered into a number of oil and gas leases with the State of Alaska covering property in the TBU and the TBF. The leases are all on the same printed form. The TBU and the TBF are both located entirely in the Anchorage Recording District, Third Judicial District, State of Alaska.

4. In February 1967, the various lessees entered into a Unit Agreement for the Development and Operation of the Trading Bay Unit Area, State of Alaska ("**Unit Agreement**") and a Unit Operating Agreement - Trading Bay Unit ("**TBUOA**"). The Unit Agreement combined the leases into a single field for the purpose of producing oil and gas.

5. Over time, offshore drilling platforms were constructed on the TBU and support facilities were constructed on the west side of Cook Inlet. Union and all the other lessees held working interests in the TBU.

6. By 1996, Union and Marathon had by consensual acquisition become the only two working interest owners of the oil and gas leases in the Trading Bay area. That year, Union

---

[1] At that time, Marathon was known as the Ohio Oil Company.

and Marathon entered into the Trading Bay Field Joint Operating Agreement ("**TBFJOA**," and with the TBUOA, collectively, the "**Operating Agreements**"). The TBFJOA is similar in substance to the TBUOA.

7. Union is currently the Operator of both the TBU and the TBF (collectively, "**TBU/TBF**").

8. In December 1996, Marathon assigned its Trading Bay oil interests to Forcenergy, Inc. ("**Forcenergy**"). Marathon retained its interest in the Trading Bay gas interests. In 2000, following a 1999 Forcenergy Chapter 11 filing, Forest Oil Corporation ("**Forest**") acquired Forcenergy and all of its TBU/TBF interests by merger.

9. On December 27, 2001, and effective January 1, 2002, Union and Forest entered into an alignment agreement which aligned the parties' working oil interests in the TBU/TBF so that Union held 53.2% and Forest held 46.8% of the working interests in TBU/TBF.

10. Effective November 1, 2006, Forest Oil transferred its TBU/TBF interests to a subsidiary, Forest Alaska Holding, LLC, which then transferred those interests to Forest Alaska Operating, LLC ("**FAO**"), another Forest Oil subsidiary.

11. Effective January 1, 2007, Pacific Energy Resources, Ltd. ("**PERL**") purchased the membership interest in FAO, and then in August 2007, changed the name of that entity to Pacific Energy Alaska Operating, LLC ("**PEAO**"). As a result, Union currently owns 53.2% of the working interest and PEAO owns 46.8% of the working interest at TBU/TBF.

B. **The Debtors' Bankruptcy Filing and Post-Petition Events**

12. On March 9, 2009 (the "**Petition Date**"), the Debtors filed voluntary petitions for bankruptcy protection under chapter 11 in this Court.

701588889v9

13. In the months leading up to and since the Petition Date, the Debtors have been in default on their obligations related to the TBU and the TBF. During that time, Union has been maintaining the Debtors' TBU and TBF assets and paying the full cost of production and maintenance without PEAO's contractually-required reimbursement of its 46.8% share.

14. As a result of volcanic activity in the Trading Bay area which began after the Petition Date, oil production has been suspended. As of the date of this objection, production has not yet resumed.

15. On May 12, 2009, Union filed the Motion of Union Oil Company of California to Compel Immediate Assumption or Rejection of Certain Executory Contracts (the "**Assume/Reject Motion**"). On May 15, 2009, Union filed the Motion of Union Oil Company of California to Compel Immediate Payment of Administrative Expenses (the "**Administrative Claim Motion**"). These motions and various objections and responses thereto were heard in this Court on June 3, 2009. The Court granted the Assume/Reject Motion in part and denied the Administrative Claim Motion without prejudice.

16. On June 16, 2009, the Debtors filed their Motion for an Order (a) Approving Procedures for Sale of the Debtors' Alaska Assets; (b) Scheduling Auction and Hearing to Consider Approval of Sale; (c) Approving Notice of Respective Dates, Times, and Places for Auction and for Hearing on Approval of (i) Sale and (ii) Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (d) Approving Forms of Notice; and (e) Granting Related Relief.

17. On the same day, the Debtors filed the Motion, seeking abandonment as an alternative form of relief. The Motion seeks an order that authorizes: (i) abandonment of the Debtors' TBU and TBF interests effective as of the Petition Date; (ii) rejection of any executory

701588889v9

contracts related to the Debtors' TBU and TBF interests; (iii) transfer of title in the abandoned assets from the Debtors to Union; and (iv) "reasonable" cooperation in the transfer of the assets from the Debtors to Union, but provides for no funding of PEAO's decommissioning, abandonment, and/or environmental remediation liabilities.

### OBJECTIONS

**A.     This Court Cannot Order Abandonment to Union**

18.    The Debtors improperly seek to abandon their TBU and TBF assets to Union. Although the Debtors are correct in observing that abandoned property ceases to be part of the estate, they may not then cause title to vest in a third party against its will. The Debtors cite to no Alaska authority, or indeed any authority at all, for the remarkable proposition that abandoning to a third party is permissible. Courts generally have held that property is abandoned to whomever holds a possessory interest in the property, usually the *debtor. See Dewsnup v. Timm (in re Dewsnup)*, 908 F.2d 588, 590 (10th Cir. 1990); *In re Franklin Signal Corp.*, 65 B.R. 268, 274 (Bankr. D. Minn. 1986) ("[A]bandonment divests the property from the estate. Ownership and control of the asset is reinstated in the debtor with all rights and obligations as before filing a petition in bankruptcy."); *In re Guterl Special Steel Corp.*, 316 B.R. 843, (Bankr. W.D. Pa. 2004) ("Property abandoned in accordance with § 554(a) ceases to be property of the bankruptcy estate. It reverts *nunc pro tunc* to the debtor or whoever had the possessory right to the property when the bankruptcy petition was filed, and stands as though no bankruptcy petition was ever filed."). As of the Petition Date, Union is unaware of any party with a possessory interest in PEAO's TBU or TBF interests other than Union's interest in certain lift proceeds which are the subject of a separate adversary proceeding. Therefore, to the extent this Court allows abandonment of PEAO's TBU and TBF assets, they should be abandoned to PEAO.

701588889v9

Union does not have a present possessory interest in PEAO's 46.8% interest in the TBU or the TBF, and it did not have one on the Petition Date.

19.     Finally, if this Court were to require title to pass to Union, that would be, in effect, an involuntary assignment of PEAO's executory contracts to Union without the Debtors first assuming them, as required by 11 U.S.C. § 365(f)(2)(A), and curing all pre-assumption defaults, as required by 11 U.S.C. § 365(b)(1)(A) and (B).  Even if the Debtors did properly assume the executory contracts related to PEAO's TBU and TBF interests, Union is not interested in becoming the Debtors' assignee, and therefore, any such attempted assignment would be invalid under common law contract principles.  In general, an assignment is considered a contract.  *See, e.g.*, 29 Williston on Contracts §74:3 p. 229 (R. Lord, ed. 4th ed. 2003); *University of Texas Medical Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App. 1989) ("An assignment is a contract between the assignor and assignee, and operates by way of agreement or contract").  A contract requires mutual assent.  *See, e.g.*, 1-3 Corbin on Contracts § 3.1 (J. Perillo, ed. rev. ed. 1993).  Because Union does not consent to this attempted assignment, any attempt to assign is void.

701588889v9

WHEREFORE, Union respectfully requests that this Court enter an order: (i) denying the Motion insofar as it affects Union; (ii) denying the Debtors' request to abandon their TBU and TBF assets to Union; (iii) denying the transfer of title to Union; and (iv) granting such other and further relief as may be just and proper.

Dated: July 10, 2009
      Wilmington, Delaware

Respectfully submitted,

By: /s/ Norman M. Monhait
Norman M. Monhait (ID No. 1040)
Rosenthal, Monhait & Goddess, P.A.
919 North Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
Telephone: (302) 656-4433
Facsimile: (302) 658-7567
nmonhait@rmgglaw.com

and

Richard L. Epling
David A. Crichlow
Roger Elder
PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Counsel to Union Oil Company of California, a California Corporation*