IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PACIFIC ENERGY RESOURCES LTD., *et al.*, [1] | ) | Case No. 09-10785(KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |

Deadline for Objections: October 5, 2010 at 4:00 p.m. ET
Hearing Date: October 12, 2010 at 1:00 p.m. ET

## DEBTORS' MOTION FOR ORDER APPROVING STIPULATION RESOLVING CLAIMS OF THE STATE OF ALASKA AGAINST THE DEBTORS

The debtors and debtors in possession in the above-captioned cases (the "Debtors") hereby move (the "Motion") this Court for entry of an order approving the *Stipulation Resolving Claims of the State of Alaska Against the Debtors* (the "Stipulation"), a true and correct copy of which is attached hereto as Exhibit 1 and is incorporated herein by reference. In support of the Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(A), (B) and (O).

2.      Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

_____

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463). The mailing address for all of the Debtors is 111 W. Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

3.        Sections 363 and 502(b) of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides the basis for the relief sought in the Motion.

**Background**

4.        On March 9, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or an examiner in this case. The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") on March 19, 2009.

5.        The Debtors were a group of independent energy companies engaged in the acquisition, development and exploitation of oil and gas properties in the western United States. As of the Petition Date, the Debtors' oil and gas assets were located offshore near California and in Alaska.

6.        Pacific Energy Alaska Operating LLC ("PEAO"), one of the Debtors, entered into numerous oil and gas leases and easement agreements (collectively, the "Leases") with various agencies of the State of Alaska ("Alaska"), which Leases, among other things, granted PEAO interests in the following oil and gas properties:

(a)    interests in an offshore oil and gas platform commonly designated the "Spurr Platform" (the "Spurr Platform Interests");[2]

(b)    interests in oil and gas properties commonly referred to as "Trading Bay" (the "Trading Bay Interests");[3] and

(c)    interests in oil and gas properties (outside of an area commonly referred to as "Trading Bay") (the "Non-Trading Bay Interests").[4]

7.    PEAO was obligated to pay rent, royalties and taxes to Alaska, as well as to perform any plugging, abandonment, decommissioning, and other obligations, to the extent set forth in the Leases and applicable state statutes and regulations.

8.    Based upon the alleged obligations of certain of the Debtors under the Leases, statutes and regulations, Alaska filed the following claims in these chapter 11 cases:

(a)    Claim No. 7 in the amount of $7,380.79 against Pacific Energy Resources, Ltd. ("PERL");

(b)    Claim No. 447 in the amount of $5,400,000.00 plus an unliquidated amount of not less than $40,000,000.00 against PERL;

(c)    Claim No. 448 in unliquidated amounts of not less than $4,000,000.00 against Pacific Energy Alaska Holdings, LLC ("PEAH");

(d)    Claim No. 449 in unliquidated amounts of not less than $40,000,000.00 against PEAO;

(e)    Claim No. 465 in the amount of $5,707,809.40, plus unliquidated amounts of no less than $40,000,000.00 against PERL; and

---

[2] The Spurr Platform Interests are more specifically described in Exhibit A to the *Motion of the Debtors for an Order Authorizing Abandonment of Interests in the Spurr Platform Located in Alaska and Rejection of Executory Contracts Relating Thereto* (Docket No. 291), filed in the Debtors' chapter 11 cases on May 11, 2009.

[3] The Trading Bay Interests are more specifically described in Exhibit A to the *Alternative Motion of Pacific Energy Alaska Operating LLC for an Order Authorizing Abandonment of Interests in Oil and Gas Properties at Trading Bay, Alaska and Rejection of Executory Contracts Relating Thereto* (Docket No. 455), filed in the Debtors' chapter 11 cases on June 16, 2009

[4] The Non-Trading Bay Interests are more specifically described in Exhibit A to the *Alternative Motion of the Debtors for an Order Authorizing Abandonment of Certain Interests in Oil and Gas Properties in Alaska (Excluding Trading Bay) and Rejection of Executory Contracts Relating Thereto* (Docket No. 456), filed in the Debtors' chapter 11 cases on June 16, 2009

(f)    Claim No. 503 in the amount of $0.00 against PERL.

9.    Alaska has asserted to the Debtors that the unliquidated portions of Claim Nos. 448, 449 and 465 (together, the "Alaska Unliquidated Claims") total in excess of $200,000,000.00.

10.    On September 2, 2009, September 11, 2009 and October 16, 2009, this Court entered Orders authorizing and approving the abandonment by the Debtors of the Trading Bay Interests (Docket No. 832), the Non-Trading Bay Interests (Docket No. 876) and the Spurr Platform Interests (Docket No. 973), respectively.

11.    Due to a change in circumstances regarding the Debtors' ability to sell certain of the Non-Trading Bay Interests, on October 14, 2009, the Debtors filed the *Debtors' Motion for an Order: (a) Vacating this Court's Abandonment Order in Part for Certain Alaska Assets and (b) Authorizing the Debtors to Sell Such Assets to Cook Inlet Energy, LLC* (Docket No. 998), seeking an order of vacating the abandonment of the Non-Trading Bay Interests to the extent that such assets could be sold to Cook Inlet Energy, LLC ("CIE").

12.    On November 25, 2009, the Bankruptcy Court entered the *Conditional Order (a) Vacating This Court's Abandonment Order In Part for Certain Alaska Assets and (b) Authorizing the Debtors to Sell Certain Alaska Assets* (Docket No. 1157) (the "Non-Trading Bay Sale Order"), and on December 14, 2009, the Debtors filed the *Notice of Effective Date of Conditional Order (a) Vacating this Court's Abandonment Order in Part for Certain Alaska Assets and (b) Authorizing the Debtors to Sell Certain Alaska Assets and Closing on Sale Agreement* (Docket No. 1211).

13.      Pursuant to the terms of the Non-Trading Bay Sale Order, CIE assumed certain liabilities owed to Alaska.

14.      On March 24, 2010, the Court entered an order deeming Claim No. 7 satisfied (Docket No. 1434).  The Debtors filed an objection to Claim No. 447 as having been amended by Claim No. 465, and the Court entered an order disallowing Claim No. 447 on March 29, 2010 (Docket No. 1454).  The Debtors have not yet formally raised objections to Claim No. 503.

15.      The Alaska Unliquidated Claims are subject to the *Debtors' Third Motion for Order Deeming Certain Claims to Have Been Satisfied* (the "Third Motion Regarding Paid Claims") (Docket No. 1549) filed on April 27, 2010, on the basis that certain of these claims have been paid by virtue of the Non-Trading Bay Sale Order. Although Alaska has not filed a formal objection to the Third Motion Regarding Paid Claims, Alaska has raised informal objections to that motion with the Debtors. Specifically, Alaska asserts continuing claims exceeding $200,000,000.00 associated with, among other things, plugging, abandonment, and decommissioning obligations as to the Trading Bay Interests and the Spurr Platform Interests.  The Debtors dispute these claims.

16.      Further, the Debtors assert that PEAO has credits due from Alaska in the amount of $2,869,468.16 for over-payment of royalty due to a change in royalty rate related to the Trading Bay Interests (the "Royalty Credit") and in the amount of $5,666,807.00 related to production tax credits (the "Production Tax Credits").  The Debtors have filed an application for the Production Tax Credits, and Alaska is reviewing that application.  Alaska, however, having taken the position that the doctrine of

recoupment applies to the Royalty Credit, has already applied it to PEAO's alleged plugging, abandonment, decommissioning and other obligations under the Leases, state statutes and regulations.

17.    In order to resolve all outstanding disputes with Alaska, the Debtors and Alaska have reached agreement on the terms set forth in the Stipulation.

<strong><u>Relief Requested</u></strong>

18.    By this Motion, the Debtors respectfully request that the Court enter an order pursuant to Bankruptcy Rule 9019 approving the Stipulation.

<strong><u>Terms of the Stipulation</u></strong>[5]

19.    Claim Nos. 448, 465 and 503 are disallowed in their entirety.

20.    Claim No. 449 is allowed as a general unsecured claim against PEAO in the amount of $40,000,000.00 solely on account of PEAO's share of plugging, abandonment, and decommissioning obligations relating to the Spurr Platform Interests and the Trading Bay Interests. The settlement of Claim No. 449 is without prejudice to any claims that Alaska may have against any third parties, including predecessors-in-interest, as a result of the agreement to reduce its claims, relating to the Spurr Platform Interests and Trading Bay Interests.

21.    The Royalty Credit is deemed validly applied by Alaska.

---

[5] This Motion provides a summary of the principal terms of the Stipulation. All parties are encouraged to read the entirety of the Stipulation attached as <u>Exhibit 1</u> hereto. In the event any discrepancies exist between the terms of the Stipulation and the summary contained in this Motion, the Stipulation shall be the controlling document.

22.     Alaska is allowed an administrative claim against PEAO in the amount of $301,140.35 for post-petition 2009 property taxes, including penalties and interest, which administrative claim PEAO has fully paid and satisfied.

23.     Alaska is allowed a priority tax claim against PEAO in the amount of $68,561.57 for pre-petition 2009 property taxes, including penalties and interest through October 1, 2010, which claim PEAO shall pay within fourteen (14) days following the entry of an order of this Court approving this Stipulation.

24.     Alaska is allowed an administrative claim against PEAO in the amount of $2,046.60 for the use of easements on the King Salmon platform pipelines during the period March 9, 2009 through September 2, 2009, which administrative claim PEAO shall pay within fourteen (14) days following the entry of an order of this Court approving this Stipulation.

25.     The Debtors, on behalf of their estates, release all of their rights to the Royalty Credits and the Production Tax Credits and will not pursue recovery of same.

26.     Alaska will not assert or be allowed any claims against any of the Debtors' estates other than as specifically set forth above in the Stipulation.

27.     The Debtors and Alaska mutually release each other of all claims other than those allowed by the Stipulation.

28.     Alaska's claims or rights against any non-Debtor third parties, including any predecessors-in-interest to any of the Debtors in any properties located in Alaska, are not affected in any way by the Stipulation or any order approving the Stipulation.

**Basis For Relief**

A.  **Governing Legal Standards for Approval of Bankruptcy Rule 9019 Compromise and Settlement**

29.  Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). The Third Circuit Court of Appeals has stated that section 363 of the Bankruptcy Code is the substantive provision requiring a hearing and court approval of settlements, while Bankruptcy Rule 9019 establishes the procedure by which such approval may be secured. *See In re Martin*, 91 F.3d 389, 395 n.2 (3rd Cir. 1996) (distinguishing substance of section 363 from procedural effect of Rule 9019).

30.  In determining whether to approve a settlement, the Third Circuit has also instructed that a bankruptcy court should "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Id.* at 393 (*citing Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25, 88 S. Ct. 1157, 1163 (1968)). In *TMT Trailer*, the Supreme Court held that compromises reached during the course of insolvency proceedings must be "fair and equitable." 390 U.S. at 424. The Court stated that "basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *Id.* at 425. In making this determination, a court should consider four criteria:

> (1) the probability of success in the litigation;
>
> (2) the likely difficulties in collection;
>
> (3) the complexity of the litigation involved and related expense and inconvenience; and
>
> (4) the interests of the creditors.

*Id.*; *see also In re Marvel Entertainment Group, Inc.*, 222 B.R. 243, 249 (D. Del. 1998) (citing *TMT Trailer* factors as controlling whether settlement should be approved). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interest of the estate." *In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997).

31.    In ruling on a proposed compromise, however, the Court should not substitute its own judgment for that of the trustee or debtor in possession. *See In re Carla Leather, Inc.*, 44 B.R. 457, 466 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 765 (S.D.N.Y. 1985). Nor is the Court's task to determine whether the settlement was the best that the trustee could have obtained. *See In re W.T. Grant*, 699 F.2d 599, 608, 613 (2d Cir. 1982), *cert, denied*, 464 U.S. 822, 104 S.Ct. 89 (1983). Rather, the Court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Id.* at 608; *see also In re Bell & Beckwith*, 87 B.R. 472, 474 (N.D. Ohio 1987). In determining whether to approve a compromise, a bankruptcy court is not required to conduct a "mini-trial" on the merits of the underlying cause of action. *U.S. v Alaska National Bank of the North (In the Matter of Walsh Construction, Inc.)*, 669 F.2d 1325, 1328 (9th Cir. 1982); *see also In re Blair*, 538 F.2d 849, 851-52 (9th Cir. 1976).

**B.    The Stipulation Should Be Approved**

32.    The Stipulation meets the statutory and applicable case law standards for the approval of a settlement, and thus should be approved.

33.     The Stipulation will reduce Alaska's remaining general unsecured claims by more than $160,000,000.00 below the amounts currently asserted.  Further, Alaska's remaining allowed claims will be limited to a single Debtor, PEAO, the entity which the Debtors believe is the proper obligor for the obligations to Alaska.  The Stipulation also will eliminate the risk that Alaska might seek recovery of additional administrative or general unsecured claims against the Debtors' estates.

34.     The Stipulation is the product of arms' length negotiations between the Debtors and Alaska.  These negotiations have involved an examination of the factual and legal issues raised by Alaska's remaining claims.

35.     As applied in the instant case, the applicable *TMT Trailer* factors strongly support this Court's approval of the Stipulation as being in the best interests of the Debtors, their estates and their creditors.  The Debtors submit that the Stipulation should be approved for each of the following reasons:

a.     *Probability of Success of Claims Litigation.*  Although the Debtors believe that they have a chance in having the Unliquidated Claims reduced, it is unlikely that the Debtors would be able to achieve the result contemplated in the Stipulation of capping Alaska's general unsecured claims at $40,000,000.00.  There would also be risks, costs and delays associated with such litigation which are entirely avoided under the Stipulation.

b.     *Difficulties in Collection.*  This factor is not applicable here.

c.     *Complexity of Litigation; Related Expense.*  Litigation of the disputes over Alaska's claims are fact-intensive and involve complicated issues of oil and

gas law. Litigating these issues would involve many hours of attorney time as well as the employment of experts. Given the existence of factual disputes, an evidentiary hearing would be necessary. The Debtors believe that resolution of their disputes with Alaska through litigation would be very time consuming and costly.

           d.     *Interest of Creditors.* Another key factor that weighs heavily in favor of approving the Stipulation is this Court's consideration of the best interests of the Debtors' creditors. The Stipulation is in the interest of the Debtors' creditors because it resolves all of the remaining claims of Alaska and contemplates a substantial reduction of Alaska's general unsecured claims by over $160,000,000.00. Alaska's allowed claims under the Stipulation are also limited to PEAO, rather than the other Debtors. Taken together, the Stipulation will facilitate the Debtors' efforts to make distributions under a confirmed liquidating plan to the creditors as quickly as possible.

           36.     In light of the foregoing, the resolution of Alaska's claims is eminently reasonable and, based on all the facts and circumstances, represents a fair and equitable result for the Debtors' estates.

## No Prior Request

           37.     No previous motion for the relief requested herein has been made by the Debtors to this or any other court.

## Notice

           38.     Notice of this Motion has been provided to (i) counsel for Alaska, (ii) the counsel for the Committee, (iii) the United States Trustee for the District of Delaware, (iv) counsel to the Debtors' secured lenders, and (v) those parties that have

requested special notice pursuant to Bankruptcy Rule 2002. The Debtors submit that no

other or further notice need to be given.

WHEREFORE, the Debtors respectfully request that the Court enter an

order, substantially in the form attached hereto (i) authorizing and approving the

compromise and settlement between the Debtors and Alaska as set forth in the Stipulation

(ii) authorizing the Debtors to pay the administrative and priority claim amounts as set

forth herein and in the Stipulation, and (iii) granting such other and further relief as the

Court may deem proper.

Dated:    September 21, 2010        PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Kathleen P. Makowski*

Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
James E. O'Neill (DE Bar No. 4042)
Scotta E. McFarland (DE Bar No. 4184)
Kathleen P. Makowski (DE Bar No. 3648)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone:  302/652-4100
Facsimile:  310/652-4400
Email:    ikharasch@pszjlaw.com
          mlitvak@psxjlaw.com
          joneill@pszjlaw.com
          smcfarland@pszjlaw.com
          kmakowski@pszjlaw.com

Counsel for Debtors and Debtors in Possession