**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| PACIFIC ENERGY RESOURCES LTD., | ) | |
| *et al.*, | ) | Case No. 09-10785 (KJC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related Docket No. 1895 |

**OBJECTION OF UNION OIL COMPANY OF CALIFORNIA TO DEBTORS' MOTION FOR ORDER APPROVING STIPULATION RESOLVING CLAIMS OF THE STATE OF ALASKA AGAINST THE DEBTORS**

Union Oil Company of California ("**Union**"), by its undersigned counsel, hereby objects (the "**Objection**") to the Debtors' Motion for Order Approving Stipulation Resolving Claims of the State of Alaska Against the Debtors (the "**Proposed Settlement**")[1] (Doc. No. 1895). In support of the Objection, Union respectfully represents as follows:

## PRELIMINARY STATEMENT

1. The Proposed Settlement is an improper attempt to settle Pacific Energy Alaska Operating, LLC's ("**PEAO**") abandonment liabilities with the State by destroying and converting Union's collateral property in derogation of Union's lien rights. A settlement which violates Union's lien rights cannot be effected without Union's consent. The tax credits discussed below are Union's collateral and PEAO cannot deal with them unilaterally.

2. It is telling that PEAO admits that Union's lien rights in production to pay PEAO's share of joint interest billing ("**JIB**") obligations are valid,[2] because PEAO could not claim the proposed value of its Alaska production Tax Credits (defined below) unless Union has

---

[1] Unless otherwise indicated, references to the Proposed Settlement are to the settlement itself, attached to the motion as Exhibit 1, rather than to the motion for its approval.

[2] *See* September 24, 2010 Rule 30(b)(6) Deposition of Gerald A. Tywoniuk (the "**Tywoniuk Deposition**") 78:5-9. The Tywoniuk Deposition is attached as Exhibit A.

been paid in full to the extent of certain proceeds of production (the "**Lift Proceeds**") from Trading Bay Field ("**TBF**") and Trading Bay Unit ("**TBU**"). Remarkably, while explicitly acknowledging those lien rights in order to obtain an unwarranted gain for the estate, PEAO, attempting to surrender those interests to the state without Union's consent, chooses to assume Union has *no* lien or interest in the same Tax Credits. These facts were not disclosed to the Court in PEAO's motion, and the settlement is being advanced for approval in bad faith.

3. The Royalty Credit (defined below) is also Union's collateral, and PEAO cannot simply surrender it to the State without destroying Union's property interests, which is an act of conversion.

## BACKGROUND

4. Union and PEAO are both working interest owners in the TBU and the TBF. Union has extensively detailed the history of its relationship with PEAO, the documents governing that relationship, Union's various real property and UCC lien filings, PEAO's significant arrearages on JIBs, and the proceedings related to Union's lien enforcement in its filings in the adversary proceeding *Union Oil Company of California v. Pacific Energy Alaska Operating, LLC*, Adv. Pro No. 09-51066 (the "**Adversary Proceeding**").[3] Union realleges each of the facts asserted in the Amended Complaint, the Summary Judgment Brief, the Reply Brief and the supporting affidavits and documents submitted with each and incorporates them by reference as if fully set forth herein.

---

[3] *See also* Amended and Supplemental Complaint for Declaratory Judgment Determining Validity and Priority of Liens (the "**Amended Complaint**") (Adv. Doc. No. 9) ¶¶ 3-37; Union Oil Company of California's Opening Brief in Support of Its Motion for Summary Judgment (the "**Summary Judgment Brief**") (Adv. Doc. No. 13) at 4-10; and Union Oil Company of California's Reply Brief in Support of Its Motion for Summary Judgment, and Answering Brief in Opposition to Silver Point Finance's Cross-Motion for Summary Judgment (the "**Reply Brief**") (Adv. Doc. No. 23) at 2

5. On March 9, 2009 (the "**Petition Date**"), the above-captioned debtors (the "**Debtors**") filed voluntary petitions for bankruptcy protection under chapter 11 in this Court.

6. On June 23, 2009, Union timely filed two proofs of claim, one for PEAO's share of production costs and the other for PEAO's anticipated share of plugging, abandonment, decommissioning, and environmental remediation liabilities. Both were filed as fully secured claims based on Union's statutory, real property, and UCC lien rights and security interests. Because unpaid costs continued to accrue over the course of these cases, Union amended its proof of claim for production costs on July 23, 2009, October 14, 2009, December 3, 2009, February 22, 2010, March 19, 2010, and May 4, 2010 to ensure its claim remained up to date. Union's total prepetition JIB claim is $29,553,822.06, and its postpetition JIB claim is $22,216,797.24. Union's estimated abandonment and remediation claim is approximately $200,000,000.00.

7. On September 21, 2010, the Debtors filed their Proposed Settlement.

## RELIEF REQUESTED

8. Union respectfully requests that the Court deny the relief requested in the Debtors' motion and not approve the Proposed Settlement.

## ARGUMENT

### I. The Proposed Settlement Is Not Fair and Equitable

9. The Proposed Settlement cannot be approved because giving up Union's property rights to the State cannot be done without Union's consent. In order to approve a settlement in a bankruptcy case, a court must arrive at an "informed, independent judgment" that the compromise is "fair and equitable." *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1967). "The words 'fair and equitable' are terms of

art – they mean that 'senior interests are entitled to full priority over junior ones.'" *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 298 (5th Cir. 1984) (citing *SEC v. Am. Trailer Rentals Co.*, 379 U.S. 594, 611 (1965)). "Where the rights of third parties are affected, . . . their interests too must be considered." *Cullen v. Riley (In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020, 1026 (2d Cir. 1992). "Even if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced. [A court] must determine that 'no one has been set aside for unfair treatment.' Ignoring the effect of a settlement on the rights of third parties 'contravenes a basic notion of fairness.'" *Walsh v. Hefren-Tilotson (In re Devon Capital Mgmt., Inc.)*, 261 B.R. 619, 623 (Bankr. W.D. Pa. 2001) (citing *Masters Mates* and *AWECO*). The proponent of a settlement agreement "bears the burden by a preponderance of the evidence that the proposed settlement is fair and equitable for the nonsettling parties." *GMAC v. Flynn (In re Midway Motor Sales, Inc.)*, 407 B.R. 442, 2009 WL 1940719 at *9 (B.A.P. 6th Cir. 2009).

10. The Proposed Settlement impairs and prejudices Union's rights in several ways. *First*, it bargains away Union's lien rights in $2,869,468.16 worth of royalty overpayments (the "**Royalty Credit**") and $5,666,807.00 worth of production tax credits (the "**Tax Credits**," and with the Royalty Credit, the "**Union Collateral**"). Union has a first priority lien and security interest in all of PEAO's oil and gas rights and working interests in the TBU and the TBF pursuant to Alaska law, the TBUOA the TBFJOA, and Union's related real property and UCC filings, and the Royalty Credit and the Tax credits represent proceeds of PEAO's oil and gas rights and working interests. It is improper to allow these monies, which are Union's collateral and subject to its liens and security interests, to be retained by the State, an unsecured creditor. *Second*, by fixing PEAO's plugging, abandonment, and decommissioning obligation to the State

of Alaska at $40,000,000.00 to be paid solely from PEAO's general unsecured creditors' fund, the Debtors are essentially guaranteeing that virtually none of that claim will be paid.

11. Union has already been forced to expend over $51,000,000.00 on PEAO's behalf between the pre-petition period and the date the Debtors abandoned the estates' interests in the TBU and the TBF. Alaska, apart from the abandonment liability, which has not yet been incurred, only has two small unsatisfied claims outstanding totaling approximately $70,000. *See* Proposed Settlement ¶¶ 7-8. Because of the priority of Alaska's two remaining claims, they will likely be paid in full. *Id.* Union, a secured creditor, has been required to maintain PEAO's assets to the benefit of the Debtors' secured lenders and the State of Alaska, and the Proposed Settlement would distribute proceeds subject to Union's valid, first priority liens to the State in partial satisfaction of unsecured claims it has not actually incurred, while Union's secured claims remain unsatisfied. The Proposed Settlement is therefore illegal and cannot be approved.

## II. Union Has a Superior Interest in the Union Collateral

### A. Union has a First-Priority Security Interest in the Union Collateral

12. Under the Proposed Settlement, the Debtors seek to release the Union Collateral to Alaska in derogation of Union's lien rights and without its consent. Proposed Settlement ¶ 10. The Tax Credits are credits and refunds related to capital expenditures and losses in the TBU and the TBF, and are therefore a product of PEAO's oil and gas rights in the TBU and the TBF. The Royalty Credit is an overpayment to the State of Alaska of Alaska's share of production from the TBU and the TBF, and thus also directly related to PEAO's oil and gas rights. Because both the Tax Credits and the Royalty Credit are directly related to PEAO's oil and gas rights and working interest in the TBU and the TBF, Union has a lien or security interest in these properties and property interests. *See, e.g.*, Affidavit of Gerald A. Tywoniuk, Chief Financial Officer of Pacific

Energy Resources Ltd. in Support of First Day Motions (the "**Tywoniuk Affidavit)** (Doc. No. 2) at 8, n.8 (asserting that PEAO's secured lenders' liens were "subject to [Union's] first priority lien on . . . PEAO's [Trading Bay] assets"); Amended Complaint ¶¶ 39-67; Summary Judgment Brief pp. 13-23; Reply Brief pp. 2-13.

13. The proposed treatment of the Royalty Credit and the Tax Credits is confiscatory, unfair, and completely improper, and would result in Union's collateral being transferred to a general unsecured creditor. The Proposed Settlement, therefore, cannot be approved. *See AWECO*, 725 F.2d at 298. As Union demonstrated in the Amended Complaint, the Summary Judgment Brief, and the Reply Brief, and as argued more specifically with respect to each element of the Union Collateral below, Union's liens and security interests are valid and superior to Alaska's general unsecured claim by virtue of Alaska's unit lien statute, the recorded agreements in place between Union and PEAO, and Union's real property and fixture filings. *See* Amended Complaint ¶¶ 39-67; Summary Judgment Brief pp. 13-23; Reply Brief pp. 2-13. The Debtors acknowledged the validity and superiority of Union's liens at the outset of this proceeding, stating unequivocally that "the Prepetition Secured Lenders' lien in [PEAO's TBU and TBF] Assets is subordinate to [Union's] first priority lien in the Alaska Assets that [Union] operates,"[4] and the Debtors' corporate representative recently acknowledged that his "understanding is [Union] ha[s] a lien." Tywoniuk Deposition 68:7. The legal support for Union's lien priority has been made clear in the papers identified above, and Union reasserts and incorporates each of those arguments by reference as if fully set forth herein.

14. Alaska's unitization statute gives Union a first and prior lien in all of PEAO's oil and gas rights in the TBU. Alaska Stat. § 31.05.110(h). The TBUOA and the TBFJOA, which

---

[4] Tywoniuk Affidavit ¶¶ 17, 19.

govern the relationship between Union and PEAO in the TBU and the TBF, respectively, provide Union with a lien in PEAO's oil and gas rights in the TBU and the TBF. TBUOA sec. 19.5; TBFJOA sec. 11.4. The TBUOA and TBFJOA have been filed in Alaska's real property records and also as fixture filings, and Union further properly filed notices of lien in 2002 and 2008. As Union has previously shown, by virtue of Alaska's unitization statute, the agreements between the parties, and Union's filings, the conclusion is inescapable that Union has a first priority lien in *all* of PEAO's TBU and TBF oil and gas interests, and Union is entitled to any and all of the proceeds of those interests until such time as its liens are paid in full.

**B. The Royalty Credit is Subject to Union's Lien**

15. The State may claim that Union has no interest in the Royalty Credit because it represents royalties—however, the State would be wrong to so argue. Royalty payments are the landowner's share of production, free of expenses of production. RICHARD W. HEMINGWAY, LAW OF OIL & GAS 58 (1991). The Royalty Credit, however, is a *refund* of *overpaid* royalties, and not a royalty owed to the State. By recognizing that PEAO paid the state $2,869,468.16 more of the proceeds of production than it was due, the State of Alaska concedes that the Royalty Credit is not properly characterized as a royalty at all. *See* Proposed Settlement ¶ 16; ALASKA STAT. § 31.05.110(h). The Royalty Credit is simply part of PEAO's proceeds of production that was inadvertently overpaid as a royalty. As a result, the Royalty Credit, representing ordinary proceeds of production, is subject to Union's liens and cannot be bargained away by PEAO for its own benefit.

**C. The Doctrine of Recoupment Does Not Apply to the Royalty Credits**

16. According to the Proposed Settlement, Alaska has "taken the position that the doctrine of recoupment applies to the Royalty Credit." Proposed Settlement at 5. Contrary to

Alaska's position, however, recoupment is inapplicable to the Royalty Credit. "Recoupment 'is the setting up of a demand ***arising from the same transaction*** as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.'" *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir. 1992) (citations omitted; emphasis in original). Further,

> the fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the same transaction. Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations. Use of this stricter standard for delineating the bounds of a transaction in the context of recoupment is in accord with the principle that this doctrine, as a non-statutory, equitable exception to the automatic stay, should be narrowly construed.

*Id.* at 1080. Recoupment is most frequently appropriately exercised "where the relevant claims arise out of a single contract 'that provide[s] for advance payments based on estimates of what would be owed, subject to later correction.'" *Id.* (citations omitted). "Recoupment is 'narrowly construed' in bankruptcy cases because it violates the basic bankruptcy principle of equal distribution to creditors." *Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996). The party asserting a right of recoupment bears the burden of proof of its entitlement to exercise the right. *Leonard v. Optimal Payments Ltd. (In re Nat'l Audit Def. Network)*, 332 B.R. 896, 914 (Bankr. D. Nev. 2005).

17. Here, Alaska has improperly applied the Royalty Credit against PEAO's decommissioning and abandonment obligations. Proposed Settlement ¶ 16. These two claims are not part of an "integrated transaction" such that they fit within the narrow doctrine of recoupment. As noted above, royalty payments are the landowner's share of production, free of expenses of production. RICHARD W. HEMINGWAY, LAW OF OIL & GAS 58 (1991). They are related to production of oil or gas from the land committed to a lease or unit. *Id.*

Decommissioning and abandonment obligations, however, arise ***after*** production has ceased, and are related to cleanup and restoration of land which was used for oil and gas production. *See* ALASKA ADMIN. CODE tit. 20 §§ 25.105-.172 (setting forth Alaska's specific decommissioning and abandonment requirements). Royalty obligations, which are only payable when a field is producing, and abandonment obligations, which are only payable as a result of a cessation of production, may not be recouped, and such attempted recoupment is unsupported by the case law. *See, e.g.*, *Univ. Med. Ctr.*, 973 F.2d at 1081 ("[W]e find that the ongoing relationship that exists between a Medicare provider and HHS is not sufficient to support the conclusion that Medicare overpayments made to UMC in 1985 arise from the same transaction, for the purposes of equitable recoupment, as Medicare payments due UMC for services provided in 1988"); *New York State Dep't of Labor v. Malinowski (In re Malinowski)*, 156 F.3d 131, 133-34 (2d Cir. 1998) (overpayment of unemployment benefits in one period of unemployment could not be recouped against payment of unemployment benefits in a different period of unemployment); *Conoco*, 82 F.3d at (wholesaler could not recoup credit card invoices against amounts owed by retailer for purchase of wholesaler's products). Because the obligation to pay royalties and the obligation to pay for decommissioning and remediation are entirely separate, Alaska cannot use the Royalty Credit to recoup the costs of decommissioning and abandonment.

### D. Even Assuming the Doctrine of Recoupment Did Apply, It Cannot Be Used to Defeat Union's Statutory and Bargained-For Lien Rights

18. Even if the doctrine of recoupment allowed Alaska to apply the Royalty Credit to PEAO's abandonment liabilities (and it does not), recoupment cannot be used to defeat the right of a secured creditor to its collateral. *See, e.g.*, *Native American Financial, Inc. v. Tecumseh Constr. Co. (In re Tecumseh Constr. Co.)*, 157 B.R. 471, 472 (Bankr. E.D. Cal. 1993) ("[R]ecoupment cannot defeat the rights of a creditor who holds a properly perfected Article 9

security interest."). Because the general presumption is that a secured creditor is entitled to its collateral or its proceeds and because even a valid right of recoupment does not defeat this presumption, Union is entitled to the Royalty Credit and the Proposed Settlement cannot be approved. *Id.* (secured creditor entitled to turnover of its collateral upon default).

**E. The Tax Credits are Subject to Union's Liens**

19. PEAO has claimed tax credits for certain "qualified capital expenditures" and "carried-forward annual losses" from the State of Alaska for the period August 2007 through early September 2009. Tywoniuk Deposition 72:6-9. These tax credits are freely transferrable and the holder of such a tax credit may obtain cash payment in lieu of the credit. Alaska Stat. § 43.55.023(d). These credits arise because of PEAO's working interest in the TBU and the TBF, and are therefore part of and relate directly to PEAO's oil and gas rights, which include the obligation to pay all costs of that working interest, and which are subject to Union's statutory and contractual liens.[5] *See* Alaska Stat. 31.05.110(h); TBUOA sec. 19.5; TBFJOA sec. 11.4.

20. The Debtors have claimed that the value of the Tax Proceeds is $5,666,807.00. Alaska Settlement Motion ¶ 16. Paradoxically, in calculating the value of its tax claims, PEAO has assumed that Union's liens are valid and rank first in priority ahead of the "Senior" Lenders' liens in order to maximize the credit to which PEAO is entitled, because the value of the credits depends directly on the amounts of PEAO's TBU and TBF expenditures. *See, e.g.*, Tywoniuk Deposition 76:19-77:4. Union agrees with the underlying assumption that Union holds a valid, first priority lien in PEAO's TBU and TBF interests, and based on that fact, the Debtors may not relinquish the Tax Credits to the State of Alaska as proposed.

---

[5] *See also* BLACK'S LAW DICTIONARY 1638 (8th ed. 2004) (defining "working interest" as "[t]he rights granted by an oil-and-gas lease, so called because the lessee acquires the right to work on the leased property to search, develop, and produce oil and gas, as well as the *obligation to pay all costs*") (emphasis added).

21. It would be inherently inequitable, and a confiscation of Union's property, for PEAO to rely on Union's JIB advance to secure a tax credit for PEAO's own benefit. Any capital expenditures at Trading Bay in calendar year 2009 claimed by PEAO are by virtue of funds Union advanced, and before securing any benefit for itself, PEAO must repay those advances. Similarly, any tax credits for 2007 and 2008 are subject to Union's liens and must be paid over to reimburse Union for PEAO's share of its unpaid costs. These tax credits are part of the oil and gas rights that are covered by Union's statutory operator's lien as well as part of the mortgage collateral under the TBUOA and the TBFJOA.

22. In sum, to the extent PEAO is able to realize any of the value of the tax credits, such credits are subject to Union's lien rights under applicable law. Union's lien rights in the Tax Proceeds are superior to those of any other party, yet the Proposed Settlement impermissibly seeks to transfer the Tax Credits to an unsecured creditor without Union's consent. Therefore, the Proposed Settlement may not be approved.

**F. Setoff Does Not Apply to the 2009 Tax Credits**

23. Section 553(a) of the Bankruptcy Code governs setoffs in bankruptcy. In relevant part, § 553 provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

24. "The right of setoff . . . allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 18 (1995) (citing *Studley v. Boylston National Bank*, 229 U.S. 523 (1931)). A right to setoff exists when the creditor

establishes that: (1) the debt and claim arose prior to the commencement of the bankruptcy case; (2) the debt and claim are mutual obligations; and (3) a right to setoff exists under non-bankruptcy law. *See* Bankruptcy Code § 553(a); *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987); *In re Lehman Bros. Holdings Inc.*, 404 B.R. 752, 757 (Bankr. S.D.N.Y. 2009).

25. In the case of the Tax Credits attributable to 2009, the right to those credits arose postpetition. *See Brandt v. Fleet Capital Corp. (In re TMCI Elecs.)*, 279 B.R. 552, 560-61 (Bankr. N.D. Cal. 1999) (claim to tax refund arises at the end of tax year). "Plainly, the mutuality requirement of section 553 precludes a creditor . . . from offsetting a debtor's pre-petition obligations against [a debt which arises] post-petition." *In re Lehman Bros. Holdings Inc.*, 433 B.R. 101, 108 (Bankr. S.D.N.Y. 2010). Because the 2009 portion of the Tax Credits is a postpetition debt, the State cannot set it off against PEAO's abandonment liability, which arose prepetition, as the claim and debt lack the requisite mutuality. *Lehman Bros.*, 404 B.R. at 758 (holding that funds transfer requested prepetition but executed postpetition rendered bank's proposed setoff against transferred funds not mutual for purposes of setoff).

### G. Union's Lien Rights Are Superior to Alaska's Right of Setoff in the 2007 and 2008 Tax Credits

26. Alaska's right to set off the Tax Credits related to the years 2007 and 2008, if any, is subject to Union's security interest in those Tax Credits. In general, the right of a general unsecured creditor to setoff of mutual debts and claims is subject to the rights of a secured creditor. *See, e.g.*, *Valley Nat'l Bank of Arizona v. Cotton Growers Hail Ins. Inc.*, 747 P.2d 1225, 1229-1230 (Ariz. App. 1987) (bank's secured rights in insurance proceeds superior to insurer's right to set off payment of proceeds against unpaid premiums); *Citizens Nat'l Bank of Whitley Cnty. v. Mid-States Dev. Co., Inc.*, 380 N.E.2d 1243, 1248-49 (Ind. Ct. App. 1978)

(inventory financier's lien in proceeds superior to retailer's bank's unsecured right of setoff against retailer's bank accounts); *First Nat'l Bank of Milwaukee v. Midland Nat'l Bank*, 251 N.W. 2d 829, 833 (Wis. 1977) (security interest in certificates of deposit superior to right of setoff of depository bank). In this case, Union's liens derive from three sources: first, from Alaska's unitization statute, second, from the TBUOA and TBFJOA, and third, from Union's real property and fixture filings. *See* ALASKA STAT. § 31.05.110(h); TBUOA sec. 19.5; TBFJOA sec. 11.4; Summary Judgment Brief at 5-8. These security interests and liens cover all of PEAO's oil and gas rights and working interests, which, as noted above, includes the Royalty Credit and the Tax Credits.

27. Further, "[t]he right of setoff is permissive; its application is discretionary and in exercising such discretion the court relies on general principles of equity." *In re Lifestyle Furnishings, LLC*, 418 B.R. 382, 386-87 (Bankr. D. Idaho 2009). In the first instance, it is Union who incurs the costs of maintaining and operating the fields, and ultimately of decommissioning and abandoning them. TBUOA sec. 19.1; TBFJOA sec. 11.1. Union then issues JIBs to each other working interest owner, currently PEAO, for its proportionate share of the expenses. Here, because any right of setoff is subject to Union's superior lien and because Union, rather than Alaska, will incur decommissioning costs in the first instance, it would be grossly inequitable to permit Alaska to set off any of the Tax Credits against PEAO's decommissioning and abandonment liability. Accordingly, those funds should be immediately paid over to Union.

## III. The Proposed Settlement Amounts to Conversion of Union's Property

28. The Proposed Settlement seeks to convert Union's collateral by paying it over to the State of Alaska. Under Alaska law, the elements of a claim for conversion are: (1) plaintiff has a possessory interest in property; (2) defendant's intentional interference with plaintiff's

possessory interest; and (3) damages to plaintiff resulting from defendant's interference. *St. Paul Church, Inc. v. Board of Trustees of the Alaska Missionary Conference of the United Methodist Church, Inc.*, 145 P.3d 541, 558 (Alaska 2006). Here, it is undisputed that Union has a lien in PEAO's oil and gas rights, and that PEAO is in default. Union's lien constitutes an ownership or possessory interest in the underlying collateral sufficient to sustain an action for conversion. *See, e.g.*, *Cantu v. Martin*, 2002 WL 31409943 at *2-*3 (Tex. App. 2002) (sale of vehicles subject to mechanics lien is conversion). There can be no doubt that PEAO is intentionally interfering with Union's possessory interest, as PEAO has moved this Court to allow it to relinquish the Union Collateral to the State of Alaska. Proposed Settlement ¶ 10. Finally, if the settlement were approved, Union would suffer damages in the total amount of the Tax Credits and the Royalty Credit, because once those funds are removed from the estate, PEAO has very little left to pay its creditors. Therefore, because through the Proposed Settlement PEAO seeks to commit an act of conversion, it cannot be approved.

**IV. The Proposed Settlement Cannot Reduce PEAO's Decommissioning and Abandonment Obligations to Union's Detriment**

29. The Proposed Settlement seeks to limit Alaska's claim for decommissioning and abandonment liability to a general unsecured claim against PEAO of $40,000,000.00. Proposed Settlement ¶ 2. Union estimates PEAO's share of decommissioning and abandonment cost to be approximately $200,000,000.00. Union Oil Company of California's Administrative Claim for Abandonment and Environmental Remediation Costs (Doc. No. 1383) ¶ 7. As a practical matter, it does not likely make a difference what the final allowed amount of Alaska's unsecured claim against PEAO is, as the Debtors anticipate that there will only be between $66,000.00 and $1,066,000.00 available to pay between $105,000,000.00 and $275,000,000.00 worth of claims. Tywoniuk Deposition 48:13-21, 49:7-13. Alaska's release of any further claims against the

Debtors other than those provided in the Proposed Settlement, however, cannot serve to release PEAO from liability to Union for PEAO's share of decommissioning and abandonment costs, and before any settlement involving the TBU and the TBF may be approved, that fact must be made clear. To the extent the Proposed Settlement could be construed as impairing or otherwise altering Union's rights as operator of the TBU and the TBF, such impairment should not be allowed.

30. Third party releases are highly disfavored and are only permitted in very narrow circumstances, none of which are present here. *See In re Continental Airlines,* 203 F.3d 203, 214 (3d Cir. 2000) (holding that the "hallmarks" of permissible non-consensual releases are "fairness, necessity to the reorganization, and specific factual findings to support these conclusions"). As Union has already shown, the Proposed Settlement is fundamentally unfair. Further, because the Debtors in these cases are liquidating rather than reorganizing, a third party release is not necessary to a successful reorganization.

31. Indeed, because they are liquidating, the Debtors will receive no discharge. 11 U.S.C. § 1141(d)(3); *Teamsters Pension Trust Fund of Philadelphia & Vicinity*, 82 B.R. 346, 349 (E.D. Pa. 1988) ("[A] corporate or partnership debtor that is both liquidating and discontinuing its business does not receive a discharge when its plan is confirmed."). As a result, Union retains the right, and expressly reserves the right, to continue to pursue any and all available remedies to enforce its liens and to seek compensation for all of PEAO's share of decommissioning, abandonment, and any other applicable liability. Any attempt by the Debtors to dilute Union's rights through receipt of a release from the State of Alaska for their decommissioning and abandonment is improper and impermissible.

## CONCLUSION

For the foregoing reasons, Union respectfully requests that this Court (i) not approve the Settlement; and (ii) enter such other and further relief as may be just and proper.

Dated: October 5, 2010
Wilmington, Delaware

Respectfully submitted,

By: ______________________

Norman M. Monhait (ID No. 1040)
Rosenthal, Monhait & Goddess, P.A.
919 North Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899-1070
Telephone: (302) 656-4433
Facsimile: (302) 658-7567
nmonhait@rmgglaw.com

and

Richard L. Epling
David A. Crichlow
Pillsbury Winthrop Shaw Pittman LLP
1540 Broadway
New York, NY 10036
Telephone: (212) 858-1000
Facsimile: (212) 858-1500

*Counsel to Union Oil Company of California, a California Corporation*