IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PACIFIC ENERGY RESOURCES LTD., *et al.*[1] | ) | Case No. 09-10785 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

Requested Objection Deadline: December 14, 2010 at 12:00 p.m. Noon (ET)
Requested Hearing Date: December 15, 2010 at 2:00 p.m. (ET)

## DEBTORS' MOTION FOR ORDER PURSUANT TO 11 U.S.C. § 1127(a) AND (d) AND RULE 3019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING MODIFICATIONS TO FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR PACIFIC ENERGY RESOURCES LTD., ET AL

The above-captioned debtors and debtors in possession (the "Debtors") hereby move (the "Motion") the Court for the entry of an order, pursuant to section 1127(a) and (d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3019(a) of the Federal Bankruptcy Rules (the "Bankruptcy Rules"), approving certain modifications to the *First Amended Chapter 11 Plan of Liquidation for Pacific Energy Resources Ltd., Et Al*, dated August 27, 2010 [Docket No. 1709] (the "Plan"). On October 5, 2010, the Debtors submitted a redline version of the Plan to the Court with certain modifications. Those modifications have now either been superseded or incorporated into the attached cumulative redline reflecting modifications that the Debtors now propose to make the Plan (the "Modified Plan"). The redline document is attached hereto as <u>Exhibit A</u>. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463). The mailing address for all of the Debtors is 111 W. Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

## Preliminary Statement

1.  Since the commencement of the confirmation hearing before the Court on October 12, 2010, the Debtors have continued to look for ways to resolve the outstanding issues in these cases so that a plan can be confirmed by the Court in the near term.

2.  The Debtors are pleased to report that they have now reached a resolution with the key constituents in these cases on the terms set forth in the Modified Plan. As outlined in more detail below, the proposed resolution will have an overwhelmingly positive effect on these estates, and hence, should not require any need to re-solicit acceptances of the Plan.

3.  For this reason, the Debtors file this Motion in order for the Court to approve the contemplated modifications to the Plan, and to confirm the Modified Plan as soon as possible.

## Jurisdiction and Venue

4.  The Court has jurisdiction over this Motion under 28 U.S.C. §1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (L), and (O).

5.  Venue of the Debtors' chapter 11 cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6.  Section 1127(a) and (d) of the Bankruptcy Code and Bankruptcy Rule 3019(a) provides the basis for the relief requested herein.

## Background

7.  On March 9, 2009 (the "Petition Date"), the Debtors commenced their chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate

and manage their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. No trustee or examiner has been appointed in the chapter 11 cases. The Office of the United States Trustee appointed an Official Committee of Unsecured Creditors (the "Committee") on March 19, 2009.

9. The Debtors were a group of independent energy companies that were engaged in the acquisition, development and exploitation of oil and gas properties in the western United States. As of the Petition Date, the Debtors' oil and gas assets were located offshore near California and principally offshore in Alaska. The Debtors acquired these oil and gas assets in transactions occurring in the fourth quarter of 2006 and during 2007, and their secured debt was related to these acquisitions. The Debtors' revenue was largely dependent on the market price for the underlying crude oil produced, in addition to the level of production. Their revenue for 2008 was approximately $226.2 million.

10. On August 27, 2010, the Debtors filed the Plan. On the same day, the Court entered that certain *Order (i) Approving the Disclosure Statement; (ii) Scheduling Confirmation Hearing; (iii) Approving Form and Manner of Notice of Confirmation Hearing: (iv) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Joint Plan, Including (a) Approving Form and Contents of Solicitation Package, (b) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages, (c) Approving Forms of Ballots, (d) Establishing Voting Deadline for Receipt of Ballots and (e) Approving Procedures for Vote Tabulations; (v) Establishing Deadline and Procedures for Filing Objections to Confirmation of Plan; and (vi) Granting Related Relief* (Docket No. 1850) (the

"Disclosure Statement Order"). The Debtors have fulfilled the solicitation requirements under the Disclosure Statement Order.

11. On October 5, 2010, the Debtors filed certain proposed modifications to the Plan, which have now either been superseded or incorporated into the Modified Plan.

12. On October 12, 2010, the confirmation hearing was commenced, but continued to December 15, 2010 in light of certain comments from the Court relating to various claims and liens asserted by Union Oil Company of California ("Union").

13. The Debtors have now resolved their issues with Union and other key parties in interest, including the Senior Lenders (as defined in the Modified Plan), the State of Alaska (the "State") and the Committee, as encompassed in the Modified Plan.

**Proposed Resolution in the Modified Plan**

14. The key terms of the resolution amongst the Debtors' estates, Union, the State, the Senior Lenders and the Committee are summarized below and set forth more fully in the Modified Plan, particularly with reference to Article VI(I) of the Modified Plan:[2]

(a) The entirety of the Lift Proceeds shall be released and paid to Union, and the Union Adversary shall be dismissed with prejudice, with all parties to bear their own costs and fees. The Debtors and their Estates shall waive any claims with respect to any of the Lift Proceeds granted pursuant to the Final DIP Order, including (without limitation) with respect to any amounts remaining under the Alaska Fund that in any way relate to the Lift Proceeds.

---

[2] To the extent of any inconsistency between this Motion and the Plan, the Plan shall govern in all respects. Capitalized terms used herein shall have the meanings set forth in the Modified Plan.

(b) Union shall waive any and all claims to the Excluded Interests. For the avoidance of doubt, Union shall assert no further rights or claims in the Business Interruption Insurance or the proceeds thereof, any bidder deposits that remain with respect to the sale of any of the Alaska assets, any insurance premiums that have been returned to the Debtors, the royalty proceeds that are currently held for the benefit of the Senior Lenders in the West Foreland escrow account, or the net proceeds of the retainer of Stoel Rives, LLP which has been returned to the Debtors.

(c) The Debtors' pending motions to (a) pay the proceeds of the Excluded Interests and certain other assets to the Senior Lenders (Docket No. 1561), and (b) approve a stipulation resolving claims with the State (Docket No. 1895), shall be withdrawn as moot. Further, any pending objections of the Debtors to proofs of claim or requests for payment of administrative expenses filed by Union or the State shall be withdrawn as moot.

(d) The State will continue to process PEAO's Tax Credits applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about March 31, 2010 and June 8, 2010 and issue transferable certificates in accordance with AS 43.55.023. PEAO will then take all necessary steps to transfer the Tax Credits certificates to either Union or Chevron U.S.A. Inc. ("Chevron"). The State will not object to Union or Chevron using the Tax Credits against production tax liability consistent with AS 43.55.011 *et seq.* and 43.55.023 from any Union or Chevron oil and gas property situated in the state. In furtherance of the Plan, PEAO shall assign to Union, at Union's sole option, every right of PEAO in and to the Tax Credits, and PEAO shall diligently pursue recovery of the Tax Credits at the direction and for the benefit of Union, including but not limited to: (1) appealing a denial by the State on the Tax Credits

application of PEAO in accordance with AS 43.05.240 *et seq.*; and (2) any and all other efforts necessary to facilitate PEAO being awarded Tax Credits certificates by the State in the amount for which PEAO is eligible under AS 43.55.023 for the period 2007-2009 as requested in the applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about March 31, 2010 and June 8, 2010 (for the avoidance of doubt, PEAO shall have all the rights of an applicant under AS 43.55.011 *et seq.*). The foregoing activities if specifically requested by Union are the "Directed Activities." Finally, Silver Point and PEAO shall release any right, title, lien, claim, or encumbrance in and to the Tax Credits in favor of Union.

(e) Union shall indemnify PEAO for liabilities directly caused by the Directed Activities in pursuing the Directed Activities and for reasonable costs and expenses incurred by PEAO pursuant to an approved budget (as described below), provided however that Union shall not be liable for PEAO's gross negligence or willful misconduct under any circumstances. PEAO shall submit a written budget to Union for any proposed Directed Activities, which budget Union may approve in its sole discretion. PEAO's shall not incur reimbursable costs and expenses except pursuant to an approved budget.

(f) The State shall retain the Royalty Overpayment, which has been applied to PEAO's plugging, abandonment, decommissioning and other obligations. Union, and the Debtors, on behalf of their estates, release any claims against, or rights to, the Royalty Overpayment and will not pursue recovery of same. Other than as expressly provided in this Plan, including with respect to the Tax Credits, the Debtors, on behalf of their estates, shall release the State from any claims or demands including any Avoidance Claims.

(g)     Silver Point will release all mortgages, security interests, liens and encumbrances whatever in and to the Trading Bay Unit and Trading Bay Field and any and all Lift Proceeds whenever or wherever arising. In addition, PEAO shall execute new mortgages, fixture filings or other similar security agreements and documents with respect to the Trading Bay Unit and Trading Bay Field as Union may reasonably request.

(h)     Union shall be Allowed an Administrative Expense against the PEAO estate in the amount of $22,216,797.24, which shall be treated as follows: (i) $100,000.00 shall be paid to Union in cash; (ii) the Debtors' estates, jointly and severally, shall release all claims of any kind and nature that they now have, or which may arise in the future, against Union (including any Avoidance Claims against Union); and (iii) the residue of the PEAO estate, after the payment in subparagraph (i) above, shall be available for distribution to other creditors of PEAO; and (iv) excepting the payment set forth in subparagraph (i) above and the transfer of the Lift Proceeds and the Tax Credits as contemplated herein, Union shall have no right to a distribution from the Debtors' Estates under the Plan (including without limitation any right to participate in distributions from the proceeds of Avoidance Claims) on account of any claim in favor of Union whatsoever, whether arising prepetition or postpetition, and whether a secured claim, priority claim, or unsecured claim.

(i)     The State shall be Allowed (i) an Administrative Claim against PEAO in the amount of $301,140.35 for postpetition 2009 property taxes, including penalties and interest, which PEAO has fully paid and satisfied; (ii) an Allowed Tax Claim against PEAO in the amount of $69,613.44 for prepetition 2009 property taxes, including penalties and interest through December 15, 2010, which PEAO shall pay within fourteen (14) days following the

Effective Date; and (iii) an Allowed Administrative Expense against PEAO in the amount of $4,047.70 for the use of easements on the King Salmon platform pipelines during the period March 9, 2009 through September 2, 2009, which PEAO shall pay within fourteen (14) days following the Effective Date.

(j) Except as expressly set forth in the Plan, nothing in the Plan or any Plan document is intended to, or does, in any manner waive, limit, impair, or restrict any right of Union or the State or the ability of Union or the State to protect, preserve and enforce their respective rights, remedies, and interests against the Debtors (as opposed to the Debtors' Estates). Additionally, nothing in the Plan is intended to, or does, in any manner waive, limit, impair, or restrict any right of the State or Union or the ability of the State or Union to protect, preserve and enforce its rights, remedies and interests against any and all persons other than the Debtors.

(k) In addition to the Claims of the State allowed in subparagraph (8) above and without determining the amount or priority of the State's remaining asserted Claims against the Debtors, the State shall be limited to distributions under the Plan as if it were the Holder of an Allowed General Unsecured Claim against PEAO in the notional amount of $40,000,000.00. Any and all future claims of the State, whether against the Debtors or any other parties, are fully preserved without any cap or other impairment of the State's rights whatsoever, provided that such claims shall not be entitled to distributions from the Estates under the Plan. The State expressly reserves all of its rights to assess and collect abandonment liabilities against all non-Debtor third parties, including any predecessors-in-interest to any of the Debtors. Further, there shall be no discharge, release or impairment of any abandonment, remediation, clean-up or other

similar claims of the State or any other person whatsoever, provided that such claims shall not be entitled to distributions from the Estates under the Plan.

(l) The Debtors and non-estate Debtors shall reasonably cooperate in assisting the State in the administration of assets located in Alaska that have been abandoned by the Debtors including by way of example, by delivering documents necessary to formalize the legal surrender or transfer and assignment of the Debtors' oil and gas leases with the State. For so long as Union or any of its affiliates remains the operator under the operating agreement for the Trading Bay Unit, Alaska agrees to provide notice to Union of any request made by the State that the Debtors transfer their interests in any abandoned oil and gas leases.

15. Aside from the resolution summarized above, the remaining changes to the Modified Plan are non-material in nature. These modifications include clarifications to the governance (*see* Article VI(A), (B), (E) and (J)) and injunction/exculpation provisions (*see* Article X(A)(2)) of the Plan, plus revisions to take into account the possibility that the Debtors are unsuccessful in obtaining an order subordinating the claims of Forest Oil Corporation (*see* Article IV(B)(9)).

## Relief Requested

16. By this Motion, the Debtors seek approval of the proposed modifications to the Plan, and confirmation of the Modified Plan without need for re-solicitation of acceptances of the Plan. The proposed modifications will provide significant benefits to the estates, and improve distributions to unsecured creditors of PEAO.

## Basis for Relief

17. Section 1127(a) of the Bankruptcy Code provides in pertinent part:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of Section 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

11 U.S.C. § 1127(a).

18. The proposed Modified Plan does not alter the classification of claims under the Plan in a manner that would implicate the classification requirements of section 1122 of the Bankruptcy Code.

19. The proposed Modified Plan complies with all the provisions in section 1123 of the Bankruptcy Code.

20. Bankruptcy Rule 3019(a) provides in pertinent part:

> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after a hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

21. The proposed Modified Plan does not adversely change the treatment of any creditor or the holder of any equity interest who has not accepted in writing the modification. Indeed, the Modified Plan will have the effect of materially improving projected distributions to the holders of general unsecured claims of PEAO.

22. First, the Modified Plan will eliminate the prospect of an overwhelming administrative claim in favor of Union totaling in excess of $22,000,000, which the Court has tentatively indicated an inclination to approve. Under the Modified Plan, Union's administrative claim is reduced to $100,000.

23. Second, the Modified Plan will eliminate the prospect of over $200,000,000 in general unsecured claims asserted against PEAO by Union, the effect of which will be to materially improve distributions to the remaining holders of claims against PEAO.

24. Third, the Modified Plan resolves disputes amongst Union and the Senior Lenders as to certain escrowed Lift Proceeds, an issue which has been under submission with the Court for some time, and various other assets which are the subject of a pending motion.

25. Fourth, the Modified Plan effectuates a resolution of disputes with the State that will have the economic effect of substantially limiting distributions that have to be made to the State by PEAO, while resolving Union's objections to a pending stipulation between the Debtors and the State.

26. Finally, the Modified Plan will allow a plan to be confirmed in these cases promptly and without further delay, thereby significantly reducing costs that are continuing to be incurred by these estates.

27. For these reasons and given all of the benefits that will be realized by these estates, the resolution encompassed in the Modified Plan has the support of the Debtors, Union, the Senior Lenders, the State and the Committee, and should be approved without need for further re-solicitation of the Modified Plan, consistent with section 1127(a) and (d) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules.

28. Further, aside from the resolution summarized above, the remaining proposed modifications to the Plan are non-material, and also should not require re-solicitation. *See In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 929 n.6 (Bankr. S.D.N.Y. 1994) (nonmaterial modifications to plan do not require re-solicitation).

## Notice

29. Notice of this Motion has been given by electronic mail, hand delivery, overnight mail, or express mail on (a) the Office of the United States Trustee; (b) respective counsel for Union, the Senior Lenders, the State and the Committee; (c) any parties who have filed an objection to the Plan; and (d) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

30. No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court enter an order (i) approving the proposed modifications to the Plan without need for re-solicitation, (ii) confirming the Modified Plan, and (iii) granting such other relief as may be fair and equitable.

Dated: December 10, 2010   PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
_____
Ira D. Kharasch (CA Bar No. 109084)
James E. O'Neill (DE Bar No. 4042)
Maxim B. Litvak (CA Bar No. 215852)
Scotta E. McFarland (DE Bar No. 4184, CA Bar No. 165391)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705
Telephone: 302/652-4100
Facsimile: 310/652-4400
Email:  ikharasch@pszjlaw.com
        mlitvak@pszjlaw.com
        joneill@pszjlaw.com
        smcfarland@pszjlaw.com

Counsel for Debtors and Debtors in Possession