# Exhibit A

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PACIFIC ENERGY RESOURCES LTD., *et al.*,[1] | ) Case No. 09-10785 (KJC) |
| | ) (Jointly Administered) |
| Debtor. | ) |
| | ) |

~~Objection Deadline: September 29, 2010~~Hearing Date: ~~October 12,~~December 15, 2010 at ~~1~~2:00 p.m. ET

## FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION
## FOR PACIFIC ENERGY RESOURCES LTD., ET AL, AS MODIFIED

James E. O'Neill (DE Bar No. 4042)
Pachulski Stang Ziehl & Jones LLP
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Ira D. Kharasch (CA Bar No. 109084)
Scotta E. McFarland (DE Bar No. 4184)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Maxim B. Litvak (CA Bar No. 215852)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010

Counsel to Debtors and Debtors in Possession

Dated: ~~August 27,~~December ___, 2010

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463). The mailing address for all of the Debtors is 111 W. Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ...............................................................................2

    A.    Rules of Interpretation, Computation of Time, and Governing Law ....................2

    B.    Defined Terms .......................................................................................................3

III. TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS ...................~~19~~20

    A.    Introduction ....................................................................................................~~19~~20

    B.    Administrative Expenses ...............................................................................~~19~~21

    C.    Tax Claims......................................................................................................~~20~~21

IV. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS .......................................................................................................~~21~~22

    A.    Summary........................................................................................................~~21~~22

    B.    Classification and Treatment of Claims and Interests ....................................~~21~~23

V. ACCEPTANCE OR REJECTION OF PLAN...................................................~~29~~32

    A.    Identification of Unimpaired Classes .............................................................~~29~~32

    B.    Identification of Impaired Classes..................................................................~~29~~32

    C.    Classes Permitted and Not Permitted to Vote .................................................~~30~~33

    D.    Nonconsensual Confirmation .........................................................................~~31~~34

    E.    Postpetition Interest .......................................................................................~~31~~34

VI. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................~~31~~34

    A.    Continued Corporate Existence and Vesting of Assets of Liquidating Debtors~~31~~34

    B.    Dismissal of Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland ......................................................................................~~32~~36

    C.    No Substantive Consolidation ........................................................................~~32~~36

    D.    Retained Rights of Action ..............................................................................~~32~~36

    E.    Corporate Governance ...................................................................................~~34~~38

    F.    Wind-Down ...................................................................................................~~35~~40

G.     Funding for the Plan ................................................................... 3743

H.     Inter-Estate Settlement .............................................................. 3843

I.      <u>Resolution with the Estates, Union, the Senior Lenders, the State and the Committee</u> ..................................................................................... 44

J.      Corporate Action/Dissolution ................................................... 3949

J̶K.    Interests in Affiliates and Subsidiaries ..................................... 3951

K̶L.    Payment of Plan Expenses ......................................................... 4051

L̶M.   Dissolution of the Committee ................................................... 4051

VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......... 4051

A.     Rejection of Executory Contracts and Unexpired Leases ................................. 4051

B.     Bar Date for Rejection Damages ................................................ 4152

VIII. DISTRIBUTIONS AND RELATED MATTERS ......................................... 4153

A.     Dates of Distribution ................................................................ 4153

B.     Cash Distributions .................................................................... 4253

C.     Rounding of Payments ............................................................. 4254

D.     Disputed Claims ...................................................................... 4354

E.     Undeliverable and Unclaimed Distributions ............................. 4455

F.     Compliance with Tax Requirements ......................................... 4456

G.     Record Date in Respect to Distributions ................................... 4556

H.     Reserves .................................................................................. 4557

IX. LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES ..... 4657

A.     Litigation; Objections to Claims; Objection Deadline ............... 4657

B.     Temporary or Permanent Resolution of Disputed Claims .......... 4758

C.     Setoffs .................................................................................... 4859

D.     Preservation of Retained Rights of Action ............................... 4859

X. INJUNCTION AND EXCULPATION PROVISIONS ...................................... 4960

A.     Injunctions ............................................................................. 4960

B.     Exculpation ............................................................................. 5162

XI. PENSION PLANS, OTHER RETIREE BENEFITS AND LABOR CONTRACTS .........5163

XII. NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL .........5263

XIII. EXEMPTION FROM CERTAIN TRANSFER TAXES ................................................5263

XIV. RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS..................5263

    A.    Retention of Jurisdiction.....................................................................5263

    B.    Miscellaneous Matters .......................................................................5566

XV. CONDITIONS TO CONFIRMATION AND EFFECTIVENESS ...................................5971

    A.    Conditions Precedent to Plan Effectiveness ......................................5971

    B.    Effect of Non-Occurrence of Conditions to Effective Date ..............6072

XVI. EFFECT OF CONFIRMATION.....................................................................................6072

    A.    Binding Effect of Confirmation.........................................................6072

    B.    Good Faith ..........................................................................................6173

    C.    No Limitations on Effect of Confirmation .......................................6173

XVII. MODIFICATION OR WITHDRAWAL OF PLAN .....................................................6173

    A.    Modification of Plan...........................................................................6173

    B.    Withdrawal of Plan.............................................................................6274

XVIII. CONFIRMATION REQUEST....................................................................................6274

Debtors and debtors in possession Pacific Energy Resources Ltd., Petrocal

Acquisition Corp., Pacific Energy Alaska Holdings, LLC, Carneros Acquisition Corp., Pacific

Energy Alaska Operating LLC, Carneros Energy, Inc., and Gotland Oil, Inc. hereby propose the

following First Amended Plan of Liquidation, as Modified, pursuant to chapter 11 of title 11 of

the United States Code, 11 U.S.C. §§ 101 et seq.:

## I.

## INTRODUCTION

The Plan effectuates a distribution of the assets of the Estates to creditors in

accordance with the priorities set forth in the Bankruptcy Code. Although the Plan recognizes

that each of the Debtors is a separate and distinct corporate entity, the Plan encompasses a

settlement amongst the Estates that results in the distribution of the Unsecured Creditor Fund, the

Alaska Fund, if any, and the Wind-Down Fund, if any, and a waiver of Intercompany Claims.

The Plan also resolves pending disputes and contested claims amongst the Estates, Union, the

Senior Lenders, the State, and the Committee that minimizes potential claims that may be

allowed against the Estates. The Plan provides that all holders of Allowed Administrative

Expenses and Priority Claims against the Debtors shall be paid in full. Holders of Secured

Claims generally will retain their liens or receive their collateral under the Plan. All remaining

assets will be distributed to Holders of Allowed General Unsecured Claims against PERL, PEAH

and PEAO. Because the Estates of Petrocal, Carneros Acquisition, Carneros Energy and Gotland

have no assets, the Chapter 11 Cases of these Debtors will be dismissed under the Plan.

Depending on how the Court determines the issue, Holders of Subordinated Debt Claims

shallmay receive no distributions under the Plan. All Interests in the Debtors shall be cancelled. Taken together, the Plan proposes to fairly and efficiently distribute the Debtors' assets in a manner that will allow these cases to be promptly resolved.

The Disclosure Statement, distributed with this Plan, contains a discussion of the Debtors' history, a summary of the Debtors' assets and liabilities, a summary of what Holders of Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for Confirmation of the Plan. The Disclosure Statement is intended to provide Holders of Claims and Interests with information sufficient to enable such Holders to vote on the Plan. All Claim Holders entitled to vote on this Plan are encouraged to carefully read the Disclosure Statement and this Plan before voting to accept or reject this Plan. No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized for use in soliciting acceptance or rejection of this Plan.

## II.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time, and Governing Law

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and

conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections and exhibits are references to sections and exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**B.**      **Defined Terms**

The following definitions shall apply to capitalized terms used in the Plan:

1.     "Administrative Expense" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against any of the Debtors, including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, (ii) compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of the Bankruptcy Code, and (iii) all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911–1930, including the fees, if any, due to the United States Trustee.

2.     "Alaska Fund" means ~~the approximately $1,600,000 in~~ any funds remaining as a result of the carve-out provided under paragraph 35 of the Final DIP Order in favor of the Estates in the first $2,000,000 (in aggregate) from cash proceeds with respect to either (i) any cash proceeds received by the Debtors as a result of the Union Adversary ~~(as defined in Section O of the Disclosure Statement)~~, or (ii) any cash proceeds received by the Debtors as a result of the recovery of certain production payments from Aera Energy LLC ("Aera"), and Noble Energy, Inc. ("Noble").  The Debtors ultimately recovered approximately $400,000 out of the amounts owed to Aera and Noble, which leaves approximately $1,600,000 in carve-outs in favor of the Estates available as to potential proceeds out of the Union Adversary, which are resolved in accordance with Article VI(I) of the Plan.

3.     "Allowed" means

(a)  when used in respect of a Claim, Interest, Administrative Expense, such amount of the Claim, Interest, Administrative Expense or portion thereof which is (1) determined and allowed in whole or in part by a Final Order of the Bankruptcy Court, (2) expressly allowed under the Plan or any Plan Document, or (iii) allowed under a stipulation or settlement with the Debtors; and

(b)  if not "Allowed" in accordance with subsection (a) above, a Claim, Interest or Administrative Expense that has not been Disallowed and is not subject to a pending objection or appeal from an order allowing or disallowing the claim, also will be deemed "Allowed" as follows:

(1)  If no proof of Claim or Interest has been Timely Filed, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim which have been scheduled in the Debtors' Schedules as liquidated in amount and not disputed or contingent and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interests which have been listed by the Debtors' Lists of Equity Security Holders; or

(2)  If a proof of Claim or Interest is Timely Filed, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim reflected in the proof(s) of Claim and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interest reflected in the proof(s) of Interest, provided that (C) there is no objection to such Claim or Interest by the Objection Deadline; and

(3)  An Administrative Expense shall be deemed "Allowed" (A) if the Liquidating Debtors pays it, or (B) if it is for income taxes, is properly asserted by the appropriate taxing authority in accordance with applicable law (including, without limitation, Bankruptcy Code §505), and is not timely contested, provided that (C) there is no objection to such Claim by the Objection Deadline.

4.  "Avoidance Claims" means any Rights of Action for the recovery of avoidable transfers arising under Chapter 5 of the Bankruptcy Code or applicable state law.

5.     "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as now in effect or hereafter amended.

6.     "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Cases or any part thereof.

7.     "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

8.     "Bar Date" means, when not otherwise specified, the date fixed by statute or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order of the Bankruptcy Court as the deadline for filing proofs of Claims, Interests or Administrative Expenses (whether or not each and every proof of Claim, Interest or Administrative Expenses is subject to such deadline).

9.     "Beta Sale Order" means the Order (I) Approving Sale of the Debtors' Beta Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief, entered by the Bankruptcy Court in the Chapter 11 Cases on December 23, 2009.

10.    "Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

11. "Business Interruption Insurance" means all rights and claims of PEAO to, in and from its applicable policies of property, casualty, business interruption, general liability, and any other available insurance or proceeds thereof arising out of, in connection with, or related to the eruption of Mt. Redoubt volcano in March 2009 and related events or the oil fields commonly know as the "Trading Bay Unit" and "Trading Bay Field".

12. ~~11.~~ "Carneros Acquisition" means Carneros Acquisition Corp., a debtor in these Chapter 11 Cases.

13. ~~12.~~ "Carneros Energy" means Carneros Energy, Inc., a debtor in these Chapter 11 Cases.

14. ~~13.~~ "Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

15. ~~14.~~ "Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by each of the Debtors on the Petition Date and pending before the Bankruptcy Court.

16. ~~15.~~ "Claim" means any claim against the Debtors or any of them within the meaning of section 101(5) of the Bankruptcy Code which is not an Administrative Expense, including, without limitation, claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

17. ~~16.~~ "Claims Agent" means Omni Management Group LLC, in its capacity as claims agent for the Debtors.

18.   17. "Class" means each category of Claims or Interests classified in Article IV of the Plan pursuant to section 1122 of the Bankruptcy Code.

19.   18. "Committee" means the Official Committee of Unsecured Creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

20.   19. "Confirmation" means the approval by the Bankruptcy Court of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

21.   20. "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

22.   21. "Confirmation Hearing" means the date or dates established by the Bankruptcy Court for the hearing(s) on confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

23.   22. "Confirmation Order" means the order entered by the Bankruptcy Court confirming (approving) the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance acceptable to the Debtors.

24.   23. "Consummation" means substantial consummation of the Plan as that term is used in 11 U.S.C. § 1127(b).

25.   24. "Creditor" means any Person who is the Holder of a Claim or Administrative Expense against any of the Debtors.

26.   25. "Debtors" means PERL, Petrocal, PEAH, Carneros Acquisition, PEAO, Carneros Energy, and Gotland, in their corporate capacities or other capacities and, as

appropriate, in their capacities as debtors and debtors-in-possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Cases and, when the context so requires as to PERL, PEAH and PEAO, in their capacities as the Liquidating Debtors.

27. 26. "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that it is determined that the Claim, Interest, Administrative Expense or portion thereof is not allowed under the Bankruptcy Code either by a Final Order, the Plan, any Plan Document or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

28. 27. "Disclosure Statement" means the Disclosure Statement in Respect of Chapter 11 Plan of Liquidation for Pacific Energy Resources Ltd., et al., as may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

29. 28. "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection or for which the Bankruptcy Court's order allowing or disallowing such Claim, Interest or Administrative Expense is on appeal; or (ii) until the Objection Deadline,

    a.     a Claim for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a differing amount (to the extent of such difference), with a differing classification, or as disputed, contingent, or unliquidated; and

b.      a Claim that has not been allowed either by a Final Order, the Plan, any Plan Document or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

30.     29. "Distributable Assets" means, except as otherwise noted below, any and all real or personal property of the Debtors of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Retained Rights of Action, and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of section 541 of the Bankruptcy Code.  Notwithstanding the foregoing, the term "Distributable Assets" does not include the Excluded Interests, the Lift Proceeds, the Tax Credits, the Royalty Overpayment or any assets that have been abandoned by the Estates pursuant to a Final Order of the Bankruptcy Court.

31.     30. "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

32.     31. "Entity" and "Entities" mean an entity as defined in section 101(5) of the Bankruptcy Code or more than one thereof.

33. ~~32.~~ "Estate(s)" means each estate created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of each Chapter 11 Case.

34. ~~33.~~ "Excluded Interests" means all of the right, title and interest of Rise Energy, Silver Point, and any of their predecessors or affiliates or any of the Debtors' estates in (i) ~~all payments or proceeds from insurance covering the Debtors' business interruption and debt service and related losses resulting from the eruptions of Mount Redoubt and related events and any refunds of insurance premiums associated with the abandonment of operations of the Debtors' Alaska operations and assets or otherwise. (ii) any proceeds from the sale of crude oil or other petroleum products produced from the oil fields commonly known as Trading Bay Unit and Trading Bay Field, including without limitation those which are currently held in a segregated interest-bearing account by order of this Court dated April 28, 2009 (Docket No. 230), other than such proceeds which are required to remain in the PEAO Estate pursuant to Paragraph 35 of the Final DIP Order. (iii~~the Business Interruption Insurance or any proceeds thereof, (ii) all payments or proceeds resulting from deposits made by potential purchasers of the Debtors' operations in Alaska or claims relating thereto, including without limitation, Catherwood Limited and its affiliated entities, and (i~~v~~iii) any assets or proceeds of assets related to any Alaska properties not otherwise bid or assumed to which Rise Energy, Silver Point, or their predecessors-in-interest or successors-in-interest, would otherwise be entitled if they were not bidders, provided, however, that the "Excluded Interests" shall not include the Lift Proceeds, the Tax Credits or the Royalty Overpayment as set forth in Article VI(I) of the Plan. For the

avoidance of doubt, nothing herein is intended to or does affect Union's right to current and future revenue arising out of Trading Bay Unit and Trading Bay Field.

35. 34. "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

36. 35. "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Cases or, in the case of a proof of claim, delivered to the Claims Agent. .

37. 36. "Final DIP Order" means the Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Granting Liens and Providing Superpriority Administrative Expense Status; (4) Granting Adequate Protection; and (5) Modifying Automatic Stay, entered by the Bankruptcy Court in the Chapter 11 Cases on June 24, 2009.

38. 37. "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, modified or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

39. 38. "Final Resolution Date" means the date on which all Disputed Claims of Creditors shall have been resolved by Final Order or otherwise finally determined.

40. 39. "Forest Oil" means Forest Oil Corporation and any successor or assigns thereof.

41. 40. "Forest Subordinated Note" means that certain Senior Subordinated Accreting Note, dated as of August 24, 2007, executed by PERL in favor of Forest Oil.

42. 41. "General Unsecured Claim" means a Claim against any of the Debtors other than (a) an Administrative Expense, (b) a Tax Claim, (c) a Priority Non-Tax Claim, (d) a Secured Claim, (e) a Subordinated Debt Claim (upon any determination by Final Order that the Forest Subordinate Note should be treated in Class 9 or as otherwise resolved by the Liquidating Debtors and Forest Oil under the Plan), (f) an Intercompany Claim, or (g) a Senior Lender Claim, or (h) a Union Claim.

43. 42. "Gotland" means Gotland Oil, Inc., a debtor in these Chapter 11 Cases.

44. 43. "Holder" means the beneficial owner of any Claim, Interest, or Administrative Expense.

45. 44. "Impaired" has the meaning set forth in 11 U.S.C. § 1124.

46. 45. "Intercompany Claim" means any Claim or Administrative Claim asserted against a Debtor by any other Debtor.

47. 46. "Interest" means an equity security of any of the Debtors within the meaning of section 101(16) of the Bankruptcy Code.

48. 47. "Inter-Estate Settlement" means the settlement and compromise amongst the Estate set forth in Article VI(H) of the Plan.

49. 48. "IRS" means the Internal Revenue Service.

50. 49. "Lien" means any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

51. "Lift Proceeds" means those proceeds in the amount of $12,272,757.61, plus accrued and accruing interest thereon, from the sale of crude oil or other petroleum products produced from the oil fields commonly known as Trading Bay Unit and Trading Bay Field. For the avoidance of doubt, the entirety of the Lift Proceeds are currently held in a segregated interest-bearing account by order of this Court dated April 28, 2009 (Docket No. 230).

52. 50. "Liquidating Debtors" means PERL, PEAH and PEAO from and after the Effective Date.

53. 51. "Miscellaneous Secured Claim" means any Secured Claim other than a Senior Lender Claim or a Union Claim.

54. 52. "Net Distributable Assets" means (a) in the case of PERL, the Unsecured Creditor Fund and the Wind-Down Fund, if any; (b) in the case of PEAO, the Alaska Fund, if any; and (c) in the case of each Liquidating Debtor, any and all other Distributable Assets, less (i) those Distributable Assets that will be retained by the Liquidating Debtors and used to fund Plan Expenses and the Wind-Down; (ii) Cash and/or other consideration reserved for, or to be distributed to, Creditors (other than Holders of Allowed General Unsecured Claims) under the Plan; and (iii) Retained Rights of Action, other than Excluded Interests, the Lift

Proceeds, the Tax Credits, and the Royalty Overpayment, provided that such Retained Rights of

Action shall be pursued by the Liquidating Debtors solely for the benefit of the Holders of

Allowed General Unsecured Claims in accordance with the Plan and any proceeds realized from

any such Retained Rights of Action shall become Net Distributable Assets upon such realization

and shall be distributed to the Holders of Allowed General Unsecured Claims in accordance with

the Plan.

55. 53. "Objection Deadline" means the deadline to object to Claims specified

in Article IX(A) of the Plan.

56. 54. "PEAH" means Pacific Energy Alaska Holdings, LLC, a debtor in

these Chapter 11 Cases.

57. 55. "PEAO" means Pacific Energy Alaska Operating LLC, a debtor in

these Chapter 11 Cases.

58. 56. "PERL" means Pacific Energy Resources Ltd., a debtor in these

Chapter 11 Cases.

59. 57. "Person" means an individual, partnership, corporation, limited

liability company, business trust, joint stock company, trust, unincorporated association, joint

venture, governmental authority, governmental unit or other entity of whatever nature.

60. 58. "Petition Date" means the date on which each of the Debtors filed their

petitions for relief under chapter 11 of the Bankruptcy Code.

61. 59. "Petrocal" means Petrocal Acquisition Corp., a debtor in these Chapter

11 Cases.

62. 60. "Plan" means this First Amended Plan of Liquidation, as Modified, for the Debtors.

63. 61. "Plan Expenses" means the expenses incurred by the Liquidating Debtors following the Effective Date (including the reasonable fees and costs of attorneys and other professionals), for the purpose of (i) prosecuting litigation preserved under the Plan, (ii) resolving Disputed Claims, if any, and effectuating distributions to Creditors under the Plan, (iii) otherwise implementing the Plan and closing the Chapter 11 Cases, or (iv) undertaking any other matter relating to the Plan.

64. 62. "Plan Representative" means the individual selected to fill this role in accordance with Article VI(E) of the Plan.

65. 63. "Priority Non-Tax Claim" means any Claim, other than a Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

66. 64. "Pro Rata" means proportionately, so that with respect to any distribution, the ratio of (a) (i) the amount of property to be actually or theoretically distributed on account of a particular Claim or particular group of Claims to (ii) the amount of such particular Claim or group of Claims, is the same as the ratio of (b) (i) the amount of property to be actually or theoretically distributed on account of all Claims or groups of Claims sharing in such distribution to (ii) the amount of all Claims or groups of Claims sharing in such distribution.

67. 65. "Professional Person" shall mean Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b), and/or 1103 of the Bankruptcy Code.

68. 66. "Record Date" means the Effective Date.

69. 67. "Remaining Claim" shall have the meaning set forth in the Beta Sale Order.

70. 68. "Representative" means, as to the referenced Person, such Person's present and former officers, directors, shareholders, trustees, partners and partnerships, members, agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such.

71. 69. "Retained Rights of Action" means all Rights of Action belonging to the Estates as of the Effective Date other than those Rights of Action specifically released under the Plan. For the avoidance of doubt, Retained Rights of Action include, without limitation, (i) any and all of the Estates' Rights of Action, including Avoidance Claims; and (ii) the right to object to Claims. Notwithstanding this definition, (i) any proceeds of Retained Rights of Action constituting Excluded Interests shall be paid to the Holders of Senior Lender Claims consistent with the Beta Sale Order and the Plan, and (ii) the Tax Credits shall be made available to Union and Chevron U.S.A. Inc. as set forth in Article VI(I) of the Plan. For the avoidance of doubt, the Liquidating Debtors shall succeed to any and all Avoidance Claims that previously had been investigated and/or pursued by the Committee.

72. 70. "Rights of Action" means any and all claims, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in

tort, at law or in equity, or under any other theory of law, held by any Person against any other Person.

73. 71. "Rise Energy" means Rise Energy Partners, LP and any of its affiliates or subsidiaries that participated in the sale authorized by the Beta Sale Order.

74. "Royalty Overpayment" means certain proceeds of oil production paid by PEAO in error to the State as royalties calculated by PEAO to be in the amount of $2,869,468.16 as of the Petition Date.

75. 72. "Schedules" means the schedules of assets and liabilities filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

76. 73. "Senior Lender Claim" means any Claim arising out of, or relating to, the "Remaining Claim" in the amount of $75,000,000 as defined in the Beta Sale Order.

77. 74. "Senior Lender" means a Holder of a Senior Lender Claim.

78. 75. "Secured Claim" means any Claim of any Person that is secured by a Lien on property in which any of the Debtors or its Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate securing such Claim or subject to setoff.

79. 76. "Silver Point" means Silver Point Capital, L.P. and any of its affiliates or subsidiaries that participated in any financing of any of the Debtors at any time and/or participated in the sale authorized by the Beta Sale Order.

80. "State" means the State of Alaska, on behalf of its various agencies.

81. "State Claim" means any Claim asserted against any of the Debtors by the State.

82. 77. "Subordinated Debt Claim" means any Claim asserted against any of the Debtors by Forest Oil relating to, or arising from, the Forest Subordinated Note.

83. 78. "Supervisory Board" means the individuals selected to fill this role in accordance with Article VI(E) of the Plan and identified at or before the Confirmation Hearing.

84. 79. "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

85. 80. "Tax Claim" means any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

86. "Tax Credits" means State of Alaska production tax credits allowed under AS § 43.55.023 to PEAO for the tax years 2007-2009 (amount currently asserted by PEAO is $5,666,807) relating to any Alaska property held by PEAO during 2007-2009 as finally

determined by the State following consideration of PEAO's applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about March 31, 2010 and June 8, 2010.

87. 81. "Timely Filed" means, with respect to a Claim, Interest or Administrative Expense, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court or the Claims Agent, as applicable, within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

88. 82. "Unclaimed Property" means all Cash deemed to be "Unclaimed Property" pursuant to Article VIII(E) of the Plan.

89. 83. "Unimpaired" means, with respect to a Class of Claims or Interests, not Impaired.

90. "Union" means Union Oil Company of California, and any of its successors or assigns.

91. "Union Adversary" means the adversary proceeding relating to the Lift Proceeds commenced by Union against PEAO and Silver Point (Adversary Case No. 09-51066).

92. "Union Claim" means any Claim asserted against any of the Debtors by Union.

93. 84. "Unsecured Creditor Fund" means the sum of $1,400,000 set aside for the sole and exclusive benefit of, and ultimate distribution to, Holders of Allowed General Unsecured Claims under the Beta Sale Order.

94.   ~~85.~~ "Wind-Down" means the wind-down of the Debtors' affairs in accordance with the Plan, as further described in Article VI(F) of the Plan.

95.   ~~86.~~ "Wind-Down Fund" means any remaining monies funded under the Beta Sale Order for the purpose of satisfying potential wind-down costs of the Estates.

## III.

## TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS

**A.   Introduction**

As required by the Bankruptcy Code, Administrative Expenses and Tax Claims are not placed into voting Classes. Instead, they are left unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment specified by statute or agreement of the parties. All postpetition payments by or on behalf of any of the Debtors in respect of an Administrative Expense or Tax Claim shall either reduce the Allowed amount thereof or reduce the amount to be paid under the Plan in respect of any Allowed amount thereof; and, unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Liquidating Debtors shall, in their sole and absolute discretion, determine which such method of application to employ.

**B.   Administrative Expenses**

Under the Plan, on the Effective Date, each Holder of an Allowed Administrative Expense against any of the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Administrative Expense, Cash from the Liquidating Debtors equal to the full amount of such Allowed Administrative Expense, unless such Holder and the Liquidating Debtors have mutually agreed in writing to other terms, or an order of the

Bankruptcy Court provides for other terms; provided, however, that (a) requests for payment of all Administrative Expenses must be Filed and served as described in Article XIV(B)(3) of the Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses of professionals and certain other Persons requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code as set forth in Article XIV(B)(3) and (4) of the Plan.

## C.    Tax Claims

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Tax Claims are not to be classified and thus Holders of Tax Claims are not entitled to vote to accept or reject the Plan.

As required by section 1129(a)(9) of the Bankruptcy Code, on or as soon as practicable after the Effective Date, each Holder of an Allowed Tax Claim against any of the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Tax Claim, Cash from the Liquidating Debtors equal to the portion of the Allowed Tax Claim due and payable on or prior to the Effective Date according to applicable non-bankruptcy law. Any Allowed Tax Claim (or portion thereof) against any of the Debtors not yet due and payable as of the Effective Date will be paid by the Liquidating Debtors no later than when due and payable under applicable non-bankruptcy law without regard to the commencement of the Chapter 11 Cases; provided that (1) any default prior to the Effective Date with respect to Tax Claims against any of the Debtors shall be deemed cured and (2) upon request of the Liquidating Debtors, the Bankruptcy Court shall determine the amount of any Disputed Claim for, or issues

pertaining to, Tax Claims.  Any Holder of a Tax Claim may agree to accept different treatment

as to which the Liquidating Debtors and such Holder have agreed upon in writing.

**IV.**

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**A.**     **Summary**

       The categories of Claims and Interests listed below classify Claims and Interests

for all purposes, including voting, confirmation and distribution pursuant to the Plan and

pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is

classified in a particular Class only to the extent that the Claim or Interest qualifies within the

description of that Class and is classified in other Classes only to the extent that any remainder of

the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest

is also classified in a particular Class only to the extent that such Claim or Interest is an Allowed

Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied

prior to the Effective Date.


       In accordance with section 1122 of the Bankruptcy Code, the Plan provides for

the classification of seven (10) Classes of Claims and/or Interests.  Administrative Expenses and

Tax Claims have not been classified and are excluded from the following Classes in accordance

with section 1123(a)(1) of the Bankruptcy Code.

**B.**     **Classification and Treatment of Claims and Interests**

The treatment of each Class of Claims and/or Interests is set forth below. Unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Liquidating Debtors shall, in their sole and absolute discretion, determine whether a postpetition payment by or on behalf of any of the Debtors in respect of a Claim either (x) shall reduce the Allowed amount thereof or (y) shall reduce the amount to be paid under the Plan in respect of any Allowed amount thereof.

1.    **Class 1 – Priority Non-Tax Claims**

a.    Classification:  Class 1 consists of all Priority Non-Tax Claims against any of the Debtors.

b.    Treatment:  At the election of the Liquidating Debtors, the Holder of each Priority Non-Tax Claim against any of the Debtors shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, a Cash payment from the Liquidating Debtors equal to the Allowed amount of such Claim (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim; or (b) as otherwise agreed by the Holders of such Claims and the Liquidating Debtors, as the case may be.  Any Holder of a Priority Non-Tax Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed upon in writing.

c.    Impairment/Voting:  Class 1 is Unimpaired.  Class 1 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    **Class 2 – Miscellaneous Secured Claims**

a.    <u>Classification</u>:  Class 2 consists of all Miscellaneous Secured

Claims (if any such Claims exist).

b.    <u>Treatment</u>:  On or as soon as practicable after the Effective Date,

each Holder of an Allowed Miscellaneous Secured Claim shall, on account of such Claim, at the

election of the Liquidating Debtors ~~and in full satisfaction, settlement, release, and~~

~~extinguishment~~, and as the sole distribution or dividend by the Debtors or their Estates under this

Plan on account of such Miscellaneous Secured Claim, either:  (i) be paid by the Liquidating

Debtors in Cash in full, (ii) have surrendered to such Holder, without representation or warranty,

the collateral securing its Claim, (iii) notwithstanding any contractual provision or applicable law

that entitles the Holder of such Miscellaneous Secured Claim to demand or receive accelerated

payment of such Claim after the occurrence of a default (A) be paid by the Liquidating Debtors a

cure of any such default that occurred prior to the Effective Date, other than a default of a kind

specified in section 365(b)(2) of this title, (B) have reinstated the maturity of such Miscellaneous

Secured Claim as such maturity existed before such default, (C) be compensated by the

Liquidating Debtors for any damages incurred as a result of any reasonable reliance by such

Holder on such contractual provision or such applicable law, and (D) otherwise not have altered

the legal, equitable, or contractual rights to which such Miscellaneous Secured Claim entitles the

Holder of such Claim, or (iv) have left unaltered the legal, equitable, and contractual rights to

which such Claim entitles the Holder of such Claim.  In the case of option (ii) or (iii), in the

event that any such Miscellaneous Secured Claim is not completely satisfied by such

distribution, any deficiency against the applicable Debtors will be treated as a General Unsecured Claim. Any Holder of an Miscellaneous Secured Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed upon in writing.

      c.    <u>Impairment/Voting</u>: Class 2 is Unimpaired. Class 2 is therefore conclusively presumed to have accepted the Plan, and Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

      **3.**    **<u>Class 3 – Senior Lender Claims</u>**

      a.    <u>Classification</u>:  Class 3 consists of all Senior Lender Claims against any of the Debtors.

      b.    <u>Treatment</u>:  From and after the Effective Date, each Holder of an Allowed Senior Lender Claim against any of the Debtors shall receive, ~~in full satisfaction, settlement, release, and extinguishment~~<u>as the sole distribution or dividend by the Debtors or their Estates under this Plan on account</u> of such Senior Lender Claim, any and all rights, Claims and Liens in the Excluded Interests and the Remaining Claim referenced in the Beta Sale Order to which such Holder of an Allowed Senior Lender Claim is entitled pursuant to the terms and provisions of the Beta Sale Order.  For purposes of the Plan, the value of the "Excluded Interests" shall be deemed to equal $35,000,000.  The sum of $40,000,000 shall be deemed allowed and treated as the Remaining Claim referenced in the Beta Sale Order.  In accordance with the terms and provisions of the Beta Sale Order, distributions on account of the Remaining Claim were assigned to the Estates solely for the benefit of Holders of Allowed General Unsecured Claims (specifically excluding Forest Oil). ~~Notwithstanding anything otherwise set~~

~~forth in,~~ provided that Forest Oil reserves the right to dispute the effect of the Beta Sale Order on the treatment of its claim under the Forest Subordinated Note, and the determination of the treatment of the Forest Subordinated Note shall be subject to the Final Order as provided in Article IV(B)(9) of this Plan. Subject to the last sentence of this paragraph, the Holders of Allowed Senior Lender Claims shall be entitled to the value of any proceeds of the Excluded Interests pursuant to the terms and conditions of the Beta Sale Order. Unless otherwise provided by an order of the Bankruptcy Court, title to the Excluded Interests shall be vested in the Liquidating Debtors from and after the Effective Date, provided that the Liquidating Debtors shall have no obligations or responsibilities whatsoever with respect to the Excluded Interests except as may be agreed by the Liquidating Debtors, by and through the Plan Representative, and the Holders of Allowed Senior Lender Claims, which Holders shall be required to fund, compensate and reimburse, and to otherwise indemnify and hold harmless, the Liquidating Debtors for any costs, expenses, fees or other liabilities that may be incurred by the Liquidating Debtors at the direction of the Holders of Allowed Senior Lender Claims with respect to the Excluded Interests from and after the Effective Date, which in such case the Liquidating Debtors shall act reasonably and in good faith to support recovery of the Excluded Interests. Further, the Liquidating Debtors shall have the right, only upon the consent of all Holders of Allowed Senior Lender Claims, but after consultation with the Holders of Allowed Senior Lender Claims, to transfer title to the Excluded Interests, or some portion thereof, to the Holders of Allowed Senior Secured Claims at any time from and after the Effective Date without notice to Creditors or approval of the Bankruptcy Court, provided, however, that any transfer of title in the Excluded

Interests shall not prejudice a Holder of an Allowed Senior Lender Claim's ability to collect proceeds of the Excluded Interests.

  c. <u>Impairment/Voting</u>: Class 3 is Impaired. Holders of Class 3 are therefore entitled to vote to accept or reject the Plan.

  **4.** **<u>Class 4 – General Unsecured Claims Against PERL</u>**

  a. <u>Classification</u>: Class 4 consists of all General Unsecured Claims against PERL.

  b. <u>Treatment</u>: On or as soon as practicable after the Effective Date or such other date as the Net Distributable Assets of PERL become available for distribution, each Holder of an Allowed General Unsecured Claim against PERL shall receive, ~~in full satisfaction, settlement, release, and extinguishment~~<u>as the sole distribution or dividend by PERL or its Estate under this Plan on account</u> of such General Unsecured Claim, a Pro Rata share (calculated as a percentage of Allowed General Unsecured Claims against PERL) of the Net Distributable Assets of PERL. Further, Holders of Allowed General Unsecured Claims against PERL shall have the benefit of any subordination rights or carve-outs assigned to such Holders by the Holders of the Senior Lender Claims under the Beta Sale Order, the Final DIP Order, this Plan, or any other order of the Bankruptcy Court.

  c. <u>Impairment/Voting</u>: Class 4 is Impaired. Holders of Class 4 are therefore entitled to vote to accept or reject the Plan.

  **5.** **<u>Class 5 – General Unsecured Claims Against PEAH</u>**

a.     Classification:  Class 5 consists of all General Unsecured Claims against PEAH.

b.     Treatment:  On or as soon as practicable after the Effective Date or such other date as the Net Distributable Assets of PEAH become available for distribution, each Holder of an Allowed General Unsecured Claim against PEAH shall receive, ~~in full satisfaction, settlement, release, and extinguishment~~<u>as the sole distribution or dividend by PEAH or its Estate under this Plan on account</u> of such General Unsecured Claim, a Pro Rata share (calculated as a percentage of Allowed General Unsecured Claims against PEAH) of the Net Distributable Assets of PEAH, if any.  Further, Holders of Allowed General Unsecured Claims against PEAH shall have the benefit of any subordination rights or carve-outs assigned to such Holders by the Holders of the Senior Lender Claims under the Beta Sale Order, the Final DIP Order, this Plan, or any other order of the Bankruptcy Court.

c.     Impairment/Voting:  Class 5 is Impaired.  Holders of Class 5 are therefore entitled to vote to accept or reject the Plan.

**6.     <u>Class 6 – General Unsecured Claims Against PEAO</u>**

a.     Classification:  Class 6 consists of all General Unsecured Claims against PEAO.

b.     Treatment:  On or as soon as practicable after the Effective Date or such other date as the Net Distributable Assets of PEAO become available for distribution, each Holder of an Allowed General Unsecured Claim against PEAO shall receive, ~~in full satisfaction, settlement, release, and extinguishment~~<u>as the sole distribution or dividend by PEAO or its Estate</u>

under this Plan on account of such General Unsecured Claim, a Pro Rata share (calculated as a percentage of Allowed General Unsecured Claims against PEAO) of the Net Distributable Assets of PEAO, if any. Further, Holders of Allowed General Unsecured Claims against PEAO shall have the benefit of any subordination rights or carve-outs assigned to such Holders by the Holders of the Senior Lender Claims under the Beta Sale Order, the Final DIP Order, this Plan, or any other order of the Bankruptcy Court.

        c.      <u>Impairment/Voting</u>: Class 6 is Impaired. Holders of Class 6 are therefore entitled to vote to accept or reject the Plan.

     7.     **<u>Class 7 – General Unsecured Claims Against Petrocal, Carneros Acquisition, Carneros Energy and Gotland</u>**

        a.      <u>Classification</u>: Class 7 consists of all General Unsecured Claims against Petrocal, Carneros Acquisition, Carneros Energy and Gotland.

        b.      <u>Treatment</u>: On the Effective Date, the Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland shall be deemed dismissed because such Debtors have no assets, and Holders of Allowed General Unsecured Claims against such Debtors, if any, shall receive no distributions or recoveries on account of such Claims.

        c.      <u>Impairment/Voting</u>: Class 7 is Impaired. Because Holders of Claims in Class 7 receive no recovery on account of such Claims under the Plan, they are conclusively presumed to reject the Plan.

     8.     **<u>Class 8 – Intercompany Claims</u>**

a.      Classification:  Class 8 consists of all Intercompany Claims against any of the Debtors.

b.      Treatment:  Holders of Intercompany Claims shall receive no distributions or recoveries on account of such Claims and such Claims shall be extinguished on the Effective Date.  However, Holders of the Intercompany Claims shall benefit from the Inter-Estate Settlement under the Plan.

c.      Impairment/Voting:  Class 8 is Impaired.  Because Holders of Claims in Class 8 are the proponents of the Plan, they have agreed to accept the Plan.

9.      **Class 9 – Subordinated Debt Claims**

a.      Classification:  Class 9 consists of all Subordinated Debt Claims.

b.      Treatment:  To the extent that a Final Order is entered to require such treatment, Holders of Subordinated Debt Claims shall receive no distributions or recoveries on account of such Claims based upon the terms of the Forest Subordinated Note and the Beta Sale Order, or any other basis under law for subordination.  In the alternative, if a Final Order is entered declining to subordinate the Subordinated Debt Claims to other General Unsecured Claims, such Claims shall be treated as General Unsecured Claims in Class 4, Class 5 and Class 6 under the Plan in the amount owing under the Forest Subordinated Note as of the Petition Date, subject to any and all rights of the Debtors, the Liquidating Debtors or their Estates to object to or contest such General Unsecured Claims on any basis not addressed by such Final Order (without limiting Forest Oil's right to assert any and all defenses to any such objection or contest).  Pending the entry of a Final Order, nothing herein shall preclude the Liquidating

Debtors and the Holders of the Subordinated Debt Claims from resolving the treatment of the Subordinated Debt Claims in accordance with applicable provisions of the Plan, including without limitation, Article VI(D) of the Plan. The Liquidating Debtors and Forest agree and acknowledge that this Plan itself provides alternative treatments for the Forest Subordinated Note depending on whether the Bankruptcy Court by Final Order determines that such Forest Subordinated Note should be treated either (i) in Class 4, Class 5 and Class 6 (as asserted by Forest), subject to the Debtors, the Liquidating Debtors' and the Estates' right to object to or contest such Claims on any basis not addressed by such Final Order (without limiting Forest Oil's right to assert any and all defenses to any such objection or contest), or (ii) in Class 9 (as asserted by the Liquidating Debtors). Therefore, the Liquidating Debtors acknowledge and agree that Forest Oil shall have the right to argue and assert that the Subordinated Debt Claims should be treated as General Unsecured Claims unless and until a Final Order is entered that provides for such Claim to be treated in Class 9, or a resolution is otherwise reached amongst the Liquidating Debtors and Forest in accordance with the Plan. The Liquidating Debtors and Forest Oil also agree and acknowledge that because the Plan itself is structured to address alternative treatments of the Forest Subordinated Note, any appeal by Forest Oil or by the Liquidating Debtors in respect of the treatment of the Forest Subordinated Note, as may be determined by separate order of the Bankruptcy Court, shall not be mooted because of confirmation or effectiveness of the Plan. Forest Oil acknowledges and agrees that the issue of whether the Forest Subordinated Note will be treated in Class 9 under the Plan may be raised through the

filing of a motion and/or claim objection with the Bankruptcy Court by the Liquidating Debtors in their discretion, and without the need for the commencement of an adversary proceeding.

        c.      <u>Impairment/Voting</u>:  Class 9 is Impaired.  Because Holders of Claims in Class 9 may receive no recovery on account of such Claims under the Plan, they are conclusively presumed to reject the Plan.

        **10.**      **<u>Class 10 – Interests in the Debtors</u>**

        a.      <u>Classification</u>:  Class 10 consists of all Interests in the Debtors.

        b.      <u>Treatment</u>:  Holders of Interests in the Debtors shall receive no distributions or recoveries on account of such Interests and such Interests shall be extinguished on the Effective Date.

        c.      <u>Impairment/Voting</u>:  Class 10 is Impaired.  Because Holders of Interests in Class 10 receive no recovery on account of such Interests under the Plan, they are conclusively presumed to reject the Plan.

**V.**

**<u>ACCEPTANCE OR REJECTION OF PLAN</u>**

**A.**      **<u>Identification of Unimpaired Classes</u>**

      The following Classes are not Impaired (i.e., are Unimpaired) under the Plan:

      1.      Class 1  – Priority Non-Tax Claims

      2.      Class 2 – Miscellaneous Secured Claims

**B.**      **<u>Identification of Impaired Classes</u>**

      The following Classes of Claims and Interests are Impaired under the Plan.

1.  Class 3 – Senior Lender Claims

2.  Class 4 – General Unsecured Claims against PERL

3.  Class 5 – General Unsecured Claims against PEAH

4.  Class 6 – General Unsecured Claims against PEAO

5.  Class 7 – General Unsecured Claims against Petrocal, Carneros
    Acquisition, Carneros Energy and Gotland

6.  Class 8– Intercompany Claims

7.  Class 9 – Subordinated Debt Claims

8.  Class 10 – Interests in the Debtors

## C.  Classes Permitted and Not Permitted to Vote

Classes 1 and 2 are Unimpaired. Holders of Claims or Interests in such Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan.

Classes 3 through 10 are Impaired. Holders of Claims and Interests in Classes 3 through 6 are permitted to vote to accept or reject the Plan. Class 8 is not permitted to vote as this is a Class made up of the Debtors, which are the proponents of the Plan and have agreed to accept the treatment under the Plan. Holders of Claims and Interests in Classes 7, 9 and 10 are conclusively presumed to reject the Plan.

An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders (other than any Holder designated by the Bankruptcy Court based on their vote or its solicitation not being in good faith under Bankruptcy Code section 1126(e)) of at least two-thirds

in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and

(b) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of

more than one-half in number of the Allowed Claims actually voting in such Class have voted to

accept the Plan.  An Impaired Class of Interests that votes shall have accepted the Plan if the

Holders (other than any Holder designated under section 1126(e)) of at least two-thirds in

amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

**D.      Nonconsensual Confirmation**

In the event any Class of Claims or Interests votes to reject the Plan, the Debtors

intend to request that the Bankruptcy Court confirm the Plan notwithstanding such rejection

pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and

equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**E.      Postpetition Interest**

Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the

Holder of a Claim to receive postpetition interest on account of such Claim.

## VI.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.      Continued Corporate Existence and Vesting of Assets of Liquidating Debtors**

~~The~~On and after the Effective Date, each of the Liquidating Debtors will continue

to exist ~~on and after the Effective Date~~ as a separate ~~corporate Entities, with~~corporation or

limited liability company (as the case may be).  Such corporate or limited liability company

existence shall be deemed to be continued notwithstanding any provision of applicable non-

bankruptcy law triggering the dissolution of any business entity upon the cancellation or extinguishment of all its equity interests or the termination of its sole remaining equity interest holder, and PERL and PEAH shall be deemed to have consented to the continuation of PEAH and PEAO, respectively, from and after the Effective Date until the date of entry of the final decree in the Chapter 11 Cases. On and after the Effective Date, the Liquidating Debtors shall retain all of the powers of corporations or limited liability companies under the applicable non-bankruptcy law, and without prejudice to any right to amend their charters, dissolve, merge or convert into other form of business entity, or to alter or terminate their existence (whether by merger or otherwise), provided that the Liquidating Debtors' sole purpose from and after the Effective Date will be to make distributions to Creditors consistent with the Plan and to otherwise effectuate the Wind-Down.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Estates of PERL, PEAH and PEAO, including all Retained Rights of Action, the Unsecured Creditor Fund, the Alaska Fund, the Wind-Down Fund, and any property acquired by such Debtors under or in connection with the Plan will vest in the applicable Liquidating Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests. Notwithstanding the foregoing, (i) any proceeds of Retained Rights of Action constituting Excluded Interests shall be paid to the Holders of Senior Lender Claims consistent with the Beta Sale Order and the Plan, and (ii) the Tax Credits shall be made available to Union and Chevron U.S.A. Inc. as set forth in Article VI(I) of the Plan. Further, nothing in

the Plan shall have any ~~affect~~effect on any rights, Liens or Claims that any party may have against assets that were abandoned by the Estates by Final Order of the Bankruptcy Court.

**B.**   **Dismissal of Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland**

Upon the Effective Date, the Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland shall be dismissed, and such Debtors shall be ~~deemed~~ dissolved and wound up without any further action required by the Debtors or their shareholders or boards of directors.  The Plan Representative is authorized to take any action required or advisable under applicable non-bankruptcy law to effectuate such dissolutions, including the preparation, execution and/or filing of any required certificate of dissolution, certificate of cancellation, or similar instrument with the Delaware Secretary of State and other applicable state governmental authorities.

**C.**   **No Substantive Consolidation**

Nothing in the Plan is intended to substantively consolidate, nor shall have the effect of substantively consolidating, the Debtors or their Estates, and each Liquidating Debtor shall maintain its separate corporate or limited liability company existence and assets from and after the Effective Date.

**D.**   **Retained Rights of Action**

Unless a Right of Action or objection to Claim is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, or in a Final Order, all rights with respect to such Retained Right of Action or objections to Claims are expressly preserved for the benefit of, and fully vested in, the respective Liquidating Debtors.

Notwithstanding the foregoing, (i) any proceeds of Retained Rights of Action constituting

Excluded Interests shall be paid to the Holders of Senior Lender Claims consistent with the Beta

Sale Order and the Plan, and (ii) the Tax Credits shall be made available to Union and Chevron

U.S.A. Inc. as set forth in Article VI(I) of the Plan. For the avoidance of doubt, on the Effective

Date, the Liquidating Debtors shall automatically succeed to any and all Avoidance Claims that

had been investigated and/or pursued by the Committee prior to the Effective Date and standing

to investigate, prosecute and/or compromise such Avoidance Claims shall automatically revert to

the Liquidating Debtors. For the avoidance of doubt, on and after the Effective Date: (i) the

captions in all pleadings filed in any Avoidance Claims shall be deemed automatically amended

to reflect the Liquidating Debtors as plaintiff; (ii) any pleadings filed in any Avoidance Claims

subsequent to the Effective Date shall reflect the Liquidating Debtors as plaintiff; (iii) Pepper

Hamilton LLP shall act as counsel to the Liquidating Debtors with respect to the Avoidance

Claims; and (iv) all amendments and authorizations contemplated in this paragraph shall take

effect automatically and without the need for any further Order of the Court, authorization by the

Clerk of Court, or filings of notices or requests in the Avoidance Claims.

   With the exception of Retained Rights of Action constituting Excluded Interests,

which the Liquidating Debtors shall act reasonably and in good faith to support recovery of such

Excluded Interests to the extent set forth in the treatment of Class 3 under the Plan, the

applicable Liquidating Debtors may pursue, or decline to pursue, the Retained Rights of Action

and objections to Claims, as appropriate, in the business judgment of the Plan Representative and

the Supervisory Board. The applicable Liquidating Debtors may settle, release, sell, assign,

otherwise transfer, or compromise, Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court, subject to any limitations under applicable bankruptcy and non-bankruptcy law, provided that in the case of any sale, assignment or transfer of the Retained Rights of Action, the applicable Liquidating Debtors shall obtain approval of the Bankruptcy Court on notice to parties requesting notice in the Chapter 11 Cases.

**E.      Corporate Governance**

From and after the Effective Date, subject to the oversight of the Supervisory Board as described below, each of the Liquidating Debtors shall be managed and administered ~~through~~by the Plan Representative, ~~who shall be appointed as sole officer of each of.~~ The initial Plan Representative shall be Gerald A. Tywoniuk.  In managing and administering the Liquidating Debtors, ~~and~~the Plan Representative shall have full power and authority to execute the provisions of ~~the Plan.  The initial Plan Representative shall be Gerald A. Tywoniuk.  Any successor thereto~~this Plan, and to execute instruments and take other action in the name and on behalf of the Liquidating Debtors, to the same extent as if the Plan Representative were the sole director, shareholder, officer, manager, or member of the Liquidating Debtors under applicable non-bankruptcy law.  Notwithstanding the foregoing, the Plan Representative shall not have any responsibility to take any action with respect to any assets or property abandoned by the Estates or any assets or property other than the Distributable Assets and property of the Estates vested in the Liquidating Debtors under this Plan, and the Plan Representative shall not be liable as a result of any action taken in accordance with the provisions of this Plan.  As of the Effective Date, the provisions of this Plan applicable to the corporate governance of the Liquidating

Debtors shall supersede any contrary provisions of the certificates of incorporation, bylaws, certificates of formation, and/or limited liability company or operating agreements of the Liquidating Debtors, which are hereby deemed amended to so provide, and the Plan Representative is authorized to execute any such separate written amendments as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate the intent of the foregoing provisions.

The Plan Representative's management and administration of the Liquidating Debtors shall be subject to oversight by the Supervisory Board, which shall have supervisory authority over the Plan Representative, unless otherwise ordered by the Bankruptcy Court. Any successor to the initial Plan Representative shall be appointed by the Supervisory Board after the Effective Date in accordance with applicable corporate governance documents, subject to the approval of the Bankruptcy Court. The terms of the initial Plan Representative's compensation shall be disclosed prior to the Confirmation Hearing.

The Supervisory Board shall be appointed as directors for each of the Liquidating Debtors pursuant to 8 Delaware Code §303, with supervisory authority over the Plan Representative. The Supervisory Board shall consist of no more than three (3) Persons and no less than one (1) Person selected by the Committee with the consent of the Debtors, which consent shall not be unreasonably withheldinitially consist of representatives of Marathon Oil Company and Bateman & Company Ltd. In the event of any disagreement or deadlock amongst such Persons, the matter shall be resolved or addressed by the Bankruptcy Court. In the event that a member of the Supervisory Board can no longer carry out itshis or her duties as a director

(by reason of death, resignation or disability) (the "Director Vacancy"), the remaining

~~members~~member of the Supervisory Board may ~~jointly~~ appoint a successor, or in the event no

such successor is appointed within 90 days, the Plan Representative may petition the Bankruptcy

Court to appoint a successor.  The members of the Supervisory Board shall not be compensated

for their service for the Debtors, aside from reimbursement of reasonable expenses.  <u>From and

after the Effective Date, the Liquidating Debtors may take such action as may be necessary or

appropriate under applicable non-bankruptcy law to incorporate the corporate governance

provisions, and otherwise fully effectuate the intent, of this Plan, including but not limited to the

preparation, execution and/or filing with the Delaware Secretary of State or other relevant state

governmental authorities of any appropriate amendments of the certificates of incorporation,

bylaws, certificates of formation, and/or limited liability company or operating agreements of the

Liquidating Debtors.</u>

Notwithstanding anything to the contrary herein, to the extent of any dispute

between the Plan Representative and the Supervisory Board, such dispute shall be resolved by

the Bankruptcy Court.  The Plan Representative may rely on counsel for the Liquidating Debtors

in bringing any disputes before the Bankruptcy Court, and the Supervisory Board shall be

authorized to employ and compensate counsel of its own choosing (payable out of the

Liquidating Debtors' assets) in the event of such dispute.

**F.     Wind-Down**

The Liquidating Debtors, through the Plan Representative, shall make

distributions to Creditors consistent with the Plan and otherwise hold and liquidate all

Distributable Assets and property of the Estates for the benefit of Creditors, in accordance with the provisions of the Plan. The Liquidating Debtors, the Plan Representative, and the Supervisory Board shall not be required to post a bond in favor of the United States.

The Liquidating Debtors, acting through the Plan Representative, shall have the power and authority to perform the following acts (together, the "Wind-Down"), in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Debtors or the Plan Representative, subject to the authority of the Supervisory Board, to act as specifically authorized by any other provision of the Plan or orders of the Bankruptcy Court, and to act in such manner as the Plan Representative may deem necessary, or desirable to discharge all obligations assumed by the Liquidating Debtors as provided herein, and to conserve and protect the Distributable Assets, or to confer on Creditors the benefits intended to be conferred upon them by the Plan; including without limitation and by example only:

(1)     Determine Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code;

(2)     Resolve any objections to the allowance or priority of Claims, Administrative Expenses or Interests;

(3)     Resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

(4)     Distribute Cash in the Estates to Creditors consistent with the terms of the Plan;

(5)     Perfect and secure the Liquidating Debtors' right, title and interest to property of the Estates;

(6)     Recover and, to the extent possible, sell and convert the property of the Estates to Cash, and distribute the net proceeds consistent with the terms of the Plan;

(7)     Manage and protect property of the Estates and distribute the net proceeds consistent with the terms of the Plan;

(8)     Wind-up the affairs of the Liquidating Debtors' subsidiaries and affiliates, including Petrocal, Carneros Acquisition, Carneros Energy and Gotland to the extent necessary;

(9)     Purchase or continue insurance to protect the Liquidating Debtors, the Plan Representative, and property of the Estates;

(10)    Deposit Estate funds, draw checks and make disbursements thereof consistent with the terms of the Plan;

(11)    Employ, retain and compensate, and discharge and dismiss, without further order of the Bankruptcy Court, Professional Persons as the Plan Representative may deem necessary or desirable to assist in fulfilling the purposes of the Plan, including the continued retention and payment of Professional Persons in connection with any ongoing litigation or other matter pursued or conducted by the Debtors or the Committee whether on an hourly, flat fee or contingency basis, including any litigation related to any Avoidance Claims or Excluded Interests (or with Union's approval, the Tax Credits), provided that the retention of Professional Persons by the Liquidating Debtors shall be subject to the consent of the Supervisory Board (except for Professional Persons retained solely for the purpose of pursuing the Excluded Interests on behalf of the Senior Lenders or the Tax Credits on behalf of Union);

(12)    Commence or prosecute in the name of the Liquidating Debtors (or any of them), any lawsuit or other legal or equitable action (except to the extent released pursuant to the terms of the Plan), including, without limitation, filing objections to or estimation of Claims, and prosecuting Retained Rights of Action, in any court of competent jurisdiction, which are necessary to carry out the terms and conditions of the Plan;

(13)    Settle, compromise or adjust, pursuant to the standards of Bankruptcy Rule 9019 (which standards, but not a requirement for Bankruptcy Court approval, shall be deemed to apply to all post-Effective Date settlements), any disputes or controversies in favor of, or against, any of the Liquidating Debtors;

(14)    Incur and pay all Plan Expenses and any reasonable costs and expenses incident to the performance of the duties of the Liquidating Debtors and the Plan Representative under the Plan, including without limitation, reasonable rent for office space and storage, office supplies, travel and expense reimbursement, insurance, and other obligations;

(15)    Prepare and file tax returns, as mandated by applicable local, state, federal and foreign law;

(16)    Seek entry of a final decree at the appropriate time; and

(17)    Take such other action as the Plan Representative may determine to be necessary or desirable to carry out the purpose of the Plan.

## G.    **Funding for the Plan**

The Liquidating Debtors' obligations under the Plan and the fees and expenses of the Liquidating Debtors will be funded out of existing Cash in the Estates. Any unused Cash of the Liquidating Debtors set aside to fund Plan Expenses and the Wind-Down shall be distributed to the Holders of Allowed General Unsecured Claims against the Liquidating Debtors in accordance with the Plan. Any additional Cash proceeds that may be realized by the Liquidating Debtors from and after the Effective Date shall be distributed to the Holders of Allowed General Unsecured Claims in accordance with the Plan.

## H.    **Inter-Estate Settlement**

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, each Debtor and their successors and assigns hereby waive, release and discharge each other and all of their respective successors from any and all Intercompany Claims and Rights of Action amongst and between any or all of the Debtors,

which waiver, release and discharge shall be effective as a bar to all actions, causes of action, suits, Claims, Liens, or demands of any kind with respect to any Intercompany Claim or Right of Action amongst or between any or all of the Debtors.

In consideration of the foregoing waiver and release of Claims amongst the Estates and the funding of the Allowed Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims of the Estates, the Unsecured Creditor Fund shall be distributed to the Holders of Allowed General Unsecured Claims against PERL, the Alaska Fund, if any, shall be distributed to the Holders of Allowed General Unsecured Claims against PEAO, and the Wind-Down Fund, if any, shall be distributed to the Estate of PERL after all Allowed Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims of the other Debtors have been satisfied. No distribution out of the Unsecured Creditor Fund or the Wind-Down Fund shall be made to, or for the benefit of, the Debtors other than PERL, except as set forth above.

**I.** **Resolution with the Estates, Union, the Senior Lenders, the State and the Committee**

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, each of the Debtors and their Estates, Union, the Senior Lenders, the State, and the Committee shall be bound by the following provisions, and any and all Union Claims and Alaska Claims shall be treated as set forth below:

(1) The entirety of the Lift Proceeds shall be released and paid to Union, and the Union Adversary shall be dismissed with prejudice, with all parties to bear their own costs and fees. The Debtors and their Estates shall waive any claims with respect to any of the Lift

Proceeds granted pursuant to the Final DIP Order, including (without limitation) with respect to any amounts remaining under the Alaska Fund that in any way relate to the Lift Proceeds.

 (2) Union shall waive any and all claims to the Excluded Interests. For the avoidance of doubt, Union shall assert no further rights or claims in the Business Interruption Insurance or the proceeds thereof, any bidder deposits that remain with respect to the sale of any of the Alaska assets, any insurance premiums that have been returned to the Debtors, the royalty proceeds that are currently held for the benefit of the Senior Lenders in the West Foreland escrow account, or the net proceeds of the retainer of Stoel Rives, LLP which has been returned to the Debtors.

 (3) The Debtors' pending motions to (a) pay the proceeds of the Excluded Interests and certain other assets to the Senior Lenders (Docket No. 1561), and (b) approve a stipulation resolving claims with the State (Docket No. 1895), shall be withdrawn as moot. Further, any pending objections of the Debtors to proofs of claim or requests for payment of administrative expenses filed by Union or the State shall be withdrawn as moot.

 (4) The State will continue to process PEAO's Tax Credits applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about March 31, 2010 and June 8, 2010 and issue transferable certificates in accordance with AS 43.55.023. PEAO will then take all necessary steps to transfer the Tax Credits certificates to either Union or Chevron U.S.A. Inc. ("Chevron"). The State will not object to Union or Chevron using the Tax Credits against production tax liability consistent with AS 43.55.011 *et seq.* and 43.55.023 from any Union or Chevron oil and gas property situated in the state. In furtherance of the Plan, PEAO

shall assign to Union, at Union's sole option, every right of PEAO in and to the Tax Credits, and

PEAO shall diligently pursue recovery of the Tax Credits at the direction and for the benefit of

Union, including but not limited to: (1) appealing a denial by the State on the Tax Credits

application of PEAO in accordance with AS 43.05.240 *et seq.*; and (2) any and all other efforts

necessary to facilitate PEAO being awarded Tax Credits certificates by the State in the amount

for which PEAO is eligible under AS 43.55.023 for the period 2007-2009 as requested in the

applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about

March 31, 2010 and June 8, 2010 (for the avoidance of doubt, PEAO shall have all the rights of

an applicant under AS 43.55.011 *et seq.*). The foregoing activities if specifically requested by

Union are the "Directed Activities." Finally, Silver Point and PEAO shall release any right, title,

lien, claim, or encumbrance in and to the Tax Credits in favor of Union.

      (5)    Union shall indemnify PEAO for liabilities directly caused by the Directed

Activities in pursuing the Directed Activities and for reasonable costs and expenses incurred by

PEAO pursuant to an approved budget (as described below), provided however that Union shall

not be liable for PEAO's gross negligence or willful misconduct under any circumstances.

PEAO shall submit a written budget to Union for any proposed Directed Activities, which

budget Union may approve in its sole discretion. PEAO's shall not incur reimbursable costs and

expenses except pursuant to an approved budget.

      (6)    The State shall retain the Royalty Overpayment, which has been applied to

PEAO's plugging, abandonment, decommissioning and other obligations. Union, and the

Debtors, on behalf of their estates, release any claims against, or rights to, the Royalty

Overpayment and will not pursue recovery of same. Other than as expressly provided in this Plan, including with respect to the Tax Credits, the Debtors, on behalf of their estates, shall release the State from any claims or demands including any Avoidance Claims.

(7)    Silver Point will release all mortgages, security interests, liens and encumbrances whatever in and to the Trading Bay Unit and Trading Bay Field and any and all Lift Proceeds whenever or wherever arising. In addition, PEAO shall execute new mortgages, fixture filings or other similar security agreements and documents with respect to the Trading Bay Unit and Trading Bay Field as Union may reasonably request.

(8)    Union shall be Allowed an Administrative Expense against the PEAO estate in the amount of $22,216,797.24, which shall be treated as follows: (i) $100,000.00 shall be paid to Union in cash; (ii) the Debtors' estates, jointly and severally, shall release all claims of any kind and nature that they now have, or which may arise in the future, against Union (including any Avoidance Claims against Union); and (iii) the residue of the PEAO estate, after the payment in subparagraph (i) above, shall be available for distribution to other creditors of PEAO; and (iv) excepting the payment set forth in subparagraph (i) above and the transfer of the Lift Proceeds and the Tax Credits as contemplated herein, Union shall have no right to a distribution from the Debtors' Estates under the Plan (including without limitation any right to participate in distributions from the proceeds of Avoidance Claims) on account of any claim in favor of Union whatsoever, whether arising prepetition or postpetition, and whether a secured claim, priority claim, or unsecured claim.

(9)	The State shall be Allowed (i) an Administrative Claim against PEAO in the amount of $301,140.35 for postpetition 2009 property taxes, including penalties and interest, which PEAO has fully paid and satisfied; (ii) an Allowed Tax Claim against PEAO in the amount of $69,613.44 for prepetition 2009 property taxes, including penalties and interest through December 15, 2010, which PEAO shall pay within fourteen (14) days following the Effective Date; and (iii) an Allowed Administrative Expense against PEAO in the amount of $4,047.70 for the use of easements on the King Salmon platform pipelines during the period March 9, 2009 through September 2, 2009, which PEAO shall pay within fourteen (14) days following the Effective Date.

(10)	Except as expressly set forth in the Plan, nothing in the Plan or any Plan document is intended to, or does, in any manner waive, limit, impair, or restrict any right of Union or the State or the ability of Union or the State to protect, preserve and enforce their respective rights, remedies, and interests against the Debtors (as opposed to the Debtors' Estates). Additionally, nothing in the Plan is intended to, or does, in any manner waive, limit, impair, or restrict any right of the State or Union or the ability of the State or Union to protect, preserve and enforce its rights, remedies and interests against any and all persons other than the Debtors.

(11)	In addition to the Claims of the State allowed in subparagraph (8) above and without determining the amount or priority of the State's remaining asserted Claims against the Debtors, the State shall be limited to distributions under the Plan as if it were the Holder of an Allowed General Unsecured Claim against PEAO in the notional amount of $40,000,000.00.

Any and all future claims of the State, whether against the Debtors or any other parties, are fully preserved without any cap or other impairment of the State's rights whatsoever, provided that such claims shall not be entitled to distributions from the Estates under the Plan. The State expressly reserves all of its rights to assess and collect abandonment liabilities against all non-Debtor third parties, including any predecessors-in-interest to any of the Debtors. Further, there shall be no discharge, release or impairment of any abandonment, remediation, clean-up or other similar claims of the State or any other person whatsoever, provided that such claims shall not be entitled to distributions from the Estates under the Plan.

(12)     The Debtors and non-estate Debtors shall reasonably cooperate in assisting the State in the administration of assets located in Alaska that have been abandoned by the Debtors including by way of example, by delivering documents necessary to formalize the legal surrender or transfer and assignment of the Debtors' oil and gas leases with the State. For so long as Union or any of its affiliates remains the operator under the operating agreement for the Trading Bay Unit, the State agrees to provide notice to Union of any request made by the State that the Debtors transfer their interests in any abandoned oil and gas leases.

## J.     I. Corporate Action/Dissolution

On the Effective Date, the matters under the Plan involving or requiring corporate or limited liability company action of the Debtors, including but not limited to, actions requiring a vote or other approval of the board of directors or, shareholders or, managers or members of the Debtors or the execution of all any documentation incident to or in furtherance of the Plan,

shall be deemed to have been authorized by the Confirmation Order and to have occurred and be in effect from and after the Effective Date without any further action by the Bankruptcy Court or the officers ~~and~~, directors, managers or members of the Debtors.

On the Effective Date, all then incumbent officers and directors ~~of the Debtors~~ shall be deemed to have been removed ~~from~~as of such ~~positions and~~date. On the Effective Date, the Debtors' charters shall be ~~deemed~~ amended to ~~prohibit (1)~~include a provision prohibiting the issuance of nonvoting equity securities, ~~or (2) the existence of securities possessing an inappropriate distribution of voting power, all as more specifically required and described in~~ and such other provisions as may be required pursuant to section 1123(a)(6) of the Bankruptcy Code. The Debtors may prepare, execute and/or file with the Delaware Secretary of State and other state governmental authorities having jurisdiction over the Liquidating Debtors such amendments of their respective charters as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate such removals, appointments, and amendment.

~~Upon entry of a final decree, the Liquidating Debtors shall be deemed dissolved and wound up without any further action required by the Liquidating Debtors and the Debtors' shareholders or boards of directors.~~

Neither the occurrence of the Effective Date, nor the effectiveness of the Plan, nor any provision of applicable non-bankruptcy law requiring the dissolution of any business entity upon the cancellation or extinguishment of all equity interests or the termination of the sole remaining equity interest holder, shall cause a dissolution of any of the Liquidating Debtors, which shall be continued as corporations or limited liability companies, as the case may be,

immediately following the Effective Date. On the Effective Date, PERL and PEAH shall be deemed to have consented to the continuation of PEAH and PEAO, respectively, as limited liability companies until entry of the final decree in the Chapter 11 Cases. Upon the entry of a final decree, each of the Liquidating Debtors shall be dissolved without need for further action by any board of directors, shareholders, managers or members. In connection with the entry of the final decree, the Plan Representative is authorized to (a) execute, acknowledge and/or file with the Delaware Secretary of State, or any other state governmental authority having jurisdiction over the Liquidating Debtors, any certificate of dissolution for PERL as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of PERL to occur and (b) execute any election to dissolve or other instrument as may be necessary or appropriate under applicable non-bankruptcy law to cause the dissolution of PEAH and PEAO to occur. Notwithstanding anything to the contrary in the Plan, the Plan Representative shall not be liable as a result of any action taken in accordance with the provisions of the Plan, and after the entry of the final decree in the Chapter 11 Cases, the Plan Representative shall not have any responsibility for any of the Liquidating Debtors, including any further responsibility for the management, supervision, administration, liquidation, winding up, or cancellation of the charter of the Liquidating Debtors.

## K. J. Interests in Affiliates and Subsidiaries

As of the Effective Date, except as expressly provided in the Plan or by separate order of the Bankruptcy Court, the Liquidating Debtors shall retain any stock or interests they may hold in their subsidiaries or affiliates (other than the Debtors) and retain any rights to which

such stock or interests may be entitled under applicable law with respect to such shares or other interests. After the Effective Date, any Liquidating Debtor may sell, transfer, assign or otherwise dispose of such shares or interests as permitted by applicable law.

**L.** ~~K.~~ **Payment of Plan Expenses**

The Liquidating Debtors may pay all reasonable Plan Expenses without further notice to Creditors or Holders of Interests or approval of the Bankruptcy Court; provided, however, that an accounting of the Plan Expenses, including the fees and expenses of professionals, shall be provided to the Supervisory Board for review in a form acceptable to the Supervisory Board.

**M.** ~~L.~~ **Dissolution of the Committee**

As of the Effective Date, the Committee shall be dissolved, provided however, that notwithstanding such dissolution, the Committee's professionals may seek payment of any unpaid Administrative Expenses pursuant to the Plan.

## VII.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.** **Rejection of Executory Contracts and Unexpired Leases**

Except for any executory contracts or unexpired leases: (i) that previously were assumed or rejected by an order of the Bankruptcy Court, pursuant to section 365 of the Bankruptcy Code; (ii) as to which a motion for approval of the assumption or rejection of such contract or lease has been Filed and served prior to Confirmation; (iii) that constitute contracts of insurance in favor of, or that benefit, the Debtors or the Estates; or (iv) that were previously sold,

conveyed or otherwise assigned pursuant to the Beta Sale Order, each executory contract and

unexpired lease entered into by the Debtors prior to the Petition Date that has not previously

expired or terminated pursuant to it own terms shall be deemed rejected pursuant to section 365

of the Bankruptcy Code as of the Effective Date.  The Confirmation Order shall constitute an

Order of the Bankruptcy Court approving such rejections, pursuant to section 365 of the

Bankruptcy Code, as of the Effective Date.

**B.**     **Bar Date for Rejection Damages**

If the rejection of an executory contract or unexpired lease pursuant to the Plan or

otherwise gives rise to a Claim by the other party or parties to such contract or lease, such Claim

shall be forever barred and shall not be enforceable against the Debtors, the Liquidating Debtors

or their Estates unless a proof of Claim is Filed and served on the Debtors and their counsel

within 30 days after the earlier of (a) Confirmation or (b) service of a notice that the executory

contract or unexpired lease has been rejected.  All such Claims for which proofs of Claim are

required to be Filed, if Allowed, will be, and will be treated as, General Unsecured Claims,

subject to the provisions of the Plan.

**VIII.**

**DISTRIBUTIONS AND RELATED MATTERS**

**A.**     **Dates of Distribution**

The sections of the Plan on treatment of Administrative Expenses, Claims, and

Interests specify the times for distributions.  Whenever any payment or distribution to be made

under the Plan shall be due on a day other than a Business Day, such payment or distribution

shall instead be made, without interest, on the immediately following Business Day.

Distributions due on the Effective Date will be paid on such date or as soon as practicable

thereafter, provided that if other provisions of the Plan require the surrender of securities or

establish other conditions precedent to receiving a distribution, the distribution may be delayed

until such surrender occurs or conditions are satisfied.

If, under the terms of the Plan, the resolution of a particular Disputed Claim, e.g.,

it is Disallowed, entitles other Holders of Claims to a further distribution, either (a) the

Liquidating Debtors may make such further distribution as soon practicable after the resolution

of the Disputed Claim or (b) if the further distribution is determined in good faith, by the

Liquidating Debtors to be less than $100 for any Creditor, then, in order to afford the Liquidating

Debtors an opportunity to minimize costs and aggregate such distributions, the Liquidating

Debtors may make such further distribution any time prior to sixty (60) days after the Final

Resolution Date.

**B.      Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or

wire transfer from a domestic bank, at the option of the Liquidating Debtors, except that Cash

payments made to foreign Creditors may be made in such funds and by such means as are

necessary or customary in a particular foreign jurisdiction.

**C.      Rounding of Payments**

Whenever payment of a fraction of a cent would otherwise be called for, the

actual payment shall reflect a rounding down of such fraction to the nearest whole cent.  To the

extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as "Unclaimed Property" under the Plan.

## D.    Disputed Claims

Notwithstanding all references in the Plan to Claims that are Allowed, in undertaking the calculations concerning Allowed Claims or Allowed Administrative Expenses under the Plan, including the determination of the amount or number of distributions due to the Holders of Allowed Claims and Allowed Administrative Expenses, each Disputed Claim shall be treated as if it were an Allowed Claim or Allowed Administrative Expense, except that if the Bankruptcy Court estimates the likely portion of a Disputed Claim to be Allowed or authorized or otherwise determines the amount or number which would constitute a sufficient reserve for a Disputed Claim (which estimates and determinations may be requested by the Debtors), such amount or number as determined by the Bankruptcy Court shall be used as to such Claim.

Distributions of non-Cash consideration due in respect of a Disputed Claim shall be held and not made pending resolution of the Disputed Claim.

After an objection to a Disputed Claim is withdrawn, resolved by agreement, or determined by Final Order, the distributions due on account of any resulting Allowed Claim, Allowed Interest or Allowed Administrative Expense shall be made by the Liquidating Debtors. Such distribution shall be made within forty-five (45) days of the date that the Disputed Claim becomes an Allowed Claim or Allowed Administrative Expense. No interest shall be due to a

Holder of a Disputed Claim based on the delay attendant to determining the allowance of such Claim, Interest or Administrative Expense.

## E.    Undeliverable and Unclaimed Distributions

If any distribution under the Plan is returned to the Liquidating Debtors as undeliverable or the check or other similar instrument or distribution by the Liquidating Debtors remains uncashed or unclaimed, as applicable, for one hundred twenty (120) days, such Cash shall be deemed to be "Unclaimed Property." Upon property becoming Unclaimed Property, it immediately shall be revested in the Liquidating Debtors.

Pending becoming Unclaimed Property, such Cash will remain in the possession of the Liquidating Debtors, and, if the Liquidating Debtors are notified in writing of a new address for the relevant Holder, they shall cause distribution of the Cash within forty-five (45) days thereafter.

Once there becomes Unclaimed Property for a Holder, no subsequent distributions for such Holder which may otherwise be due under the Plan will accrue or be held for such Holder, provided that, if the applicable agent is notified in writing of such Holder's then-current address and status as a Holder under the Plan, thereafter, the Holder will become entitled to its share of distributions, if any, which first become due after such notification.

## F.    Compliance with Tax Requirements

The Liquidating Debtors shall comply with all withholding and reporting requirements imposed by federal, state or local taxing authorities in connection with making distributions pursuant to the Plan.

In connection with each distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Liquidating Debtors shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such distribution, or effect any such withholding and deposit all moneys so withheld to the extent required by law. With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Liquidating Debtors, the Liquidating Debtors may, in their sole option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received; provided, however, that the Liquidating Debtors shall not be obligated to liquidate any securities to perform such withholding.

G.     **Record Date in Respect to Distributions**

Except as set forth below, the record date and time for the purpose of determining which Persons are entitled to receive any and all distributions on account of any Allowed Claims or Interests, irrespective of the date of or number of distributions, shall be the same as the Record Date.

H.     **Reserves**

In making any distributions in respect of Claims under this Plan, the Liquidating Debtors shall reserve an appropriate and adequate amount of Cash on account of any unresolved Disputed Claims. The Liquidating Debtors shall make a corrective distribution following the successful resolution of any Disputed Claim on the next regularly scheduled distribution date.

For the avoidance of doubt, until the treatment of the Forest Subordinated Note is determined by Final Order or otherwise resolved by the Liquidating Debtors and Forest Oil under the Plan, the Liquidating Debtors shall reserve as if the Forest Subordinated Note were an Allowed General Unsecured Claim in Class 4, Class 5, and Class 6.

## IX.

## LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES

### A.    Litigation; Objections to Claims; Objection Deadline

Except as may be expressly provided otherwise in the Plan, the Liquidating Debtors shall be responsible for pursuing Retained Rights of Action, any objection to the allowance of any Claim, and the determination of Tax issues and liabilities.

As of the Effective Date, the Liquidating Debtors shall have exclusive authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims. Unless another date is established by the Bankruptcy Court *sua sponte* (which may so act without notice or hearing) or is established by other provisions of the Plan, any objection to a Claim shall be filed with the Bankruptcy Court and served on the Person holding such Claim within ninety (90) days after the Effective Date (the "Objection Deadline"), provided that the Liquidating Debtors may seek extension(s) thereof subject to Bankruptcy Court approval.

In addition to any other available remedies or procedures with respect to Tax issues or liabilities, the Liquidating Debtors, at any time, may utilize (and receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any Tax issue or liability relating to an act or event occurring prior to the Effective Date; or (2) any Tax liability arising prior to the

Effective Date. If the Liquidating Debtors utilize section 505(b) of the Bankruptcy Code: (1) the Bankruptcy Court shall determine the amount of the subject Tax liability in the event that the appropriate governmental entity timely determines a Tax to be due in excess of the amount indicated on the subject return; and (2) if the prerequisites are met for obtaining a discharge of Tax liability in accordance with section 505(b) of the Bankruptcy Code, the Liquidating Debtors shall be entitled to such discharge which shall apply to any and all Taxes relating to the period covered by such return.

**B.    Temporary or Permanent Resolution of Disputed Claims**

The Liquidating Debtors may request, at any time prior to the Effective Date or on and after the Effective Date, that the Bankruptcy Court estimate any contingent or unliquidated Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, irrespective of whether any party has previously objected to such Disputed Claim. The Bankruptcy Court will retain jurisdiction to estimate any contingent or unliquidated Disputed Claim at any time during litigation concerning any objection to the Disputed Claim. If the Bankruptcy Court estimates any contingent or unliquidated Disputed Claim, that estimated amount would constitute either the Allowed amount of such Disputed Claim or a maximum limitation on such Disputed Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Disputed Claim, the Liquidating Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Disputed Claim. In addition, the Liquidating Debtors may resolve or adjudicate any Disputed Claim in the manner in which the amount of such Claim, Interest or Administrative Expense and the rights of the

Holder of such Claim, Interest or Administrative Expense would have been resolved or adjudicated if the Chapter 11 Cases had not been commenced. All of the aforementioned objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

## C.     **Setoffs**

The Liquidating Debtors may, pursuant to sections 553 or 558 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim, Interest or Administrative Expense (before any distribution is made on account of such Claim, Interest or Administrative Expense), the Retained Rights of Action of any nature that the Liquidating Debtors may hold against the Holder of such Allowed Claim, Interest or Administrative Expense. Neither the failure to set off nor the allowance of any Claim, Interest or Administrative Expense hereunder will constitute a waiver or release by the Liquidating Debtors of any such Retained Rights of Action that the Liquidating Debtors may have against such Holder.

## D.     **Preservation of Retained Rights of Action**

In accordance with section 1123(b) of the Bankruptcy Code, the Liquidating Debtors, and their successors, any assigns hereunder and future assigns will retain and may exclusively enforce any Retained Rights of Action, subject to the oversight of the Supervisory Board, and the Confirmation Order shall be deemed a res judicata determination of such rights to retain and exclusively enforce such Retained Rights of Action. Absent such express waiver or release, the Liquidating Debtors or their successors or assigns may pursue Retained Rights of

Action, as appropriate, in accordance with the best interests of the Liquidating Debtors (or their successors or future assigns) and subject to the oversight of the Supervisory Board. The Retained Rights of Action may be asserted or prosecuted before or after solicitation of votes on the Plan or before or after the Effective Date.

Absent an express waiver or release set forth in the Plan, nothing in the Plan shall (or is intended to) prevent, estop or be deemed to preclude the Liquidating Debtors from utilizing, pursuing, prosecuting or otherwise acting upon all or any of their Retained Rights of Action and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such Retained Rights of Action upon or after Confirmation or Consummation.

# X.

## INJUNCTION AND EXCULPATION PROVISIONS

A.    **Injunctions**

1.    **Generally**

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions and stays provided for in the Chapter 11 Cases pursuant to sections 105 and 362 of the Bankruptcy Code or otherwise in effect on the Confirmation Date, shall remain in full force and effect until the Effective Date. From and after the Effective Date, all Persons are permanently

enjoined from, and restrained against, commencing or continuing in any court any suit, action or other proceeding, or otherwise asserting any claim or interest, (a) seeking to hold (i) the Debtors, the Liquidating Debtors or the Estates, or (ii) the property of the Liquidating Debtors or the Estates, liable for any Claim, obligation, right, interest, debt or liability that has been released pursuant to the Plan.

2.   **Injunction Related to Rights of Action and Terminated Claims, Administrative Expenses or Interests**

*Except as provided in the Plan or in the Confirmation Order, as of the Confirmation Date, all Entities that have held, currently hold or may hold a Claim, Administrative Expense, Interest or other debt or liability that is stayed, Impaired or terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions either (x) against the Debtors, the Liquidating Debtors, the Estates or property of the Liquidating Debtors or the Estates on account of all or such portion of any such Claims, Administrative Expenses, Interests, debts or liabilities that are stayed, Impaired or terminated or (y) against any Person with respect to any Right of Action or any objection to a Claim, Administrative Expense or Interest, which Right of Action or objection, under the Plan, is waived, released or exclusively retained by any of the Debtors: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due; and (eand (d) commencing*

*or continuing, in any manner or in any place, any action that does not comply with or is*
*inconsistent with the provisions of the Plan. To avoid any doubt, (i) except as otherwise*
*expressly noted in the Plan, nothing in the Plan or herein shall be construed or is intended to*
*discharge the Debtors from any debt for purposes of section 1141(d) of the Bankruptcy Code, (ii)*
*nothing in the Plan shall affect, enjoin, modify, release or waive any claims, rights, and actions*
*that a third party may have against a person other than the Debtors, the Liquidating Debtors or*
*the Estates; and (iii) nothing in the Plan shall affect or diminish any defense to a Retained Right*
*of Action or to any action brought by a third party against a Person other than the Debtors, or*
*the right of any person to assert a right of setoff, right of subrogation or recoupment of any kind.*
*Further, nothing in the Plan shall have any affect on any rights, Liens or Claims that any party*
*may have against assets that were abandoned by the Estates by Final Order of the Bankruptcy*
*Court.*

## B.   **Exculpation**

As of and subject to the occurrence of the Effective Date, for good and valuable
consideration, including the consideration provided under the Plan, each of the Debtors and their
Representatives, the Liquidating Debtors, the Plan Representative, the members of the
Committee (acting in such capacity), and the Committee's Representatives shall neither have nor
incur any liability to any Person or Entity for any act taken or omitted to be taken, in connection
with, or related to, the formulation, preparation, dissemination, implementation, administration,
Confirmation or Consummation of the Plan or any contract, instrument, waiver, release or other
agreement or document created or entered into, in connection with the Plan, or any other act

taken or omitted to be taken in connection with the Chapter 11 Cases up to and including the Effective Date; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any Person or Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct.

## XI.

## PENSION PLANS, OTHER RETIREE BENEFITS AND LABOR CONTRACTS

The Debtors are not obligated pursuant to section 1129(a)(13) of the Bankruptcy Code to pay any "retiree benefits" (as that term is defined in section 1114(a) of the Bankruptcy Code).

## XII.

## NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL

The Debtors do not charge any rates for purposes of section 1129(a)(6) that are regulated by any governmental regulatory commission with jurisdiction under applicable non-bankruptcy law.

## XIII.

## EXEMPTION FROM CERTAIN TRANSFER TAXES

Pursuant to section 1146(c) of the Bankruptcy Code, any transfers by the Debtors or the Liquidating Debtors pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar Tax or governmental assessment.

# XIV.

## RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS

**A.      Retention of Jurisdiction**

Notwithstanding the entry of the Confirmation Order or the occurrence of the

Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and any

of the proceedings related to the Chapter 11 Cases pursuant to section 1142 of the Bankruptcy

Code and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other

applicable law, including, without limitation, such jurisdiction as is necessary to ensure that the

purpose and intent of the Plan are carried out.  Without limiting the generality of the foregoing,

the Bankruptcy Court shall retain jurisdiction for the following purposes:

(1)      establish the priority or secured or unsecured status of, allow,
disallow, determine, liquidate, classify, or estimate any Claim,
Administrative Expense or Interest (including, without limitation and by
example only, determination of Tax issues or liabilities in accordance with
section 505 of the Bankruptcy Code), resolve any objections to the
allowance or priority of Claims, Administrative Expense or Interests, or
resolve any dispute as to the treatment necessary to reinstate a Claim,
Administrative Expense or Interest pursuant to the Plan;

(2)      grant or deny any applications for allowance of compensation or
reimbursement of expenses authorized pursuant to the Bankruptcy Code or
the Plan, for periods ending on or before the Effective Date;

(3)      resolve any matters related to the rejection of any executory
contract or unexpired lease to which any of the Debtors is a party or with
respect to which any of the Debtors may be liable, and to hear, determine
and, if necessary, liquidate any Claims or Administrative Expenses arising
therefrom;

(4)      ensure that distributions to Holders of Allowed Claims,
Administrative Expenses or Interests are made pursuant to the provisions
of the Plan, and to effectuate performance of the provisions of the Plan;

(5)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending before the Effective Date or that may be commenced thereafter as provided in the Plan;

(6)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Confirmation Order or in the Plan, including, without limitation, any stay orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(7)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order;

(8)     subject to the restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(9)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan or the Confirmation Order;

(10)     consider and act on the compromise and settlement of any Claim against, or Retained Right of Action of the Debtors;

(11)     decide or resolve any Retained Rights of Action under the Bankruptcy Code;

(12)    enter such orders as may be necessary or appropriate in connection with the recovery of the assets of the Debtors wherever located;

(13)    hear and determine any motions or contested matters involving Tax Claims or Taxes either arising prior (or for periods including times prior) to the Effective Date or relating to the administration of the Chapter 11 Cases, including, without limitation (i) matters involving federal, state and local Taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, (ii) matters concerning Tax refunds due for any period including times prior to the Effective Date, and (iii) any matters arising prior to the Effective Date affecting Tax attributes of the Debtors;

(14)    determine such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(15)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings issued or entered in connection with the Chapter 11 Cases or the Plan;

(16)    remand to state court any claim, cause of action, or proceeding involving the Debtors that was removed to federal court in whole or in part in reliance upon 28 U.S.C. § 1334;

(17)    determine any other matters that may arise in connection with or relate to the Beta Sale Order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Beta Sale Order, the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(18)    determine any other matter not inconsistent with the Bankruptcy Code; and

(19)    enter an order or final decree concluding the Chapter 11 Cases.


**B.    Miscellaneous Matters**

**1.    Headings**

The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

## 2.     Services by and Fees for Professionals and Certain Parties

Fees and expenses for the professionals retained by the Debtors or the Committee for services rendered and costs incurred after the Petition Date and prior to the Effective Date will be fixed by the Bankruptcy Court after notice and a hearing and such fees and expenses will be paid by the Liquidating Debtors (less deductions for any and all amounts thereof already paid to such Persons with respect thereto) within five (5) Business Days after a Final Order of the Bankruptcy Court approving such fees and expenses. Without limiting the Liquidating Debtors' obligations after the Effective Date under applicable law, from and after the Effective Date, the Liquidating Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional Persons thereafter incurred by the Liquidating Debtors related to: (a) the implementation or consummation of the Plan; (b) the prosecution of any objections to Claims, Administrative Expenses or Interests, or (c) litigation or other Retained Rights of Action reserved by any of the Debtors under the Plan.

## 3.     Bar Date for Administrative Expenses

Requests for payment of all Administrative Expenses, other than for those for which a Bar Date was previously set or for which a request and/or proof of claim has previously been filed, must be Filed and served on the Debtors and the United States Trustee no later than thirty (30) days after the Effective Date. The Debtors shall have until sixty (60) days after the Effective Date to bring an objection to a Timely Filed request for payment of an Administrative Expense. Nothing in the Plan shall prohibit the Debtors from paying Administrative Expenses in the ordinary course in accordance with applicable law during or after the Chapter 11 Cases, but after the Effective Date, the Liquidating Debtors' obligation to pay an Administrative Expense will depend upon the claimant's compliance with this section and such Administrative Expense being Allowed under the provisions of the Plan. Notwithstanding the foregoing provisions of this Section, but except as may be expressly provided in other sections of the Plan, professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and/or 1103 of the Bankruptcy Code for services rendered or expenses incurred after the Petition Date and prior to the Effective Date must file and serve, on all parties entitled to notice thereof, an application for final allowance of compensation and reimbursement of expenses in accordance with the various orders of the Bankruptcy Court establishing procedures for submission and review of such applications; provided that, if no last date is set in such procedures for filing such applications, they must be filed no later than sixty (60) days after the Effective Date and any objections to such applications must be made in accordance with applicable rules of the Bankruptcy Court.

4.    **Notices**

All notices and requests in connection with the Plan shall be in writing and shall
be hand delivered or sent by mail addressed to:

PACHULSKI STANG ZIEHL & JONES LLP
Attn:   Ira D. Kharasch, Esq.
        Maxim B. Litvak, Esq.
10100 Santa Monica Blvd., Suite 1100
Los Angeles, CA 90067
Telephone:  (310) 277-6910
Facsimile: (310) 201-0760

All notices and requests to any Person holding of record any Claim,

Administrative Expense or Interest shall be sent to such Person at the Person's last known

address or to the last known address of the Person's attorney of record.  Any such Person may

designate in writing any other address for purposes of this Section of the Plan, which designation

will be effective on receipt.

## 5.    Successors and Assigns

The rights, duties and obligations of any Person named or referred to in the Plan

shall be binding upon, and shall inure to the benefit of, the successors and assigns of such

Person.

## 6.    Severability of Plan Provisions

If, prior to Confirmation, any non-material term or provision of the Plan is held by

the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the

power to alter and interpret such term or provision to make it valid or enforceable to the

maximum extent practicable, consistent with the original purpose of the term or provision held to

be invalid, void or unenforceable, and such term or provision will then be applicable as altered or

interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to their terms.

7. **No Waiver**

Neither the failure of the Debtors to list a Claim in the Debtors' Schedules, the failure of the Debtors to object to any Claim or Interest for purposes of voting, the failure of the Debtors to object to a Claim, Administrative Expense or Interest prior to Confirmation or the Effective Date, the failure of the Debtors to assert a Retained Right of Action prior to Confirmation or the Effective Date, the absence of a proof of Claim having been filed with respect to a Claim, nor any action or inaction of the Debtors or any other party with respect to a Claim, Administrative Expense, Interest or Retained Right of Action other than a legally effective express waiver or release shall be deemed a waiver or release of the right of the Debtors or their successors, before or after solicitation of votes on the Plan or before or after Confirmation or the Effective Date to (a) object to or examine such Claim, Administrative Expense or Interest, in whole or in part or (b) retain and either assign or exclusively assert, pursue, prosecute, utilize, otherwise act or otherwise enforce any Rights of Action.

8. **Inconsistencies**

In the event the terms or provisions of the Plan are inconsistent with the terms and provisions of the exhibits to the Plan or documents executed in connection with the Plan, the terms of the Plan shall control.

### 9. U.S. Trustee Fees

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code shall be paid by the Debtors on or before the Effective Date. From and after the Effective Date, the Liquidating Debtors shall pay the fees assessed against the Liquidating Debtors' estates until such time as a particular case is closed, dismissed or converted. In addition, the Liquidating Debtors shall file post-confirmation quarterly reports in conformity with the U.S. Trustee guidelines until entry of an order closing or converting the cases.

### 10. Choice of Law

This Plan shall be governed by, and construed in accordance with, the laws of the State of Delaware applicable to contracts executed in and to be performed in that State, and, to the extent applicable, the Bankruptcy Code. Any disputes with or matters involving Union shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed in and to be performed in that State, and, to the extent applicable, the Bankruptcy Code, with the exception of any matter regarding the Tax Credits which shall be governed by Alaska law.

**XV.**

**CONDITIONS TO CONFIRMATION AND EFFECTIVENESS**

## A. Conditions Precedent to Plan Effectiveness

The Plan will not be consummated and the Effective Date will not occur unless and until (A) the Confirmation Order is in a form acceptable to the Debtors; and (B) the Confirmation Order shall be a Final Order. Either of the foregoing conditions may be waived by the Debtors (such waiver shall not require any notice, Bankruptcy Court order, or any further action).

## B. Effect of Non-Occurrence of Conditions to Effective Date

Each of the conditions to the Effective Date must be satisfied or duly waived, as provided above, within thirty (30) days after the Confirmation Date. If each condition to the Effective Date has not been satisfied or duly waived, as described above, within thirty (30) days after the Confirmation Date, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court. Notwithstanding the filing of such motion, however, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion. If the Confirmation Order is vacated for failure to satisfy a condition to the Effective Date, the Plan shall be deemed null and void in all respects.

## XVI.

## EFFECT OF CONFIRMATION

## A. Binding Effect of Confirmation

Confirmation will bind the Debtors, all Holders of Claims, Administrative

Expenses, or Interests and other parties in interest to the provisions of the Plan whether or not the

Claim, Administrative Expense, or Interest of such Holder is Impaired under the Plan and

whether or not the Holder of such Claim, Administrative Expense, or Interest has accepted the

Plan.

## B. Good Faith

Confirmation of the Plan shall constitute a finding that: (i) the Plan has been

proposed in good faith and in compliance with applicable provisions of the Bankruptcy Code;

and (ii) all Persons' solicitations of acceptances or rejections of the Plan and the offer, issuance,

sale, or purchase of a security offered or sold under the Plan have been in good faith and in

compliance with applicable provisions of the Bankruptcy Code.

## C. No Limitations on Effect of Confirmation

Nothing contained in the Plan will limit the effect of Confirmation as described in

section 1141 of the Bankruptcy Code.

## XVII.

## MODIFICATION OR WITHDRAWAL OF PLAN

## A. Modification of Plan

The Debtors may seek to amend or modify the Plan at any time prior to its Confirmation in the manner provided by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise order, and except as otherwise set forth herein, the Debtors reserve the right to amend the terms of the Plan or waive any conditions to its Confirmation, effectiveness or consummation if the Debtors determine that such amendments or waivers are necessary or desirable to confirm, effectuate or consummate the Plan.

After Confirmation of the Plan, but prior to the Effective Date, the Debtors may apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan. After the Effective Date, the Liquidating Debtors may apply to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

## B.      <u>Withdrawal of Plan</u>

The Debtors reserve the right to revoke and withdraw the Plan at any time prior to the Effective Date, in which case the Plan will be deemed to be null and void.

## XVIII.

## <u>CONFIRMATION REQUEST</u>

The Debtors request that the Bankruptcy Court confirm the Plan and that it do so, if applicable, pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the rejection of the Plan by any Impaired Class.

~~August 27,~~December _____, 2010

/s/ _____
Gerald A. Tywoniuk
Acting Chief Executive Officer and Chief Financial Officer of the Debtors and Debtors in Possession

PACHULSKI STANG ZIEHL & JONES LLP
Ira D. Kharasch (CA Bar No. 109084)
James E. O'Neill (DE Bar No. 4042)
Maxim B. Litvak (CA Bar No. 215852)
Scotta E. McFarland (DE Bar No. 4184)
919 North Market Street, Seventeenth Floor
Post Office Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Counsel to Debtors and Debtors in Possession

Document comparison by Workshare Professional on Friday, December 10, 2010
3:09:52 PM

| Input: | |
|---|---|
| Document 1 ID | pcdocs://docs_sf/73640/2 |
| Description | #73640 v2 - Pacific Energy - First Amended Plan of Liquidation |
| Document 2 ID | pcdocs://docs_sf/74101/9 |
| Description | #74101 v9 - Pacific Energy - First Amended Plan of Liquidation, As Modified |
| Rendering set | standard |

| Legend: |
|---|
| Insertion |
| ~~Deletion~~ |
| ~~Moved from~~ |
| Moved to |
| Style change |
| Format change |
| ~~Moved deletion~~ |

| Inserted cell | |
|---|---|
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 205 |
| Deletions | 210 |
| Moved from | 8 |
| Moved to | 8 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 431 |