IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| PACIFIC ENERGY RESOURCES LTD., *et al.*,[1] | ) Case No. 09-10785 (KJC) |
| | ) (Jointly Administered) |
| Debtor. | ) |
| | ) |

**Hearing Date: December 15, 2010 at 2:00 p.m. ET**

## FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION
## FOR PACIFIC ENERGY RESOURCES LTD., ET AL, AS MODIFIED

James E. O'Neill (DE Bar No. 4042)
Pachulski Stang Ziehl & Jones LLP
919 Market Street, 17th Floor | P.O. Box 8705
Wilmington, Delaware 19899-8705
Telephone: (302) 652-4100
Facsimile: (302) 652-4400

Ira D. Kharasch (CA Bar No. 109084)
Scotta E. McFarland (DE Bar No. 4184)
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Boulevard, Suite 1100
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

Maxim B. Litvak (CA Bar No. 215852)
Pachulski Stang Ziehl & Jones LLP
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 263-7000
Facsimile: (415) 263-7010

Counsel to Debtors and Debtors in Possession

Dated: December 15, 2010

---

[1] The Debtors in these cases, along with the last four digits of each of the Debtors' federal tax identification number, are: Pacific Energy Resources Ltd. (3442); Petrocal Acquisition Corp. (6249); Pacific Energy Alaska Holdings, LLC (tax I.D. # not available); Carneros Acquisition Corp. (5866); Pacific Energy Alaska Operating LLC (7021); Carneros Energy, Inc. (9487); and Gotland Oil, Inc. (5463). The mailing address for all of the Debtors is 111 W. Ocean Boulevard, Suite 1240, Long Beach, CA 90802.

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. DEFINED TERMS, RULES OF INTERPRETATION,  COMPUTATION OF TIME, AND GOVERNING LAW ................................................................................ 2

    A.    Rules of Interpretation, Computation of Time, and Governing Law ...................... 2

    B.    Defined Terms ................................................................................................. 3

III. TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS ...................... 21

    A.    Introduction ...................................................................................................... 21

    B.    Administrative Expenses ................................................................................. 21

    C.    Tax Claims ........................................................................................................ 22

IV. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS 23

    A.    Summary .......................................................................................................... 23

    B.    Classification and Treatment of Claims and Interests ......................................... 23

V. ACCEPTANCE OR REJECTION OF PLAN ......................................................... 33

    A.    Identification of Unimpaired Classes .................................................................. 33

    B.    Identification of Impaired Classes ..................................................................... 33

    C.    Classes Permitted and Not Permitted to Vote ..................................................... 34

    D.    Nonconsensual Confirmation ............................................................................ 34

    E.    Postpetition Interest ......................................................................................... 35

VI. MEANS FOR IMPLEMENTATION OF THE PLAN .............................................. 35

    A.    Continued Corporate Existence and Vesting of Assets of Liquidating Debtors ... 35

    B.    Dismissal of Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland ........................................................................................... 36

    C.    No Substantive Consolidation ............................................................................ 37

    D.    Retained Rights of Action .................................................................................. 37

    E.    Corporate Governance ...................................................................................... 38

    F.    Wind-Down ....................................................................................................... 41

    G.    Funding for the Plan ......................................................................................... 43

H.     Inter-Estate Settlement ................................................................................ 44

I.      Resolution with the Estates, Union, the Senior Lenders, the State and the Committee .................................................................................................... 44

J.      Resolution with Union and CIPL ................................................................ 50

K.     Corporate Action/Dissolution .................................................................... 51

L.      Interests in Affiliates and Subsidiaries ...................................................... 53

M.    Payment of Plan Expenses .......................................................................... 53

N.     Dissolution of the Committee ..................................................................... 53

VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 54

A.     Rejection of Executory Contracts and Unexpired Leases ........................... 54

B.     Bar Date for Rejection Damages ................................................................ 54

VIII. DISTRIBUTIONS AND RELATED MATTERS ................................................... 55

A.     Dates of Distribution .................................................................................. 55

B.     Cash Distributions ...................................................................................... 56

C.     Rounding of Payments ................................................................................ 56

D.     Disputed Claims ......................................................................................... 56

E.     Undeliverable and Unclaimed Distributions .............................................. 57

F.      Compliance with Tax Requirements ........................................................... 58

G.     Record Date in Respect to Distributions ..................................................... 58

H.     Reserves ...................................................................................................... 59

IX. LITIGATION, OBJECTIONS TO CLAIMS, AND DETERMINATION OF TAXES ........ 59

A.     Litigation; Objections to Claims; Objection Deadline ............................... 59

B.     Temporary or Permanent Resolution of Disputed Claims .......................... 60

C.     Setoffs ........................................................................................................ 61

D.     Preservation of Retained Rights of Action ................................................. 62

X. INJUNCTION AND EXCULPATION PROVISIONS ............................................... 63

A.     Injunctions .................................................................................................. 63

B.     Exculpation ................................................................................................. 64

XI. PENSION PLANS, OTHER RETIREE BENEFITS AND LABOR CONTRACTS ............ 65

XII. NO REGULATED RATE CHANGE WITHOUT GOVERNMENT APPROVAL ............ 65

XIII. EXEMPTION FROM CERTAIN TRANSFER TAXES.................................................... 66

XIV. RETENTION OF JURISDICTION AND MISCELLANEOUS MATTERS ..................... 66

    A.    Retention of Jurisdiction ......................................................................... 66

    B.    Miscellaneous Matters ........................................................................... 69

XV. CONDITIONS TO CONFIRMATION AND EFFECTIVENESS ....................................... 74

    A.    Conditions Precedent to Plan Effectiveness ......................................... 74

    B.    Effect of Non-Occurrence of Conditions to Effective Date.................... 74

XVI. EFFECT OF CONFIRMATION ..................................................................................... 75

    A.    Binding Effect of Confirmation .............................................................. 75

    B.    Good Faith .............................................................................................. 75

    C.    No Limitations on Effect of Confirmation.............................................. 75

XVII. MODIFICATION OR WITHDRAWAL OF PLAN.......................................................... 76

    A.    Modification of Plan ............................................................................... 76

    B.    Withdrawal of Plan ................................................................................. 76

XVIII. CONFIRMATION REQUEST ..................................................................................... 77

Debtors and debtors in possession Pacific Energy Resources Ltd., Petrocal Acquisition Corp., Pacific Energy Alaska Holdings, LLC, Carneros Acquisition Corp., Pacific Energy Alaska Operating LLC, Carneros Energy, Inc., and Gotland Oil, Inc. hereby propose the following First Amended Plan of Liquidation, as Modified, pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq.:

## I.

## INTRODUCTION

The Plan effectuates a distribution of the assets of the Estates to creditors in accordance with the priorities set forth in the Bankruptcy Code. Although the Plan recognizes that each of the Debtors is a separate and distinct corporate entity, the Plan encompasses a settlement amongst the Estates that results in the distribution of the Unsecured Creditor Fund, the Alaska Fund, if any, and the Wind-Down Fund, if any, and a waiver of Intercompany Claims. The Plan also resolves pending disputes and contested claims amongst the Estates, Union, the Senior Lenders, the State, and the Committee that minimizes potential claims that may be allowed against the Estates. The Plan provides that all holders of Allowed Administrative Expenses and Priority Claims against the Debtors' Estates shall be satisfied or paid in full. Holders of Secured Claims generally will retain their liens or receive their collateral under the Plan. All remaining assets will be distributed to Holders of Allowed General Unsecured Claims against PERL, PEAH and PEAO. Because the Estates of Petrocal, Carneros Acquisition, Carneros Energy and Gotland have no assets, the Chapter 11 Cases of these Debtors will be dismissed under the Plan. Depending on how the Court determines the issue, Holders of

Subordinated Debt Claims may receive no distributions under the Plan. All Interests in the Debtors shall be cancelled. Taken together, the Plan proposes to fairly and efficiently distribute the Debtors' assets in a manner that will allow these cases to be promptly resolved.

The Disclosure Statement, distributed with this Plan, contains a discussion of the Debtors' history, a summary of the Debtors' assets and liabilities, a summary of what Holders of Claims and Interests will receive under the Plan, a discussion of certain alternatives to the Plan, and a summary of the procedures and voting requirements necessary for Confirmation of the Plan. The Disclosure Statement is intended to provide Holders of Claims and Interests with information sufficient to enable such Holders to vote on the Plan. All Claim Holders entitled to vote on this Plan are encouraged to carefully read the Disclosure Statement and this Plan before voting to accept or reject this Plan. No solicitation materials, other than the Disclosure Statement and related materials transmitted herewith and approved by the Bankruptcy Court, have been authorized for use in soliciting acceptance or rejection of this Plan.

## II.

### DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

#### A.    Rules of Interpretation, Computation of Time, and Governing Law

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and

conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified, all references in the Plan to sections and exhibits are references to sections and exhibits of or to the Plan; (e) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form in the Plan that is not defined in the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**B.** <u>**Defined Terms**</u>

The following definitions shall apply to capitalized terms used in the Plan:

1.     "Administrative Expense" means an unpaid administrative expense of the kind described in sections 503(b) and 507(a)(2) of the Bankruptcy Code against any of the Debtors, including, without limitation, (i) the actual, necessary costs and expenses of preserving the Estates of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of the Chapter 11 Cases, (ii) compensation and reimbursement of expenses of professionals to the extent allowable under sections 327, 328, 330(a), 331, 503(b) and/or 1103 of the Bankruptcy Code, and (iii) all fees and charges assessed against the Estates under Chapter 123 of title 28, United States Code, 28 U.S.C. §§ 1911–1930, including the fees, if any, due to the United States Trustee.

2.     "Alaska Fund" means any funds remaining as a result of the carve-out provided under paragraph 35 of the Final DIP Order in favor of the Estates in the first $2,000,000 (in aggregate) from cash proceeds with respect to any cash proceeds received by the Debtors as a result of the Union Adversary.  For the avoidance of doubt, the Alaska Fund does not include any cash proceeds received by the Debtors as a result of the recovery of certain production payments from Aera Energy LLC ("Aera"), and Noble Energy, Inc. ("Noble"), which proceeds are encompassed in the Unsecured Creditor Fund.  The Debtors ultimately recovered approximately $400,000 out of the amounts owed to Aera and Noble, which leaves approximately $1,600,000 in carve-outs in favor of the Estates available as to potential proceeds out of the Union Adversary, which are resolved in accordance with Article VI(I) of the Plan.

3.    "Allowed" means

(a)    when used in respect of a Claim, Interest, Administrative Expense, such amount of the Claim, Interest, Administrative Expense or portion thereof which is (1) determined and allowed in whole or in part by a Final Order of the Bankruptcy Court, (2) expressly allowed under the Plan or any Plan Document, or (iii) allowed under a stipulation or settlement with the Debtors; and

(b)    if not "Allowed" in accordance with subsection (a) above, a Claim, Interest or Administrative Expense that has not been Disallowed and is not subject to a pending objection or appeal from an order allowing or disallowing the claim, also will be deemed "Allowed" as follows:

(1)    If no proof of Claim or Interest has been Timely Filed, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim which have been scheduled in the Debtors' Schedules as liquidated in amount and not disputed or contingent and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interests which have been listed by the Debtors' Lists of Equity Security Holders; or

(2)    If a proof of Claim or Interest is Timely Filed, (A) a Claim also is deemed "Allowed" in the amount and of the type of the Claim reflected in the proof(s) of Claim and (B) an Interest also is deemed "Allowed" in the number and of the type of the Interest reflected in the proof(s) of Interest, provided that (C) there is no objection to such Claim or Interest by the Objection Deadline; and

(3)    An Administrative Expense shall be deemed "Allowed" (A) if the Liquidating Debtors pays it, or (B) if it is for income taxes, is properly asserted by the appropriate taxing authority in accordance with applicable law (including, without limitation, Bankruptcy Code §505), and is not timely contested, provided that (C) there is no objection to such Claim by the Objection Deadline.

4.    "Avoidance Claims" means any Rights of Action for the recovery of avoidable transfers arising under Chapter 5 of the Bankruptcy Code or applicable state law.

5.    "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as amended, as set forth in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as now in effect or hereafter amended.

6.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware or such other court of competent jurisdiction as may be administering the Chapter 11 Cases or any part thereof.

7.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure promulgated pursuant to 28 U.S.C. § 2075, as now in effect or hereinafter amended, together with the local rules of the Bankruptcy Court.

8.    "Bar Date" means, when not otherwise specified, the date fixed by statute or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order of the Bankruptcy Court as the deadline for filing proofs of Claims, Interests or Administrative Expenses (whether or not each and every proof of Claim, Interest or Administrative Expenses is subject to such deadline).

9.    "Beta Sale Order" means the Order (I) Approving Sale of the Debtors' Beta Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Sections 363(b), (f) and (m) of the Bankruptcy Code, (II) Assuming and Assigning Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief, entered by the Bankruptcy Court in the Chapter 11 Cases on December 23, 2009.

10.　"Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

11.　"Business Interruption Insurance" means all rights and claims of PEAO to, in and from its applicable policies of property, casualty, business interruption, general liability, and any other available insurance or proceeds thereof arising out of, in connection with, or related to the eruption of Mt. Redoubt volcano in March 2009 and related events or the oil fields commonly know as the "Trading Bay Unit" and "Trading Bay Field".

12.　"Carneros Acquisition" means Carneros Acquisition Corp., a debtor in these Chapter 11 Cases.

13.　"Carneros Energy" means Carneros Energy, Inc., a debtor in these Chapter 11 Cases.

14.　"Cash" means currency of the United States of America and cash equivalents, including, but not limited to, bank deposits, immediately available or cleared checks, drafts, wire transfers and other similar forms of payment.

15.　"Chapter 11 Cases" means the cases commenced under chapter 11 of the Bankruptcy Code by each of the Debtors on the Petition Date and pending before the Bankruptcy Court. .

16.　"CIPL" means Cook Inlet Pipe Line Company, and any of its successors or assigns. .

17.　"CIPL Claim" means any Claim asserted against any of the Debtors by CIPL.

18.     "Claim" means any claim against the Debtors or any of them within the meaning of section 101(5) of the Bankruptcy Code which is not an Administrative Expense, including, without limitation, claims of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

19.     "Claims Agent" means Omni Management Group LLC, in its capacity as claims agent for the Debtors.

20.     "Class" means each category of Claims or Interests classified in Article IV of the Plan pursuant to section 1122 of the Bankruptcy Code.

21.     "Committee" means the Official Committee of Unsecured Creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

22.     "Confirmation" means the approval by the Bankruptcy Court of the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, as effectuated by the Confirmation Order.

23.     "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

24.     "Confirmation Hearing" means the date or dates established by the Bankruptcy Court for the hearing(s) on confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as it may be adjourned or continued from time to time.

25.     "Confirmation Order" means the order entered by the Bankruptcy Court confirming (approving) the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code, in form and substance acceptable to the Debtors.

26. "Consummation" means substantial consummation of the Plan as that term is used in 11 U.S.C. § 1127(b).

27. "Creditor" means any Person who is the Holder of a Claim or Administrative Expense against any of the Debtors.

28. "Debtors" means PERL, Petrocal, PEAH, Carneros Acquisition, PEAO, Carneros Energy, and Gotland, in their corporate capacities or other capacities and, as appropriate, in their capacities as debtors and debtors-in-possession under chapter 11 of the Bankruptcy Code in the Chapter 11 Cases and, when the context so requires as to PERL, PEAH and PEAO, in their capacities as the Liquidating Debtors.

29. "Disallowed" means, with respect to a Claim, Interest, Administrative Expense, or portion thereof, that it is determined that the Claim, Interest, Administrative Expense or portion thereof is not allowed under the Bankruptcy Code either by a Final Order, the Plan, any Plan Document or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

30. "Disclosure Statement" means the Disclosure Statement in Respect of Chapter 11 Plan of Liquidation for Pacific Energy Resources Ltd., et al., as may be amended, modified or supplemented from time to time, submitted pursuant to section 1125 of the Bankruptcy Code in connection with the solicitation of acceptances of the Plan.

31. "Disputed Claim" means (i) a Claim, Interest or Administrative Expense that is subject to a pending objection or for which the Bankruptcy Court's order allowing or

disallowing such Claim, Interest or Administrative Expense is on appeal; or (ii) until the Objection Deadline,

      a.      a Claim for which a corresponding Claim has not been listed in the Debtors' Schedules or for which the corresponding Claim is listed in the Debtors' Schedules with a differing amount (to the extent of such difference), with a differing classification, or as disputed, contingent, or unliquidated; and

      b.      a Claim that has not been allowed either by a Final Order, the Plan, any Plan Document or under a stipulation or settlement with any of the Debtors entered into after the Effective Date.

      32.    "Distributable Assets" means, except as otherwise noted below, any and all real or personal property of the Debtors of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, inventory, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Retained Rights of Action, and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever (whether liquidated or unliquidated, matured or unmatured, or fixed or contingent), including, without limitation, property of the Estates within the scope of section 541 of the Bankruptcy Code. Notwithstanding the foregoing, the term "Distributable Assets" does not include the Excluded Interests, the Lift Proceeds, the Tax Credits, the Royalty Overpayment or any assets that have been abandoned by the Estates pursuant to a Final Order of the Bankruptcy Court.

33.    "Effective Date" means the first Business Day after the Confirmation Date immediately following the first day upon which all of the conditions to the occurrence of the Effective Date have been satisfied or waived in accordance with the Plan.

34.    "Entity" and "Entities" mean an entity as defined in section 101(5) of the Bankruptcy Code or more than one thereof.

35.    "Estate(s)" means each estate created pursuant to section 541(a) of the Bankruptcy Code upon the commencement of each Chapter 11 Case.

36.    "Excluded Interests" means all of the right, title and interest of Rise Energy, Silver Point, and any of their predecessors or affiliates or any of the Debtors' estates in (i) the Business Interruption Insurance or any proceeds thereof, (ii) all payments or proceeds resulting from deposits made by potential purchasers of the Debtors' operations in Alaska or claims relating thereto, including without limitation, Catherwood Limited and its affiliated entities, and (iii) any assets or proceeds of assets related to any Alaska properties not otherwise bid or assumed to which Rise Energy, Silver Point, or their predecessors-in-interest or successors-in-interest, would otherwise be entitled if they were not bidders, provided, however, that the "Excluded Interests" shall not include the Lift Proceeds, the Tax Credits or the Royalty Overpayment as set forth in Article VI(I) of the Plan. For the avoidance of doubt, nothing herein is intended to or does affect Union's right to current and future revenue arising out of Trading Bay Unit and Trading Bay Field.

37.     "Fee Applications" mean applications of Professional Persons under sections 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Cases.

38.     "File" or "Filed" means filed of record and entered on the docket in the Chapter 11 Cases or, in the case of a proof of claim, delivered to the Claims Agent. .

39.     "Final DIP Order" means the Final Order Pursuant To 11 U.S.C. §§ 105, 361, 362, 363, 364, 365 and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Authorizing Use of Cash Collateral; (3) Granting Liens and Providing Superpriority Administrative Expense Status; (4) Granting Adequate Protection; and (5) Modifying Automatic Stay, entered by the Bankruptcy Court in the Chapter 11 Cases on June 24, 2009.

40.     "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which judgment, order, ruling or other decree has not been reversed, stayed, modified or amended and as to which (a) the time to appeal or petition for review, rehearing or certiorari has expired and as to which no appeal or petition for review, rehearing or certiorari is pending, or (b) any appeal or petition for review, rehearing or certiorari has been finally decided and no further appeal or petition for review, rehearing or certiorari can be taken or granted.

41.     "Final Resolution Date" means the date on which all Disputed Claims of Creditors shall have been resolved by Final Order or otherwise finally determined.

42.　"Forest Oil" means Forest Oil Corporation and any successor or assigns thereof.

43.　"Forest Subordinated Note" means that certain Senior Subordinated Accreting Note, dated as of August 24, 2007, executed by PERL in favor of Forest Oil.

44.　"General Unsecured Claim" means a Claim against any of the Debtors other than (a) an Administrative Expense, (b) a Tax Claim, (c) a Priority Non-Tax Claim, (d) a Secured Claim, (e) a Subordinated Debt Claim (upon any determination by Final Order that the Forest Subordinate Note should be treated in Class 9 or as otherwise resolved by the Liquidating Debtors and Forest Oil under the Plan), (f) an Intercompany Claim, (g) a Senior Lender Claim, or (h) a Union Claim.

45.　"Gotland" means Gotland Oil, Inc., a debtor in these Chapter 11 Cases.

46.　"Holder" means the beneficial owner of any Claim, Interest, or Administrative Expense.

47.　"Impaired" has the meaning set forth in 11 U.S.C. § 1124.

48.　"Intercompany Claim" means any Claim or Administrative Claim asserted against a Debtor by any other Debtor.

49.　"Interest" means an equity security of any of the Debtors within the meaning of section 101(16) of the Bankruptcy Code.

50.　"Inter-Estate Settlement" means the settlement and compromise amongst the Estate set forth in Article VI(H) of the Plan.

51.　"IRS" means the Internal Revenue Service.

52.  "Lien" means any charge against or interest in property to secure payment or performance of a Claim, debt, or obligation.

53.  "Lift Proceeds" means those proceeds in the amount of $12,272,757.61, plus accrued and accruing interest thereon, from the sale of crude oil or other petroleum products produced from the oil fields commonly known as Trading Bay Unit and Trading Bay Field. For the avoidance of doubt, the entirety of the Lift Proceeds are currently held in a segregated interest-bearing account by order of this Court dated April 28, 2009 (Docket No. 230).

54.  "Liquidating Debtors" means PERL, PEAH and PEAO from and after the Effective Date.

55.  "Miscellaneous Secured Claim" means any Secured Claim other than a Senior Lender Claim or a Union Claim.

56.  "Net Distributable Assets" means (a) in the case of PERL, the Unsecured Creditor Fund and the Wind-Down Fund, if any; (b) in the case of PEAO, the Alaska Fund, if any; and (c) in the case of each Liquidating Debtor, any and all other Distributable Assets, less (i) those Distributable Assets that will be retained by the Liquidating Debtors and used to fund Plan Expenses and the Wind-Down; (ii) Cash and/or other consideration reserved for, or to be distributed to, Creditors (other than Holders of Allowed General Unsecured Claims) under the Plan; and (iii) Retained Rights of Action, other than Excluded Interests, the Lift Proceeds, the Tax Credits, and the Royalty Overpayment, provided that such Retained Rights of Action shall be pursued by the Liquidating Debtors solely for the benefit of the Holders of Allowed General Unsecured Claims in accordance with the Plan and any proceeds realized from any such

Retained Rights of Action shall become Net Distributable Assets upon such realization and shall be distributed to the Holders of Allowed General Unsecured Claims in accordance with the Plan.

57.     "Objection Deadline" means the deadline to object to Claims specified in Article IX(A) of the Plan.

58.     "PEAH" means Pacific Energy Alaska Holdings, LLC, a debtor in these Chapter 11 Cases.

59.     "PEAO" means Pacific Energy Alaska Operating LLC, a debtor in these Chapter 11 Cases.

60.     "PERL" means Pacific Energy Resources Ltd., a debtor in these Chapter 11 Cases.

61.     "Person" means an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority, governmental unit or other entity of whatever nature.

62.     "Petition Date" means the date on which each of the Debtors filed their petitions for relief under chapter 11 of the Bankruptcy Code.

63.     "Petrocal" means Petrocal Acquisition Corp., a debtor in these Chapter 11 Cases.

64.     "Plan" means this First Amended Plan of Liquidation, as Modified, for the Debtors.

65.     "Plan Expenses" means the expenses incurred by the Liquidating Debtors following the Effective Date (including the reasonable fees and costs of attorneys and other

professionals), for the purpose of (i) prosecuting litigation preserved under the Plan, (ii) resolving Disputed Claims, if any, and effectuating distributions to Creditors under the Plan, (iii) otherwise implementing the Plan and closing the Chapter 11 Cases, or (iv) undertaking any other matter relating to the Plan.

66. "Plan Representative" means the individual selected to fill this role in accordance with Article VI(E) of the Plan.

67. "Priority Non-Tax Claim" means any Claim, other than a Tax Claim, to the extent entitled to priority under section 507(a) of the Bankruptcy Code.

68. "Pro Rata" means proportionately, so that with respect to any distribution, the ratio of (a) (i) the amount of property to be actually or theoretically distributed on account of a particular Claim or particular group of Claims to (ii) the amount of such particular Claim or group of Claims, is the same as the ratio of (b) (i) the amount of property to be actually or theoretically distributed on account of all Claims or groups of Claims sharing in such distribution to (ii) the amount of all Claims or groups of Claims sharing in such distribution.

69. "Professional Person" shall mean Persons retained or to be compensated pursuant to sections 326, 327, 328, 330, 503(b), and/or 1103 of the Bankruptcy Code.

70. "Record Date" means the Effective Date.

71. "Remaining Claim" shall have the meaning set forth in the Beta Sale Order.

72. "Representative" means, as to the referenced Person, such Person's present and former officers, directors, shareholders, trustees, partners and partnerships, members,

agents, employees, representatives, attorneys, accountants, professionals, and successors or assigns, in each case solely in their capacity as such.

73. "Retained Rights of Action" means all Rights of Action belonging to the Estates as of the Effective Date other than those Rights of Action specifically released under the Plan. For the avoidance of doubt, Retained Rights of Action include, without limitation, (i) any and all of the Estates' Rights of Action, including Avoidance Claims; and (ii) the right to object to Claims. Notwithstanding this definition, (i) any proceeds of Retained Rights of Action constituting Excluded Interests shall be paid to the Holders of Senior Lender Claims consistent with the Beta Sale Order and the Plan, and (ii) the Tax Credits shall be made available to Union and Chevron U.S.A. Inc. as set forth in Article VI(I) of the Plan. For the avoidance of doubt, the Liquidating Debtors shall succeed to any and all Avoidance Claims that previously had been investigated and/or pursued by the Committee.

74. "Rights of Action" means any and all claims, demands, rights, defenses, actions, causes of action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers and privileges of any kind or character whatsoever, known or unknown, suspected or unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, held by any Person against any other Person.

75. "Rise Energy" means Rise Energy Partners, LP and any of its affiliates or subsidiaries that participated in the sale authorized by the Beta Sale Order.

76.    "Royalty Overpayment" means certain proceeds of oil production paid by PEAO in error to the State as royalties calculated by PEAO to be in the amount of $2,869,468.16 as of the Petition Date.

77.    "Schedules" means the schedules of assets and liabilities filed by the Debtors with the Bankruptcy Court pursuant to Bankruptcy Rule 1007, as they have been or may be amended from time to time.

78.    "Senior Lender Claim" means any Claim arising out of, or relating to, the "Remaining Claim" in the amount of $75,000,000 as defined in the Beta Sale Order.

79.    "Senior Lender" means a Holder of a Senior Lender Claim.

80.    "Secured Claim" means any Claim of any Person that is secured by a Lien on property in which any of the Debtors or its Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the value, as determined by the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code, of any interest of the claimant in the property of the Estate securing such Claim or subject to setoff.

81.    "Silver Point" means Silver Point Capital, L.P. and any of its affiliates or subsidiaries that participated in any financing of any of the Debtors at any time and/or participated in the sale authorized by the Beta Sale Order.

82.    "State" means the State of Alaska, on behalf of its various agencies.

83.    "State Claim" means any Claim asserted against any of the Debtors by the State.

84. "Subordinated Debt Claim" means any Claim asserted against any of the Debtors by Forest Oil relating to, or arising from, the Forest Subordinated Note.

85. "Supervisory Board" means the individuals selected to fill this role in accordance with Article VI(E) of the Plan and identified at or before the Confirmation Hearing.

86. "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on or with respect to such assessments.

87. "Tax Claim" means any Claim for any Tax to the extent that it is entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code.

88. "Tax Credits" means State of Alaska production tax credits allowed under AS § 43.55.023 to PEAO for the tax years 2007-2009 (amount currently asserted by PEAO is $5,666,807) relating to any Alaska property held by PEAO during 2007-2009 as finally determined by the State following consideration of PEAO's applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about March 31, 2010 and June 8, 2010.

89. "Timely Filed" means, with respect to a Claim, Interest or Administrative Expense, that a proof of such Claim or Interest or request for payment of such Administrative Expense was filed with the Bankruptcy Court or the Claims Agent, as applicable, within such applicable period of time fixed by the Plan, statute, or pursuant to both Bankruptcy Rule 3003(c)(3) and a Final Order (e.g., the Bar Date).

90. "Unclaimed Property" means all Cash deemed to be "Unclaimed Property" pursuant to Article VIII(E) of the Plan.

91. "Unimpaired" means, with respect to a Class of Claims or Interests, not Impaired.

92. "Union" means Union Oil Company of California, and any of its successors or assigns.

93. "Union Adversary" means the adversary proceeding relating to the Lift Proceeds commenced by Union against PEAO and Silver Point (Adversary Case No. 09-51066).

94. "Union Claim" means any Claim asserted against any of the Debtors by Union.

95. "Unsecured Creditor Fund" means the sum of $1,400,000 set aside for the sole and exclusive benefit of, and ultimate distribution to, Holders of Allowed General Unsecured Claims under the Beta Sale Order.

96. "Wind-Down" means the wind-down of the Debtors' affairs in accordance with the Plan, as further described in Article VI(F) of the Plan.

97. "Wind-Down Fund" means any remaining monies funded under the Beta Sale Order for the purpose of satisfying potential wind-down costs of the Estates.

# III.

## TREATMENT OF ADMINISTRATIVE EXPENSES AND TAX CLAIMS

### A.    Introduction

As required by the Bankruptcy Code, Administrative Expenses and Tax Claims are not placed into voting Classes.  Instead, they are left unclassified, are not considered Impaired, do not vote on the Plan, and receive treatment specified by statute or agreement of the parties.  All postpetition payments by or on behalf of any of the Debtors in respect of an Administrative Expense or Tax Claim shall either reduce the Allowed amount thereof or reduce the amount to be paid under the Plan in respect of any Allowed amount thereof; and, unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Liquidating Debtors shall, in their sole and absolute discretion, determine which such method of application to employ.

### B.    Administrative Expenses

Under the Plan, on the Effective Date, each Holder of an Allowed Administrative Expense against any of the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Administrative Expense, Cash from the Liquidating Debtors equal to the full amount of such Allowed Administrative Expense, unless such Holder and the Liquidating Debtors have mutually agreed in writing to other terms, or an order of the Bankruptcy Court provides for other terms; provided, however, that (a) requests for payment of all Administrative Expenses must be Filed and served as described in Article XIV(B)(3) of the Plan, and (b) certain different and additional requirements shall apply to the Administrative Expenses of professionals and certain other Persons requesting compensation or reimbursement

of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code as set forth in Article XIV(B)(3) and (4) of the Plan.

## C.   Tax Claims

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Tax Claims are not to be classified and thus Holders of Tax Claims are not entitled to vote to accept or reject the Plan.

As required by section 1129(a)(9) of the Bankruptcy Code, on or as soon as practicable after the Effective Date, each Holder of an Allowed Tax Claim against any of the Debtors will receive, in full satisfaction, settlement, release, and extinguishment of such Allowed Tax Claim, Cash from the Liquidating Debtors equal to the portion of the Allowed Tax Claim due and payable on or prior to the Effective Date according to applicable non-bankruptcy law. Any Allowed Tax Claim (or portion thereof) against any of the Debtors not yet due and payable as of the Effective Date will be paid by the Liquidating Debtors no later than when due and payable under applicable non-bankruptcy law without regard to the commencement of the Chapter 11 Cases; provided that (1) any default prior to the Effective Date with respect to Tax Claims against any of the Debtors shall be deemed cured and (2) upon request of the Liquidating Debtors, the Bankruptcy Court shall determine the amount of any Disputed Claim for, or issues pertaining to, Tax Claims. Any Holder of a Tax Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed upon in writing.

## IV.

## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

A.    **Summary**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes only to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied prior to the Effective Date.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for the classification of ten (10) Classes of Claims and/or Interests.  Administrative Expenses and Tax Claims have not been classified and are excluded from the following Classes in accordance with section 1123(a)(1) of the Bankruptcy Code.

B.    **Classification and Treatment of Claims and Interests**

The treatment of each Class of Claims and/or Interests is set forth below.  Unless the Bankruptcy Court has specified otherwise prior to Confirmation, the Liquidating Debtors shall, in their sole and absolute discretion, determine whether a postpetition payment by or on behalf of any of the Debtors in respect of a Claim either (x) shall reduce the Allowed amount