thereof or (y) shall reduce the amount to be paid under the Plan in respect of any Allowed amount thereof.

1.      **Class 1 – Priority Non-Tax Claims**

a.      <u>Classification</u>:  Class 1 consists of all Priority Non-Tax Claims against any of the Debtors.

b.      <u>Treatment</u>:  At the election of the Liquidating Debtors, the Holder of each Priority Non-Tax Claim against any of the Debtors shall receive, in full satisfaction, settlement, release, and extinguishment of such Priority Non-Tax Claim, a Cash payment from the Liquidating Debtors equal to the Allowed amount of such Claim (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim; or (b) as otherwise agreed by the Holders of such Claims and the Liquidating Debtors, as the case may be.  Any Holder of a Priority Non-Tax Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed upon in writing.

c.      <u>Impairment/Voting</u>:  Class 1 is Unimpaired.  Class 1 therefore is conclusively presumed to have accepted the Plan and Holders of Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.      **Class 2 – Miscellaneous Secured Claims**

a.      <u>Classification</u>:  Class 2 consists of all Miscellaneous Secured Claims (if any such Claims exist).

b.    Treatment:  On or as soon as practicable after the Effective Date, each Holder of an Allowed Miscellaneous Secured Claim shall, on account of such Claim, at the election of the Liquidating Debtors, and as the sole distribution or dividend by the Debtors or their Estates under this Plan on account of such Miscellaneous Secured Claim, either:  (i) be paid by the Liquidating Debtors in Cash in full, (ii) have surrendered to such Holder, without representation or warranty, the collateral securing its Claim, (iii) notwithstanding any contractual provision or applicable law that entitles the Holder of such Miscellaneous Secured Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (A) be paid by the Liquidating Debtors a cure of any such default that occurred prior to the Effective Date, other than a default of a kind specified in section 365(b)(2) of this title, (B) have reinstated the maturity of such Miscellaneous Secured Claim as such maturity existed before such default, (C) be compensated by the Liquidating Debtors for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, and (D) otherwise not have altered the legal, equitable, or contractual rights to which such Miscellaneous Secured Claim entitles the Holder of such Claim, or (iv) have left unaltered the legal, equitable, and contractual rights to which such Claim entitles the Holder of such Claim.  In the case of option (ii) or (iii), in the event that any such Miscellaneous Secured Claim is not completely satisfied by such distribution, any deficiency against the applicable Debtors will be treated as a General Unsecured Claim.  Any Holder of an Miscellaneous Secured Claim may agree to accept different treatment as to which the Liquidating Debtors and such Holder have agreed upon in writing.

c.    Impairment/Voting:  Class 2 is Unimpaired.  Class 2 is therefore conclusively presumed to have accepted the Plan, and Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

**3.    Class 3 – Senior Lender Claims**

a.    Classification:  Class 3 consists of all Senior Lender Claims against any of the Debtors.

b.    Treatment:  From and after the Effective Date, each Holder of an Allowed Senior Lender Claim against any of the Debtors shall receive, as the sole distribution or dividend by the Debtors or their Estates under this Plan on account of such Senior Lender Claim, any and all rights, Claims and Liens in the Excluded Interests and the Remaining Claim referenced in the Beta Sale Order to which such Holder of an Allowed Senior Lender Claim is entitled pursuant to the terms and provisions of the Beta Sale Order.  For purposes of the Plan, the value of the "Excluded Interests" shall be deemed to equal $35,000,000.  The sum of $40,000,000 shall be deemed allowed and treated as the Remaining Claim referenced in the Beta Sale Order.  In accordance with the terms and provisions of the Beta Sale Order, distributions on account of the Remaining Claim were assigned to the Estates solely for the benefit of Holders of Allowed General Unsecured Claims (specifically excluding Forest Oil), provided that Forest Oil reserves the right to dispute the effect of the Beta Sale Order on the treatment of its claim under the Forest Subordinated Note, and the determination of the treatment of the Forest Subordinated Note shall be subject to the Final Order as provided in Article IV(B)(9) of this Plan.  Subject to the last sentence of this paragraph, the Holders of Allowed Senior Lender Claims shall be

entitled to the value of any proceeds of the Excluded Interests pursuant to the terms and conditions of the Beta Sale Order. Unless otherwise provided by an order of the Bankruptcy Court, title to the Excluded Interests shall be vested in the Liquidating Debtors from and after the Effective Date, provided that the Liquidating Debtors shall have no obligations or responsibilities whatsoever with respect to the Excluded Interests except as may be agreed by the Liquidating Debtors, by and through the Plan Representative, and the Holders of Allowed Senior Lender Claims, which Holders shall be required to fund, compensate and reimburse, and to otherwise indemnify and hold harmless, the Liquidating Debtors for any costs, expenses, fees or other liabilities that may be incurred by the Liquidating Debtors at the direction of the Holders of Allowed Senior Lender Claims with respect to the Excluded Interests from and after the Effective Date, which in such case the Liquidating Debtors shall act reasonably and in good faith to support recovery of the Excluded Interests. Further, the Liquidating Debtors shall have the right, only upon the consent of all Holders of Allowed Senior Lender Claims, but after consultation with the Holders of Allowed Senior Lender Claims, to transfer title to the Excluded Interests, or some portion thereof, to the Holders of Allowed Senior Secured Claims at any time from and after the Effective Date without notice to Creditors or approval of the Bankruptcy Court, provided, however, that any transfer of title in the Excluded Interests shall not prejudice a Holder of an Allowed Senior Lender Claim's ability to collect proceeds of the Excluded Interests.

        c.      <u>Impairment/Voting</u>: Class 3 is Impaired. Holders of Class 3 are therefore entitled to vote to accept or reject the Plan.

4. **Class 4 – General Unsecured Claims Against PERL**

    a.    Classification:  Class 4 consists of all General Unsecured Claims against PERL.

    b.    Treatment:  On or as soon as practicable after the Effective Date or such other date as the Net Distributable Assets of PERL become available for distribution, each Holder of an Allowed General Unsecured Claim against PERL shall receive, as the sole distribution or dividend by PERL or its Estate under this Plan on account of such General Unsecured Claim, a Pro Rata share (calculated as a percentage of Allowed General Unsecured Claims against PERL) of the Net Distributable Assets of PERL.  Further, Holders of Allowed General Unsecured Claims against PERL shall have the benefit of any subordination rights or carve-outs assigned to such Holders by the Holders of the Senior Lender Claims under the Beta Sale Order, the Final DIP Order, this Plan, or any other order of the Bankruptcy Court.

    c.    Impairment/Voting:  Class 4 is Impaired.  Holders of Class 4 are therefore entitled to vote to accept or reject the Plan.

5. **Class 5 – General Unsecured Claims Against PEAH**

    a.    Classification:  Class 5 consists of all General Unsecured Claims against PEAH.

    b.    Treatment:  On or as soon as practicable after the Effective Date or such other date as the Net Distributable Assets of PEAH become available for distribution, each Holder of an Allowed General Unsecured Claim against PEAH shall receive, as the sole distribution or dividend by PEAH or its Estate under this Plan on account of such General

Unsecured Claim, a Pro Rata share (calculated as a percentage of Allowed General Unsecured Claims against PEAH) of the Net Distributable Assets of PEAH, if any. Further, Holders of Allowed General Unsecured Claims against PEAH shall have the benefit of any subordination rights or carve-outs assigned to such Holders by the Holders of the Senior Lender Claims under the Beta Sale Order, the Final DIP Order, this Plan, or any other order of the Bankruptcy Court.

      c.    <u>Impairment/Voting</u>: Class 5 is Impaired. Holders of Class 5 are therefore entitled to vote to accept or reject the Plan.

      6.    **<u>Class 6 – General Unsecured Claims Against PEAO</u>**

      a.    <u>Classification</u>: Class 6 consists of all General Unsecured Claims against PEAO.

      b.    <u>Treatment</u>: On or as soon as practicable after the Effective Date or such other date as the Net Distributable Assets of PEAO become available for distribution, each Holder of an Allowed General Unsecured Claim against PEAO shall receive, as the sole distribution or dividend by PEAO or its Estate under this Plan on account of such General Unsecured Claim, a Pro Rata share (calculated as a percentage of Allowed General Unsecured Claims against PEAO) of the Net Distributable Assets of PEAO, if any. Further, Holders of Allowed General Unsecured Claims against PEAO shall have the benefit of any subordination rights or carve-outs assigned to such Holders by the Holders of the Senior Lender Claims under the Beta Sale Order, the Final DIP Order, this Plan, or any other order of the Bankruptcy Court.

      c.    <u>Impairment/Voting</u>: Class 6 is Impaired. Holders of Class 6 are therefore entitled to vote to accept or reject the Plan.

7. **Class 7 – General Unsecured Claims Against Petrocal, Carneros Acquisition, Carneros Energy and Gotland**

a. <u>Classification</u>: Class 7 consists of all General Unsecured Claims against Petrocal, Carneros Acquisition, Carneros Energy and Gotland.

b. <u>Treatment</u>: On the Effective Date, the Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland shall be deemed dismissed because such Debtors have no assets, and Holders of Allowed General Unsecured Claims against such Debtors, if any, shall receive no distributions or recoveries on account of such Claims.

c. <u>Impairment/Voting</u>: Class 7 is Impaired. Because Holders of Claims in Class 7 receive no recovery on account of such Claims under the Plan, they are conclusively presumed to reject the Plan.

8. **Class 8 – Intercompany Claims**

a. <u>Classification</u>: Class 8 consists of all Intercompany Claims against any of the Debtors.

b. <u>Treatment</u>: Holders of Intercompany Claims shall receive no distributions or recoveries on account of such Claims and such Claims shall be extinguished on the Effective Date. However, Holders of the Intercompany Claims shall benefit from the Inter-Estate Settlement under the Plan.

c. <u>Impairment/Voting</u>: Class 8 is Impaired. Because Holders of Claims in Class 8 are the proponents of the Plan, they have agreed to accept the Plan.

9. **Class 9 – Subordinated Debt Claims**

a. <u>Classification</u>: Class 9 consists of all Subordinated Debt Claims.

b.      Treatment: To the extent that a Final Order is entered to require such treatment, Holders of Subordinated Debt Claims shall receive no distributions or recoveries on account of such Claims based upon the terms of the Forest Subordinated Note and the Beta Sale Order, or any other basis under law for subordination.  In the alternative, if a Final Order is entered declining to subordinate the Subordinated Debt Claims to other General Unsecured Claims, such Claims shall be treated as General Unsecured Claims in Class 4, Class 5 and Class 6 under the Plan in the amount owing under the Forest Subordinated Note as of the Petition Date, subject to any and all rights of the Debtors, the Liquidating Debtors or their Estates to object to or contest such General Unsecured Claims on any basis not addressed by such Final Order (without limiting Forest Oil's right to assert any and all defenses to any such objection or contest).  Pending the entry of a Final Order, nothing herein shall preclude the Liquidating Debtors and the Holders of the Subordinated Debt Claims from resolving the treatment of the Subordinated Debt Claims in accordance with applicable provisions of the Plan, including without limitation, Article VI(D) of the Plan.  The Liquidating Debtors and Forest agree and acknowledge that this Plan itself provides alternative treatments for the Forest Subordinated Note depending on whether the Bankruptcy Court by Final Order determines that such Forest Subordinated Note should be treated either (i) in Class 4, Class 5 and Class 6 (as asserted by Forest), subject to the Debtors, the Liquidating Debtors' and the Estates' right to object to or contest such Claims on any basis not addressed by such Final Order (without limiting Forest Oil's right to assert any and all defenses to any such objection or contest), or (ii) in Class 9 (as asserted by the Liquidating Debtors).  Therefore, the Liquidating Debtors acknowledge and agree

that Forest Oil shall have the right to argue and assert that the Subordinated Debt Claims should be treated as General Unsecured Claims unless and until a Final Order is entered that provides for such Claim to be treated in Class 9, or a resolution is otherwise reached amongst the Liquidating Debtors and Forest in accordance with the Plan. The Liquidating Debtors and Forest Oil also agree and acknowledge that because the Plan itself is structured to address alternative treatments of the Forest Subordinated Note, any appeal by Forest Oil or by the Liquidating Debtors in respect of the treatment of the Forest Subordinated Note, as may be determined by separate order of the Bankruptcy Court, shall not be mooted because of confirmation or effectiveness of the Plan. Forest Oil acknowledges and agrees that the issue of whether the Forest Subordinated Note will be treated in Class 9 under the Plan may be raised through the filing of a motion and/or claim objection with the Bankruptcy Court by the Liquidating Debtors in their discretion, and without the need for the commencement of an adversary proceeding.

        c.     <u>Impairment/Voting</u>: Class 9 is Impaired. Because Holders of Claims in Class 9 may receive no recovery on account of such Claims under the Plan, they are conclusively presumed to reject the Plan.

    **10.**    **<u>Class 10 – Interests in the Debtors</u>**

        a.     <u>Classification</u>: Class 10 consists of all Interests in the Debtors.

        b.     <u>Treatment</u>: Holders of Interests in the Debtors shall receive no distributions or recoveries on account of such Interests and such Interests shall be extinguished on the Effective Date.

c.    Impairment/Voting:  Class 10 is Impaired.  Because Holders of Interests in Class 10 receive no recovery on account of such Interests under the Plan, they are conclusively presumed to reject the Plan.

## V.

## ACCEPTANCE OR REJECTION OF PLAN

**A.    Identification of Unimpaired Classes**

The following Classes are not Impaired (i.e., are Unimpaired) under the Plan:

1.    Class 1  – Priority Non-Tax Claims

2.    Class 2 – Miscellaneous Secured Claims

**B.    Identification of Impaired Classes**

The following Classes of Claims and Interests are Impaired under the Plan.

1.    Class 3 – Senior Lender Claims

2.    Class 4 – General Unsecured Claims against PERL

3.    Class 5 – General Unsecured Claims against PEAH

4.    Class 6 – General Unsecured Claims against PEAO

5.    Class 7 – General Unsecured Claims against Petrocal, Carneros Acquisition, Carneros Energy and Gotland

6.    Class 8– Intercompany Claims

7.    Class 9 – Subordinated Debt Claims

8.    Class 10 – Interests in the Debtors

## C.     Classes Permitted and Not Permitted to Vote

Classes 1 and 2 are Unimpaired.  Holders of Claims or Interests in such Classes are conclusively presumed pursuant to section 1126(f) of the Bankruptcy Code to have accepted the Plan and therefore shall not be entitled to vote to accept or reject the Plan.

Classes 3 through 10 are Impaired.  Holders of Claims and Interests in Classes 3 through 6 are permitted to vote to accept or reject the Plan.  Class 8 is not permitted to vote as this is a Class made up of the Debtors, which are the proponents of the Plan and have agreed to accept the treatment under the Plan.  Holders of Claims and Interests in Classes 7, 9 and 10 are conclusively presumed to reject the Plan.

An Impaired Class of Claims that votes shall have accepted the Plan if (a) the Holders (other than any Holder designated by the Bankruptcy Court based on their vote or its solicitation not being in good faith under Bankruptcy Code section 1126(e)) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under Bankruptcy Code section 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  An Impaired Class of Interests that votes shall have accepted the Plan if the Holders (other than any Holder designated under section 1126(e)) of at least two-thirds in amount of the Allowed Interests actually voting in such Class have voted to accept the Plan.

## D.     Nonconsensual Confirmation

In the event any Class of Claims or Interests votes to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan notwithstanding such rejection

pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the Holders of any Class of Claims or Interests.

**E.     Postpetition Interest**

Nothing in the Plan or the Disclosure Statement shall be deemed to entitle the Holder of a Claim to receive postpetition interest on account of such Claim.

# VI.

# MEANS FOR IMPLEMENTATION OF THE PLAN

**A.     Continued Corporate Existence and Vesting of Assets of Liquidating Debtors**

On and after the Effective Date, each of the Liquidating Debtors will continue to exist as a separate corporation or limited liability company (as the case may be). Such corporate or limited liability company existence shall be deemed to be continued notwithstanding any provision of applicable non-bankruptcy law triggering the dissolution of any business entity upon the cancellation or extinguishment of all its equity interests or the termination of its sole remaining equity interest holder, and PERL and PEAH shall be deemed to have consented to the continuation of PEAH and PEAO, respectively, from and after the Effective Date until the date of entry of the final decree in the Chapter 11 Cases. On and after the Effective Date, the Liquidating Debtors shall retain all of the powers of corporations or limited liability companies under the applicable non-bankruptcy law, and without prejudice to any right to amend their charters, dissolve, merge or convert into other form of business entity, or to alter or terminate their existence, provided that the Liquidating Debtors' sole purpose from and after the Effective Date will be to make distributions to Creditors consistent with the Plan and to otherwise

effectuate the Wind-Down.

Except as otherwise provided in the Plan, on and after the Effective Date, all Distributable Assets and property of the Estates of PERL, PEAH and PEAO, including all Retained Rights of Action, the Unsecured Creditor Fund, the Alaska Fund, the Wind-Down Fund, and any property acquired by such Debtors under or in connection with the Plan will vest in the applicable Liquidating Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests. Notwithstanding the foregoing, (i) any proceeds of Retained Rights of Action constituting Excluded Interests shall be paid to the Holders of Senior Lender Claims consistent with the Beta Sale Order and the Plan, and (ii) the Tax Credits shall be made available to Union and Chevron U.S.A. Inc. as set forth in Article VI(I) of the Plan. Further, nothing in the Plan shall have any effect on any rights, Liens or Claims that any party may have against assets that were abandoned by the Estates by Final Order of the Bankruptcy Court.

## B. Dismissal of Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland

Upon the Effective Date, the Chapter 11 Cases of Petrocal, Carneros Acquisition, Carneros Energy and Gotland shall be dismissed, and such Debtors shall be dissolved and wound up without any further action required by the Debtors or their shareholders or boards of directors. The Plan Representative is authorized to take any action required or advisable under applicable non-bankruptcy law to effectuate such dissolutions, including the preparation, execution and/or filing of any required certificate of dissolution, certificate of cancellation, or similar instrument with the Delaware Secretary of State and other applicable state governmental authorities.

**C.** **No Substantive Consolidation**

Nothing in the Plan is intended to substantively consolidate, nor shall have the effect of substantively consolidating, the Debtors or their Estates, and each Liquidating Debtor shall maintain its separate corporate or limited liability company existence and assets from and after the Effective Date.

**D.** **Retained Rights of Action**

Unless a Right of Action or objection to Claim is, in writing, expressly waived, relinquished, released, assigned, compromised, or settled in the Plan, or in a Final Order, all rights with respect to such Retained Right of Action or objections to Claims are expressly preserved for the benefit of, and fully vested in, the respective Liquidating Debtors. Notwithstanding the foregoing, (i) any proceeds of Retained Rights of Action constituting Excluded Interests shall be paid to the Holders of Senior Lender Claims consistent with the Beta Sale Order and the Plan, and (ii) the Tax Credits shall be made available to Union and Chevron U.S.A. Inc. as set forth in Article VI(I) of the Plan. For the avoidance of doubt, on the Effective Date, the Liquidating Debtors shall automatically succeed to any and all Avoidance Claims that had been investigated and/or pursued by the Committee prior to the Effective Date and standing to investigate, prosecute and/or compromise such Avoidance Claims shall automatically revert to the Liquidating Debtors. For the avoidance of doubt, on and after the Effective Date: (i) the captions in all pleadings filed in any Avoidance Claims shall be deemed automatically amended to reflect the Liquidating Debtors as plaintiff; (ii) any pleadings filed in any Avoidance Claims subsequent to the Effective Date shall reflect the Liquidating Debtors as plaintiff; (iii) Pepper

Hamilton LLP shall act as counsel to the Liquidating Debtors with respect to the Avoidance Claims; and (iv) all amendments and authorizations contemplated in this paragraph shall take effect automatically and without the need for any further Order of the Court, authorization by the Clerk of Court, or filings of notices or requests in the Avoidance Claims.

With the exception of Retained Rights of Action constituting Excluded Interests, which the Liquidating Debtors shall act reasonably and in good faith to support recovery of such Excluded Interests to the extent set forth in the treatment of Class 3 under the Plan, the applicable Liquidating Debtors may pursue, or decline to pursue, the Retained Rights of Action and objections to Claims, as appropriate, in the business judgment of the Plan Representative and the Supervisory Board. The applicable Liquidating Debtors may settle, release, sell, assign, otherwise transfer, or compromise, Retained Rights of Action and/or objections to Claims without need for notice or order of the Bankruptcy Court, subject to any limitations under applicable bankruptcy and non-bankruptcy law, provided that in the case of any sale, assignment or transfer of the Retained Rights of Action, the applicable Liquidating Debtors shall obtain approval of the Bankruptcy Court on notice to parties requesting notice in the Chapter 11 Cases.

### E.    Corporate Governance

From and after the Effective Date, subject to the oversight of the Supervisory Board as described below, each of the Liquidating Debtors shall be managed and administered by the Plan Representative. The initial Plan Representative shall be Gerald A. Tywoniuk. In managing and administering the Liquidating Debtors, the Plan Representative shall have full power and authority to execute the provisions of this Plan, and to execute instruments and take

other action in the name and on behalf of the Liquidating Debtors, to the same extent as if the Plan Representative were the sole director, shareholder, officer, manager, or member of the Liquidating Debtors under applicable non-bankruptcy law. Notwithstanding the foregoing, except as otherwise provided in this Plan, the Plan Representative shall not have any responsibility to take any action with respect to any assets or property abandoned by the Estates or any assets or property other than the Distributable Assets and property of the Estates vested in the Liquidating Debtors under this Plan, and the Plan Representative shall not be liable as a result of any action taken in accordance with the provisions of this Plan. As of the Effective Date, the provisions of this Plan applicable to the corporate governance of the Liquidating Debtors shall supersede any contrary provisions of the certificates of incorporation, bylaws, certificates of formation, and/or limited liability company or operating agreements of the Liquidating Debtors, which are hereby deemed amended to so provide, and the Plan Representative is authorized to execute any such separate written amendments as may be necessary or appropriate under applicable non-bankruptcy law to fully effectuate the intent of the foregoing provisions.

The Plan Representative's management and administration of the Liquidating Debtors shall be subject to oversight by the Supervisory Board, which shall have supervisory authority over the Plan Representative, unless otherwise ordered by the Bankruptcy Court. Any successor to the initial Plan Representative shall be appointed by the Supervisory Board after the Effective Date, subject to the approval of the Bankruptcy Court. The terms of the initial Plan Representative's compensation shall be disclosed prior to the Confirmation Hearing.

The Supervisory Board shall initially consist of representatives of Marathon Oil Company and Bateman & Company Ltd. In the event of any disagreement or deadlock amongst such Persons, the matter shall be resolved or addressed by the Bankruptcy Court. In the event that a member of the Supervisory Board can no longer carry out his or her duties as a director (by reason of death, resignation or disability) (the "Director Vacancy"), the remaining member of the Supervisory Board may appoint a successor, or in the event no such successor is appointed within 90 days, the Plan Representative may petition the Bankruptcy Court to appoint a successor. The members of the Supervisory Board shall not be compensated for their service for the Debtors, aside from reimbursement of reasonable expenses. From and after the Effective Date, the Liquidating Debtors may take such action as may be necessary or appropriate under applicable non-bankruptcy law to incorporate the corporate governance provisions, and otherwise fully effectuate the intent, of this Plan, including but not limited to the preparation, execution and/or filing with the Delaware Secretary of State or other relevant state governmental authorities of any appropriate amendments of the certificates of incorporation, bylaws, certificates of formation, and/or limited liability company or operating agreements of the Liquidating Debtors.

Notwithstanding anything to the contrary herein, to the extent of any dispute between the Plan Representative and the Supervisory Board, such dispute shall be resolved by the Bankruptcy Court. The Plan Representative may rely on counsel for the Liquidating Debtors in bringing any disputes before the Bankruptcy Court, and the Supervisory Board shall be authorized to employ and compensate counsel of its own choosing (payable out of the

Liquidating Debtors' assets) in the event of such dispute.

**F.    Wind-Down**

The Liquidating Debtors, through the Plan Representative, shall make distributions to Creditors consistent with the Plan and otherwise hold and liquidate all Distributable Assets and property of the Estates for the benefit of Creditors, in accordance with the provisions of the Plan. The Liquidating Debtors, the Plan Representative, and the Supervisory Board shall not be required to post a bond in favor of the United States.

The Liquidating Debtors, acting through the Plan Representative, shall have the power and authority to perform the following acts (together, the "Wind-Down"), in addition to any powers granted by law or conferred by any other provision of the Plan and orders of the Bankruptcy Court; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Debtors or the Plan Representative, subject to the authority of the Supervisory Board, to act as specifically authorized by any other provision of the Plan or orders of the Bankruptcy Court, and to act in such manner as the Plan Representative may deem necessary, or desirable to discharge all obligations assumed by the Liquidating Debtors as provided herein, and to conserve and protect the Distributable Assets, or to confer on Creditors the benefits intended to be conferred upon them by the Plan; including without limitation and by example only:

> (1)    Determine Tax issues or liabilities in accordance with section 505 of the Bankruptcy Code;
>
> (2)    Resolve any objections to the allowance or priority of Claims, Administrative Expenses or Interests;

(3)     Resolve any dispute as to the treatment necessary to reinstate a Claim, Administrative Expense or Interest pursuant to the Plan;

(4)     Distribute Cash in the Estates to Creditors consistent with the terms of the Plan;

(5)     Perfect and secure the Liquidating Debtors' right, title and interest to property of the Estates;

(6)     Recover and, to the extent possible, sell and convert the property of the Estates to Cash, and distribute the net proceeds consistent with the terms of the Plan;

(7)     Manage and protect property of the Estates and distribute the net proceeds consistent with the terms of the Plan;

(8)     Wind-up the affairs of the Liquidating Debtors' subsidiaries and affiliates, including Petrocal, Carneros Acquisition, Carneros Energy and Gotland to the extent necessary;

(9)     Purchase or continue insurance to protect the Liquidating Debtors, the Plan Representative, and property of the Estates;

(10)    Deposit Estate funds, draw checks and make disbursements thereof consistent with the terms of the Plan;

(11)    Employ, retain and compensate, and discharge and dismiss, without further order of the Bankruptcy Court, Professional Persons as the Plan Representative may deem necessary or desirable to assist in fulfilling the purposes of the Plan, including the continued retention and payment of Professional Persons in connection with any ongoing litigation or other matter pursued or conducted by the Debtors or the Committee whether on an hourly, flat fee or contingency basis, including any litigation related to any Avoidance Claims or Excluded Interests (or with Union's approval, the Tax Credits), provided that the retention of Professional Persons by the Liquidating Debtors shall be subject to the consent of the Supervisory Board (except for Professional Persons retained solely for the purpose of pursuing the Excluded Interests on behalf of the Senior Lenders or the Tax Credits on behalf of Union);

(12)    Commence or prosecute in the name of the Liquidating Debtors (or any of them), any lawsuit or other legal or equitable action (except to the extent released pursuant to the terms of the Plan), including, without

limitation, filing objections to or estimation of Claims, and prosecuting Retained Rights of Action, in any court of competent jurisdiction, which are necessary to carry out the terms and conditions of the Plan;

(13)    Settle, compromise or adjust, pursuant to the standards of Bankruptcy Rule 9019 (which standards, but not a requirement for Bankruptcy Court approval, shall be deemed to apply to all post-Effective Date settlements), any disputes or controversies in favor of, or against, any of the Liquidating Debtors;

(14)    Incur and pay all Plan Expenses and any reasonable costs and expenses incident to the performance of the duties of the Liquidating Debtors and the Plan Representative under the Plan, including without limitation, reasonable rent for office space and storage, office supplies, travel and expense reimbursement, insurance, and other obligations;

(15)    Prepare and file tax returns, as mandated by applicable local, state, federal and foreign law;

(16)    Seek entry of a final decree at the appropriate time; and

(17)    Take such other action as the Plan Representative may determine to be necessary or desirable to carry out the purpose of the Plan.

## G.    **Funding for the Plan**

The Liquidating Debtors' obligations under the Plan and the fees and expenses of the Liquidating Debtors will be funded out of existing Cash in the Estates. Any unused Cash of the Liquidating Debtors set aside to fund Plan Expenses and the Wind-Down shall be distributed to the Holders of Allowed General Unsecured Claims against the Liquidating Debtors in accordance with the Plan. Any additional Cash proceeds that may be realized by the Liquidating Debtors from and after the Effective Date shall be distributed to the Holders of Allowed General Unsecured Claims in accordance with the Plan.

## H. Inter-Estate Settlement

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, each Debtor and their successors and assigns hereby waive, release and discharge each other and all of their respective successors from any and all Intercompany Claims and Rights of Action amongst and between any or all of the Debtors, which waiver, release and discharge shall be effective as a bar to all actions, causes of action, suits, Claims, Liens, or demands of any kind with respect to any Intercompany Claim or Right of Action amongst or between any or all of the Debtors.

In consideration of the foregoing waiver and release of Claims amongst the Estates and the funding of the Allowed Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims of the Estates, the Unsecured Creditor Fund shall be distributed to the Holders of Allowed General Unsecured Claims against PERL, the Alaska Fund, if any, shall be distributed to the Holders of Allowed General Unsecured Claims against PEAO, and the Wind-Down Fund, if any, shall be distributed to the Estate of PERL after all Allowed Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims of the other Debtors have been satisfied. No distribution out of the Unsecured Creditor Fund or the Wind-Down Fund shall be made to, or for the benefit of, the Debtors other than PERL, except as set forth above.

## I. Resolution with the Estates, Union, the Senior Lenders, the State and the Committee

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, each of the Debtors and their Estates, Union, the Senior Lenders, the State, and the Committee shall be bound by the following provisions, and any and

all Union Claims and Alaska Claims shall be treated as set forth below:

(1)     The entirety of the Lift Proceeds shall be released and paid to Union, and the Union Adversary shall be dismissed with prejudice, with all parties to bear their own costs and fees. The Debtors and their Estates shall waive any claims with respect to any of the Lift Proceeds granted pursuant to the Final DIP Order, including (without limitation) with respect to any amounts remaining under the Alaska Fund that in any way relate to the Lift Proceeds.

(2)     Union shall waive any and all claims to the Excluded Interests. For the avoidance of doubt, Union shall assert no further rights or claims in the Business Interruption Insurance or the proceeds thereof, any bidder deposits that remain with respect to the sale of any of the Alaska assets, any insurance premiums that have been returned to the Debtors, the royalty proceeds that are currently held for the benefit of the Senior Lenders in the West Foreland escrow account, or the net proceeds of the retainer of Stoel Rives, LLP which has been returned to the Debtors.

(3)     The Debtors' pending motions to (a) pay the proceeds of the Excluded Interests and certain other assets to the Senior Lenders (Docket No. 1561), and (b) approve a stipulation resolving claims with the State (Docket No. 1895), shall be withdrawn as moot. Further, any pending objections of the Debtors to proofs of claim or requests for payment of administrative expenses filed by Union or the State shall be withdrawn as moot.

(4)     The State will continue to process PEAO's Tax Credits applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about March 31, 2010 and June 8, 2010 and issue transferable certificates in accordance with AS 43.55.023. PEAO will

then take all necessary steps to transfer the Tax Credits certificates to either Union or Chevron U.S.A. Inc. ("Chevron"). The State will not object to Union or Chevron using the Tax Credits against production tax liability consistent with AS 43.55.011 *et seq.* and 43.55.023 from any Union or Chevron oil and gas property situated in the state. In furtherance of the Plan, PEAO shall assign to Union, at Union's sole option, every right of PEAO in and to the Tax Credits, and PEAO shall diligently pursue recovery of the Tax Credits at the direction and for the benefit of Union, including but not limited to: (1) appealing a denial by the State on the Tax Credits application of PEAO in accordance with AS 43.05.240 *et seq.*; and (2) any and all other efforts necessary to facilitate PEAO being awarded Tax Credits certificates by the State in the amount for which PEAO is eligible under AS 43.55.023 for the period 2007-2009 as requested in the applications dated March 31, 2010 and May 21, 2010 that were filed with the State on or about March 31, 2010 and June 8, 2010 (for the avoidance of doubt, PEAO shall have all the rights of an applicant under AS 43.55.011 *et seq.*). The foregoing activities if specifically requested by Union are the "Directed Activities." Finally, Silver Point and PEAO shall release any right, title, lien, claim, or encumbrance in and to the Tax Credits in favor of Union.

(5) Union shall indemnify PEAO for liabilities directly caused by the Directed Activities in pursuing the Directed Activities and for reasonable costs and expenses incurred by PEAO pursuant to an approved budget (as described below), provided however that Union shall not be liable for PEAO's gross negligence or willful misconduct under any circumstances. PEAO shall submit a written budget to Union for any proposed Directed Activities, which budget Union may approve in its sole discretion. PEAO's shall not incur reimbursable costs and

expenses except pursuant to an approved budget.

(6)     The State shall retain the Royalty Overpayment, which has been applied to PEAO's plugging, abandonment, decommissioning and other obligations.  Union, and the Debtors, on behalf of their estates, release any claims against, or rights to, the Royalty Overpayment and will not pursue recovery of same.  Other than as expressly provided in this Plan, including with respect to the Tax Credits, the Debtors, on behalf of their estates, shall release the State from any claims or demands including any Avoidance Claims.

(7)     Silver Point will release all mortgages, security interests, liens and encumbrances whatever in and to the Trading Bay Unit and Trading Bay Field and any and all Lift Proceeds whenever or wherever arising.  In addition, PEAO shall execute new mortgages, fixture filings or other similar security agreements and documents with respect to the Trading Bay Unit and Trading Bay Field as Union may reasonably request.

(8)     Union shall be Allowed an Administrative Expense against the PEAO estate in the amount of $22,216,797.24, which shall be treated as follows: (i) $100,000.00 shall be paid to Union in cash; (ii) the Debtors' estates, jointly and severally, shall release all claims of any kind and nature that they now have, or which may arise in the future, against Union (including any Avoidance Claims against Union); and (iii) the residue of the PEAO estate, after the payment in subparagraph (i) above, shall be available for distribution to other creditors of PEAO; and (iv) excepting the payment set forth in subparagraph (i) above and the transfer of the Lift Proceeds and the Tax Credits as contemplated herein, Union shall have no right to a distribution from the Debtors' Estates under the Plan (including without limitation any right to

participate in distributions from the proceeds of Avoidance Claims) on account of any claim in favor of Union whatsoever, whether arising prepetition or postpetition, and whether a secured claim, priority claim, or unsecured claim.

(9)     The State shall be Allowed (i) an Administrative Claim against PEAO in the amount of $301,140.35 for postpetition 2009 property taxes, including penalties and interest, which PEAO has fully paid and satisfied; (ii) an Allowed Tax Claim against PEAO in the amount of $69,613.44 for prepetition 2009 property taxes, including penalties and interest through December 15, 2010, which PEAO shall pay within fourteen (14) days following the Effective Date; and (iii) an Allowed Administrative Expense against PEAO in the amount of $4,047.70 for the use of easements on the King Salmon platform pipelines during the period March 9, 2009 through September 2, 2009, which PEAO shall pay within fourteen (14) days following the Effective Date.

(10)     Except as expressly set forth in the Plan, nothing in the Plan or any Plan document is intended to, or does, in any manner waive, limit, impair, or restrict any right of Union, the State, Forest Oil or any affiliate thereof, or Marathon Oil Company or any affiliate thereof to protect, preserve, and enforce their respective rights, remedies, and interests against the Debtors (as opposed to the Debtors' Estates).  Additionally, nothing in the Plan is intended to, or does, in any manner waive, limit, impair, or restrict any right or defense of Union, the State, Forest Oil or any affiliate thereof, or Marathon Oil Company or any affiliate thereof to protect, preserve, assert and enforce its rights, remedies, defenses and interests against any and all persons other than the Debtors.

(11)    In addition to the Claims of the State allowed in subparagraph (9) above and without determining the amount or priority of the State's remaining asserted Claims against the Debtors, the State shall be limited to distributions under the Plan as if it were the Holder of an Allowed General Unsecured Claim against PEAO in the notional amount of $40,000,000.00. Any and all future claims of the State, whether against the Debtors or any other parties, are fully preserved without any cap or other impairment of the State's rights whatsoever, provided that such claims shall not be entitled to distributions from the Estates under the Plan.  The State expressly reserves all of its rights to assess and collect abandonment liabilities against all non-Debtor third parties, including any predecessors-in-interest to any of the Debtors, and any such non-Debtor third parties expressly reserve all defenses related thereto.  Further, there shall be no discharge, release or impairment of any abandonment, remediation, clean-up or other similar claims of the State or any other person whatsoever, provided that such claims shall not be entitled to distributions from the Estates under the Plan.

(12)    The Debtors and non-estate Debtors shall reasonably cooperate in assisting the State in the administration of assets located in Alaska that have been abandoned by the Debtors including by way of example, by delivering documents necessary to formalize the legal surrender or transfer and assignment of the Debtors' oil and gas leases with the State.  For so long as Union or any of its affiliates remains the operator under the operating agreement for the Trading Bay Unit, the State agrees to provide notice to Union of any request made by the State that the Debtors transfer their interests in any abandoned oil and gas leases.

## J.    Resolution with Union and CIPL

Upon the Effective Date, pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, each of the Debtors and their Estates, Union, and CIPL shall be bound by the following provisions, and any and all CIPL Claims shall be treated as set forth below:

(1)    CIPL shall be Allowed an Administrative Expense against the PERL Estate in the amount of $25,000.00 to paid in cash within five (5) Business Days after the Effective Date.  CIPL shall have no other Claims constituting Administrative Expenses against any of the Debtors or their Estates.

(2)    CIPL shall be Allowed a General Unsecured Claim against PERL in the amount of $3,761,083.60(Claim No. 407)

(3)    CIPL shall be deemed to have withdrawn any and all claims against the PEAO Estate, including Claim No. 406 filed by CIPL against PEAO.

(4)    CIPL shall be Allowed a General Unsecured Claim against PEAH in the amount of $21,100,000.00 (Claim No. 489)

(5)    Union shall be Allowed a General Unsecured Claim against PEAH in the amount of $21,100,000.00 (Claim No. 488), but Union agrees not to share in any distributions out of the Estates on account of such Claim.

(6)    The Debtors' estates, jointly and severally, shall release all claims of any kind and nature that they now have, or which may arise in the future, against CIPL (including any Avoidance Claims against CIPL).  Except as set forth in paragraphs (1) through (4) above,